UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PORTKEY TECHNOLOGIES PTE LTD. and
VIGNESH SUNDARESAN,

                                        Plaintiffs,

          -against-

ANAND VENKATESWARAN,

                                        Defendant.

Civil Case No. _____

**COMPLAINT**

Plaintiffs Portkey Technologies Pte Ltd. ("Portkey") and Vignesh Sundaresan ("Sundaresan") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendant Anand Venkateswaran ("Defendant" or "Venkateswaran"), hereby allege as follows:

## NATURE OF THE ACTION

1.       This is an action for unfair competition, reverse passing off, false and misleading representations of fact, false advertising, and trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and related claims under New York State and common law, resulting from, *inter alia*, Defendant's repeated and intentional false and misleading statements holding himself out as the source of Plaintiffs' business operations and success, and use of the TWOBADOUR and METAPURSE trademarks, which acts have caused confusion among the public and undermine Plaintiffs' reputation and goodwill.

2.       Without limitation, Defendant has repeatedly issued public statements falsely claiming, expressly and impliedly, to have been directly involved in Plaintiffs' historic purchase

of the NFT artwork created by Beeple known as *Everydays: The First 5000 Days* ("Everydays" or the "Beeple NFT").  Without limitation, Defendant has publicly claimed to be one of the two people who purchased the Beeple NFT stating in 2022, that he was "one of the two guys that won the Christies auction… and bought the $69 million Beeple piece."  Defendant has also publicly claimed to be one of the owners of the Beeple NFT, including stating that he "was one of the two guys who bought the 69 million dollar Beeple piece" and including in his Twitter bio that he "won" the Beeple NFT auction.

3.      By this action, Plaintiffs also seek a declaratory judgement, pursuant to 28 U.S.C. §§ 2201 and 2202, that Portkey owns the trademarks TWOBADOUR and METAPURSE.

4.      Unless permanently enjoined, Defendant will continue to falsely associate himself with Plaintiffs' business, misuse Plaintiffs' intellectual property, cause confusion, mistake, and deception among the public, and ultimately harm Plaintiffs' goodwill and business prospects.

5.      Plaintiffs therefore seek injunctive relief, a declaratory judgment, actual damages, treble damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## THE PARTIES

6.      Plaintiff Portkey is a limited company established and existing under the laws of Singapore, with its principal place of business located at:  Parkview Square, 600 North Bridge Road, #12-02/03, Postal 188778.

7.      Plaintiff Sundaresan is a natural person and citizen of India.  Sundaresan is the founder, sole proprietor, and CEO of Portkey.

8.      Upon information and belief, Defendant Venkateswaran is an individual residing at 680 Wellesley St, Weston, MA 02493.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10.      Defendant is subject to the Court's personal jurisdiction because, upon information and belief, Defendant has committed tortious acts within New York and has also committed tortious acts outside of New York causing injury to Plaintiffs within New York.

11.      Plaintiffs' claims arise out of and related to Defendants' transactions of business, and tortious acts committed in New York, and outside of New York causing damage to Plaintiffs in this New York because, *inter alia*, Defendant has:

> Repeatedly made and continues to make false statements in New York and outside of New York claiming to have been directly responsible for the purchase of the Beeple NFT and Portkey's business operations and success and/or stated, expressly or impliedly, that he owns the Beeple NFT;

> Repeated these false statements through various public channels, including social media, online blogs, and in numerous interviews posted online, which are all accessible within New York;

> Repeatedly used and continues to use and/or otherwise associate himself with the trademark TWOBADOUR, which is owned by Portkey; and

> Repeatedly used and continues to use and/or otherwise associate himself with the trademark METAPURSE, which is owned by Portkey.

12.      Plaintiffs also have achieved reputations as leaders in this industry and are routinely sought out for investment opportunities by businesses and entrepreneurs in New York.

13.      Defendant's tortious acts and statements in New York, and out of New York have damaged existing and future business opportunities for Plaintiffs, causing injury to Plaintiffs within New York.

14.      Therefore, this Court has long-arm jurisdiction over Defendant pursuant to CPLR §§ 302(a)(1)-(3).

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Sundaresan's Purchase of the Beeple NFT

16.     Sundaresan in an Indian-born blockchain entrepreneur and investor who is an advocate for and investor in blockchain technology, emerging technology projects, and decentralized financial systems.

17.     In addition to founding Portkey, Sundaresan has made various timely investments in technology projects, including Ethereum, Bitcoin, Polkadot, and Decentraland.

18.     Portkey is a software and technology company that operates many of Sundaresan's blockchain and Web3 projects.  Sundaresan founded Portkey in 2017 and is its sole owner.

19.     In 2020, Portkey created METAPURSE, a fund dedicated to the acquisition of NFT art and other Web3-related investments ("METAPURSE").

20.     As a result of Portkey's investments and activities through METAPURSE, Sundaresan has gained a worldwide reputation as a well-known investor and supporter of new and in-development blockchain and Web3 businesses, and art-related initiatives.

21.     On or about February 16, 2021, Christie's auction house announced that it would hold an auction for the Beeple NFT, with open bidding to take place from February 25 through March 11, 2021.

22.     Through such auction, Christie's became the first major auction house to offer a digital-only work of art with an NFT as a guarantee of its authenticity.  The auction also marked the first time a major auction house accepted cryptocurrency as payment.

23.     A press statement released by Christie's in New York heralded the significance of the auction.

24.     An image of the Beeple NFT created for sale by Christie's is shown here:



25.     Everydays represents a work by the artist Beeple (Mike Winkelmann) comprised of the first 5,000 digital pictures he created following his ambitious challenge to post a new artwork each day, which he began on May 1, 2007.  Everydays documents the evolution of Beeple's artistic development and brings together the first 5,000 days of this project.

26.     On March 11, 2021, Sundaresan successfully bid and acquired the Beeple NFT for $69,346,250 (42329.453 ETH).

27.     Sundaresan alone determined and executed his bidding strategy in pursuing the Beeple NFT, and he funded the purchase of the work entirely with his own assets.

28.     Defendant played no role in the Sundaresan's purchase of the Beeple NFT.

29.     Sundaresan acquired the Beeple NFT in his role as the founder of METAPURSE.

30.     The price paid by Sundaresan set a record for the most expensive NFT ever sold. Everydays remains the most expensive single-edition NFT ever sold.

31.     The Beeple NFT currently ranks third amongst the most valuable artworks ever sold at auction by a living artist, behind Jeff Koons and David Hockney.

32.     At the time of the sale, Sundaresan, under the pseudonym Metakovan, released a statement with Christie's explaining the historical importance of his acquisition.

33.     Within a week of the transaction, Sundaresan revealed in a Substack post that he was Metakovan.  The article also explained Sundaresan's reasoning behind his purchase of the Beeple NFT.  His goal was to acquire and later tokenize ownership of NFTs in the METAPURSE collection.  On a more personal note, he also shared that he hoped to demonstrate that Indians and people of color could be patrons of the arts.

34.     The purchase of Everydays was significant for Sundaresan and it received wide media attention, furthering his reputation as a leading collector of NFTs and development of blockchain technologies and Web3 projects.

35.     METAPURSE also received wide media attention, cementing its reputation as a leading fund involved in NFT investing.

36.     By association, other Portkey projects and investments became more notable and publicized.  The purchase also led to additional business opportunities for Portkey.

37.     The sale of Everydays furthered Beeple's advocacy for the NFT art market, where he remains a prominent artist and still creates and sells his work.  Sundaresan and Beeple have appeared together to talk about the significance of NFT art and Web3 projects.

### B.  Portkey's Ownership of the TWOBADOUR Trademark

38.     In 2020, Plaintiffs began creating different pseudonyms for Portkey employees to use on different business ventures.

39.     In connection with its business, Sundaresan coined the trademark TWOBADOUR at least as early as April 2020, which Portkey adopted and used.

40.     TWOBADOUR was created under Sundaresan's instruction as an extension of Venkateswaran's role in assisting with communications on behalf of Plaintiffs.

41.     Multiple Portkey employees and independent contractors have used this trademark in connection with conducting Portkey's business, including when blogging, responding to emails, and posting social media content.

42.     Plaintiffs spent substantial time, effort, and money to establish TWOBADOUR as a source identifier and online identity.

43.     TWOBADOUR is an inherently distinctive trademark with significant renown among the public.

44.     Based on its use of the trademark TWOBADOUR, Portkey owns common law trademark rights therein.

45.     Portkey also owns several trademark applications for the mark TWOBADOUR covering various countries, including an international application filed with WIPO (the World Intellectual Property Organization) that includes an extension of protection to the United States, International Application Ser. No. MM202300404Q.  The application covers the following goods and services: Downloadable computer software for minting non-fungible tokens (NFTs); downloadable audio, digital, music and video files authenticated by non-fungible tokens (NFTs); computer software for use in the virtual display of artwork and NFTs; Advertising and promotion

services; advertising and publicity services; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; advisory services for business management; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; business collaboration services for artists to create art and art non-fungible tokens (NFTs); business consulting services; business development services; business management; business management consultancy in the field of virtual reality technology; business management consultancy services; business management consultancy services provided via the internet; business management for freelance service providers; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; business management of public auctions; business reputation management and improvement services; career advancement consultancy services; career advisory services, other than education and training advice; career planning consultancy; conducting interactive virtual auctions; conducting virtual trade shows online; consulting services relating to publicity; development of publicity concepts; dissemination of advertising, marketing and publicity materials; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; marketing advice; marketing assistance; marketing services; on-line advertising on computer networks; online auctioneering; online retail store services featuring works of art; online trading services in which seller posts products to be auctioned and bidding is done via the internet; online wholesale store services featuring works of art; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; providing online auction services; retail services; talent agency services

[business management of performing artists]; consultation in the curation of artwork and NFTs; artwork and NFT curation, namely, selection, purchasing, and sales of artwork and NFTs; consultation in the purchase and sale of artwork and NFTs; artwork and NFT curation services; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services; management of investments; provision of investment information; cryptocurrency asset management; cryptocurrency investment advisory services; cryptocurrency investment services; financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation; artwork and NFT investment services; consultation in the investment in artwork and NFTs; Curator services for non-fungible tokens (NFTs); career advisory services [education or training advice]; advisory services relating to entertainment; career counselling [education or training advice]; career information and advisory services [educational and training advice]; organization of art exhibitions for cultural or educational purposes; organization of exhibitions for entertainment purposes; art exhibition services; arranging and conducting of art exhibitions for cultural or educational purposes; display of works of art in exhibitions, shows, museums, galleries; arranging and conducting of colloquiums, conferences, congresses, seminars, symposiums and training workshops; arranging and conducting of seminars; arranging of seminars; conducting of instructional seminars;

conducting seminars; artwork and NFT curation services; consultation in the curation of artwork and NFTs; artwork and NFT curation, namely, selection, purchasing, and sales of artwork and NFTs; Design consultancy; design engineering; design services; design and development of non-fungible tokens (NFTs); design and development of new technology for others; design and development of computer software; technological consultancy relating to digital transformation; electronic storage of digital images, music, photographs and images; non-downloadable software for the display of artwork and NFTs, artwork and NFT inventory, and artwork and NFT management; design and development of computer software for use in the virtual display of artwork and NFTs.

### C. Portkey's Ownership of the METAPURSE Trademark

46.     In connection with its business, Portkey adopted and used the trademark METAPURSE at least as early as September 2020.

47.     METAPURSE was created under Sundaresan's instruction and solely used Sundaresan's capital to make investments and acquisitions.

48.     Plaintiffs spent substantial time, effort, and money to establish METAPURSE as the leading NFT fund in the world.

49.     METAPURSE is an inherently distinctive trademark with significant renown among the public.

50.     Based on its use of the trademark METAPURSE, Portkey owns common law trademark rights therein.

51.     Portkey also owns several trademark applications for the mark METAPURSE, including U.S. Trademark Application Ser. No. 79341844, covering Advertising and promotion services; advertising and publicity services; advertising by transmission of on-line publicity for

third parties through electronic communications networks; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; consulting services relating to publicity; on-line advertising on computer networks; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; sales promotion services; advisory services for business management; business management consultancy services; business management consultancy services provided via the internet; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; business consulting services; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; dissemination of advertising, marketing and publicity materials; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services; management of investments; provision of investment information; cryptocurrency asset management; cryptocurrency investment advisory services; cryptocurrency investment services;

financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation.

**D.  Defendant's Role at Portkey**

52.     After Sundaresan started Portkey in 2017, Venkateswaran was hired as an independent contractor to assist with, *inter alia*, managing personal communications on behalf of Sundaresan and company communications on behalf of Portkey.

53.     On or about August 14, 2017, Portkey and Venkateswaran entered into an independent contractor agreement (the "First ICA") where Venkateswaran would provide Portkey with the following services:  developing UI and UX; communications and public relations; community management; management of social media platforms; website development and management; hiring and managing UI/UX design team; and attending and representing in conferences deemed essential for Portkey in terms of software development, education, promotion, marketing or otherwise.

54.     In his role at Portkey, beginning at least as early as April 23, 2020, Venkateswaran was directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR.  At least as early as September 2020, Venkateswaran was directed by Portkey to assist with the operation of METAPURSE.

55.     On or about November 1, 2020, the First ICA was terminated by Venkateswaran.

56.     On or about the same day, Portkey and Wordesmith Collective Singapore Pte. Ltd. ("Wordesmith") entered into an independent contractor agreement (the "Second ICA") where Wordesmith would provide to Portkey the same scope of services stated in Paragraph 53. Venkateswaran is the founder and sole shareholder of Wordesmith.

57.     As part of the Second ICA, Venkateswaran had agreed that all intellectual property that he used during the course of his contract was to be owned exclusively by Portkey.

58.     On or about January 15, 2022, Wordesmith requested to terminate the Second ICA and Portkey and Defendant agreed that the Second ICA would be terminated on February 28, 2022.

59.     The termination of Venkateswaran's contract was related to rising tensions between Plaintiffs and Venkateswaran regarding Venkateswaran's use of the trademark and pseudonym TWOBADOUR to build other business ventures outside of Portkey.

60.     On or about February 28, 2022, Venkateswaran terminated the relationship with Portkey by signing a release indicating that he had no claims against Portkey and that all of his work had been performed under a contractor agreement.

**E.  Venkateswaran's Statements After Leaving Portkey**

61.     Despite knowing that Sundaresan purchased the Beeple NFT entirely on his own, Plaintiffs have come to learn that, beginning at least as early as August 2022, and continuing under present at increasing frequency, Defendant has made, and continues to make, public statements explicitly and implicitly proclaiming himself to be the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT.

62.     Since his departure from Portkey, Venkateswaran has made numerous false public statements designed to confuse the public into mistakenly believing that he and Sundaresan purchased the Beeple NFT together.  By way of example:

> i.     In an August 1, 2022, video on YouTube, Future of Media ft. EDAO (available at:  https://www.youtube.com/watch?v=yB53hDQ_oz4), Venkateswaran spoke about how he was "one of the two guys that won the Christies auction… and bought the $69 million Beeple piece.";

   ii. In an August 24, 2022, video on Youtube, Hacking The Creator Economy

     - The Blockchain Council Podcast (available at:

     https://www.youtube.com/watch?v=20yeYKwWveQ), Venkateswaran

     stated, "I used to be the steward of Metapurse…I was one of the two guys

     who bought the $69 million-dollar Beeple piece."

63. Venkateswaran has made numerous other statements and taken actions that have impacted Plaintiffs by diminishing Plaintiffs' business achievements and trading on Plaintiffs' goodwill.

64. These statements have included, without limitation:

   i. Misrepresenting his role in Portkey through various public interviews

     and/or publishing untrue information on his personal Twitter account,

     LinkedIn account, and blog, thereby diminishing Sundaresan's role in

     Portkey and Portkey's overall business success;

   ii. Claiming credit for purchases on behalf of METAPURSE in which he was

     not involved; and

   iii. Claiming to have been a co-founder of METAPURSE.

65. In making the above-referenced false statements, Defendant has sought to promote his own businesses, including, without limitation eDAO and Layer-E, which have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively.  Defendant has also sought to bolster his position in the public's eye about his import at Metapurse and in the purchase of the Beeple NFT.

66. Upon information and belief, Venkateswaran has communicated with portfolio companies and others who had prior relationships with Portkey in an effort to promote his business

ventures.  Upon information and belief, he has asked such other persons to participate with him in podcasts and other public talks regarding his prior role with Plaintiffs in order to further trade upon the goodwill of Plaintiffs and claim responsibility for Plaintiffs' business success.

67.     Following termination of his agreement with Portkey, Venkateswaran has also continued to use and associate himself with the trademark and pseudonym TWOBADOUR, claiming to have been the only person behind TWOBADOUR.  He has falsely claimed to have been the steward of METAPURSE, when in fact TWOBADOUR, owned by Portkey, was the steward of METAPURSE.  Examples include, without limitation:

> i.  On Venkateswaran's LinkedIn page, his profile summary reads: "Co-Founder and CEO of eDAO. Fmr Steward of Metapurse, the largest NFT Fund in the world.  Capital allocation, experience design, artists &



Venkateswaran's LinkedIn page.
(Accessed May 23, 2023).

repertoire.  **Creator of the @Twobadour pseudonym.**"  (emphasis added);

ii.    The top of Venkateswaran's Twitter feed reads:  "Co-Founder & CEO @LayerEhq.  **As @twobadour, Steward of @metapurse, won the $69m @BEEPLE auction.**  NFT Artist fanboy.  Lucky husband, proud father, wishful thinker."  (emphasis added); and



Venkateswaran's Twitter page.
(Accessed June 5, 2023).

iii.   Venkateswaran's biography page for the 2023 Consensus by CoinDesk

conference (CoinDesk's flagship annual crypto and Web3 conference), reads: "Anand is the Co-Founder and CEO of the Polygon-incubated Layer-E. He has been a journalist, an ad-man, and a GTM strategist for FinTech. **In the metaverse, he was Twobadour, Steward of the $250mn Metapurse Fund. With Metakovan, he won the Christie's auction for the $69 mn Beeple's First 5000 Everydays.** He was the executive producer of Dreamverse New York, the largest ever NFT Art Exhibition. With a collectibles-based product suite at Layer-E, he hopes to supercharge engagement and revenue for global brands and creators." (emphasis added). And on April 28, 2023, at the Consensus by CoinDesk conference Venkateswaran, along with a Web3 entrepreneur, presented a talk entitled, "Who Are You in Web3? Exploring Tokenized Identity." The description for the talk reads: "**Going by the pseudonym Twobadour.eth, Anand Venkateswaran made headlines in 2021 as one half of the duo behind the $69.3M purchase of a Beeple NFT.** What happens to the person behind an internet handle? Is he or she replaceable? **Does the identity belong to an organization, or the person?** Venkateswaran discusses with Yat Siu, a leading expert on property rights and IP on the blockchain." (emphasis added). During this talk, Anand made multiple references to creating the pseudonym TWOBADOUR, being TWOBADOUR, and being one of the two purchasers of the Beeple NFT. Upon information and belief, Defendant wrote or approved of the biography.

68.     Following termination of his agreement with Portkey, Venkateswaran has also

continued to use and associate himself with the trademark METAPURSE. By way of example, the top of Venkateswaran's Twitter feed identifies him as "Steward of @metapurse."

69. Upon information and belief, Venkateswaran continues to make false and tortious statements along the lines described above in connection with the promotion of his businesses.

70. Upon information and belief, Venkateswaran has not issued any public statements retracting his false and misleading statements.

71. Upon information and belief, Venkateswaran has not requested that any clarifications or retractions of the false or misleading statements referenced above be corrected.

72. Venkateswaran's explicit and implicit falsehoods and misstatements have harmed Portkey's and Sundaresan's reputations, current investments, and the opportunity to undertake new business projects and investments, including here in this District.

73. Venkateswaran's statements and actions have also harmed Plaintiffs' relationships with current and prospective clients and business partners.

74. Venkateswaran has actual knowledge of Sundaresan's sole purchase of the Beeple NFT, and of Plaintiffs' sole ownership of the trademark and pseudonym TWOBADOUR and its associated online identity, ownership of METAPURSE.

75. Defendant's false and misleading statements have caused the public to mistakenly believe that Defendant is the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT.

76. Venkateswaran has actual knowledge that Plaintiffs own all rights, title, and interest in the trademark and pseudonym TWOBADOUR and its associated online identity, and that Venkateswaran was one of a number of individuals who worked for Plaintiffs using the TWOBADOUR trademark and pseudonym.

77.     Venkateswaran has actual knowledge that Plaintiffs own all rights, title, and interest in the trademark and METAPURSE, and that Venkateswaran was one of a number of individuals who were responsible for assisting with METAPURSE at Plaintiffs' direction.

78.     Venkateswaran's foregoing acts have been willful, wanton, and in bad faith, and with the intent to misrepresent Portkey's and Sundaresan's business operations and success as that of his own.

79.     Venkateswaran is attempting to exploit Portkey's and Sundaresan's reputations and intellectual property to intentionally cause confusion among investors, artists, artist estates, trade conference organizers and organizations, scholars, publishers, and other market participants, hoping people choose to do business with him and his associated businesses, mistakenly believing that he was the source of Portkey's and Sundaresan's business operations and success.

80.     Venkateswaran's false and misleading statements exploit the goodwill and reputation associated with Plaintiffs.

81.     Upon information and belief, as a result of Defendant's false and misleading statements, people turn to Defendant for business opportunities, believing that he was responsible for Plaintiffs' business operations and success.

82.     As a proximate result of Venkateswaran's acts, Plaintiffs have suffered and will continue to suffer significant damage and harm to their business, goodwill, reputation, and profits.

83.     Plaintiffs' remedy at law is not adequate to compensate them for the irreparable injury which has already been inflicted on Plaintiffs and which will be inflicted on them in the future by virtue of Defendant's conduct.

## COUNT I
### (Unfair Competition/Reverse Passing Off, 15 U.S.C. § 1125(a))

84.     Plaintiffs reallege and incorporate herein by reference each of the foregoing

Paragraphs as if fully set forth herein.

85.     Defendant's acts constitute the use, in interstate commerce, of false or misleading descriptions of fact or false or misleading representations of fact likely to cause confusion, or to cause mistake, or to deceive as to the nature and extent of the affiliation, connection, or association of Defendant with Plaintiffs, as to the source of the business operations provided by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

86.     Defendant's acts were material in that they are likely to influence purchasing decisions by members of the public.

87.     Defendant's acts were intentional, willful, and done with full knowledge.

88.     Defendant's acts have caused and will continue to cause irreparable harm and injury to Plaintiffs.  Unless Defendant is enjoined from further actions, Defendant will continue his illegal acts and cause immeasurable damage to the goodwill and reputation of Plaintiffs.

89.     In addition, as a result of Defendant's conduct, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

90.     In addition to actual damages and any profits Defendant derived from his improper conduct, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiffs to recover their attorneys' fees.

## COUNT II
### (False or Misleading Representations or Advertising, 15 U.S.C. § 1125(a))

91.     Plaintiffs reallege and incorporate herein by reference each of the foregoing Paragraphs as if fully set forth herein.

92.     Defendant has acted knowingly and intentionally held himself out to the public as the source of Portkey's business operations and success.

93.     Defendant repeatedly caused the public to believe that he is an owner the of the

Beeple NFT.

94.     Defendant repeatedly caused the public to believe that he was responsible for Portkey's business operations and success.

95.     Defendant repeatedly caused the public to believe that he owns the trademark and pseudonym TWOBADOUR and its associated online identity.

96.     Defendant's statements were literally false and/or implicitly false.

97.     Defendant's false statements are material in that they are likely to influence purchasing decisions by members of the public, and are likely to cause confusion.

98.     Defendant's aforesaid acts constitute false and/or misleading representations violation of Section 43(a) for the Lanham Act, 15 U.S.C. § 1125(a).

99.     Upon information and belief, Defendant has obtained gains, profits, and business advantages as a result of his wrongful acts in an amount to be determined.

100.    Upon information and belief, Defendant's aforementioned acts have been willful, wanton, and in bad faith, and with the intent to misrepresent his role at Portkey, his role in the purchase of and/or ownership of the Beeple NFT, his role in the ownership of the TWOBADOUR trademark and pseudonym and its associated online identity, and to trade off the reputation and goodwill of Plaintiffs.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

101.    Defendant's wrongful acts will continue unless enjoined by this Court.

102.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforementioned acts of Defendant in an amount thus far not determined.

## COUNT III
### (Trademark Infringement, 15 U.S.C. § 1125(a))

103.    Plaintiffs reallege and incorporate herein by reference each of the foregoing Paragraphs as if fully set forth herein.

104.    Defendant's conduct constitutes willful trademark infringement of Portkey's trademark TWOBADOUR in violation of 15 U.S.C. § 1125(a).

## COUNT IV
### (Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349)

105.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

106.    Defendant's conduct is likely to cause confusion and constitutes deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

## COUNT V
### (Injury to Business Reputation and Dilution Under N.Y. Gen. Bus. Law § 360-l)

107.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

108.    Portkey owns the trademark TWOBADOUR.

109.    The trademark TWOBADOUR is distinct and closely associated with Portkey's business and reputations.

110.    Defendants' misuse of Portkey's intellectual property, and false association with Plaintiffs' business, will ultimately dilute the value of the trademark TWOBADOUR and pseudonym TWOBADOUR and its associated online identity.

111.    Defendant's conduct constitutes injury to business reputation and dilution in violation of N.Y. Gen. Bus. Law § 360-l.

## COUNT VI
### (Trademark Infringement and Unfair Competition, New York Common Law)

112.    Plaintiff realleges and incorporates herein by reference each of the foregoing allegations as if fully set forth herein.

113.    Defendant's conduct constitutes willful trademark infringement and unfair

competition in violation of New York common law.

## COUNT VII
### (Claim for Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)

114.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

115.    Portkey owns the trademark and pseudonym TWOBADOUR and its associated online identity.

116.    Portkey owns the trademark METAPURSE.

117.    Defendant has no legal rights to the use of the trademark and pseudonym TWOBADOUR, but has continued to use same and to associate himself with same.

118.    Defendant has no legal rights to the use of the trademark METAPURSE, but has continued to use same and to associate himself with same.

119.    Accordingly, an actual and justiciable controversy exists between the Parties.

120.    A determination that Portkey has exclusive rights to and ownership of the trademark and pseudonym TWOBADOUR and its associated online identity would resolve this controversy.

121.    A determination that Portkey has exclusive rights to and ownership of the trademark METAPURSE would resolve this controversy.

## PRAYER FOR RELIEF

122.    **WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor on all counts of this Complaint and grant Plaintiffs the following relief:

123.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting unfair competition and reverse passing off, and awarding Plaintiffs (i)

actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

124.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting false or misleading statements or representations or otherwise engaging in false advertising in regarding to Plaintiffs and awarding Plaintiffs (i) actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

125.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making further use of the trademark or pseudonym TWOBADOUR, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto;

126.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making any further use of the trademark METAPURSE, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto

127.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making public use of Plaintiffs' names and any designations or trademarks associated with Plaintiffs;

128.    Permanently enjoin and restrain Defendant successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting use of Plaintiff's names and any designations or trademarks associated

with Plaintiffs;

129.    Order Defendant to publicly issue corrective statements through all appropriate channels, including without limitation all of his social media accounts, websites, and blogs, to correct any false statements made in regard to Plaintiffs, and to send a written corrective statement to all third-parties to whom he made such false statements;

130.    Order Defendant to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendant of an injunction in this action, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith, pursuant to 15 U.S.C. § 1116(a);

131.    Order Defendant to provide Plaintiffs an accounting of any and all monies, profits, gains, and advantages derived by Defendant through the aforementioned acts;

132.    Award Plaintiffs three times Defendant's profits or three times Plaintiffs' damages sustained as a result of Defendant's aforementioned acts, pursuant to 15 U.S.C. § 1117(a);

133.    Award Plaintiffs their reasonable attorneys' fees, taxable costs, and disbursements, pursuant to 15 U.S.C. § 1117(a);

134.    Award Plaintiffs pre-judgment and post-judgment interest;

135.    Declare that Portkey owns the trademark and pseudonym TWOBADOUR and its associated online identity;

136.    Declare that Portkey owns the trademark METAPURSE; and

137.    Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  June 15, 2023
      New York, New York

Respectfully submitted,

By:

   /s/ Robert M. Wasnofski, Jr.
Robert M. Wasnofski, Jr.
Daniel A. Schnapp
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Phone:  (212) 768-6748
Fax:  (212) 768 6800
robert.wasnofski@dentons.com
daniel.schnapp@dentons.com

*Attorneys for Plaintiffs Portkey Technologies Pte Ltd. and Vignesh Sundaresan*