**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PORTKEY TECHNOLOGIES PTE LTD. and
VIGNESH SUNDARESAN,

                        Plaintiffs,

    v.

ANAND VENKATESWARAN,

                        Defendant.

Case No. 1:23-cv-5074-JPO

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND .......................................................................................................3

III.    PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS FOR WHICH
        RELIEF MAY BE GRANTED AGAINST MR. VENKATESWARAN .....................6

        A.      Legal Standards...........................................................................................6

                1.      Fed. R. Civ. P. 12(b)(6)....................................................................6

                2.      Fed. R. Civ. P. 12(b)(1)....................................................................6

        B.      The Complained-of Use is Expressly Permitted Under Trademark and
                Unfair Competition Law Because As a Matter of Law There is No
                Likelihood of Confusion from Reference to "Former" Positions.........................7

        C.      Plaintiffs Do Not Plead Facts Showing That The Complained-Of Use is
                Use in Commerce; It is Fair Use and Could Not Possibly Confuse
                Consumers...................................................................................................9

                1.      The Complaint Fails to Plead Use in Commerce....................................10

                2.      The Complaint Fails to Plead a Basis on Which Any Consumer
                        Could be Confused by Mr. Venkateswaran's Alleged Statements..........11

                3.      Plaintiffs Have Not Sufficiently Pleaded Likelihood of Confusion
                        Because The Alleged Use Is Nominative Fair Use.................................12

                4.      The Alleged Use is Descriptive Fair Use...............................................14

        D.      The Complaint Fails to Plead Necessary Factual Bases for Unfair
                Competition / False Advertising Claims (Counts I , II, VI)...............................15

                1.      Plaintiffs Identify No False Statement by Mr. Venkateswaran ...............16

                2.      Plaintiffs Fail to Plead That A False Statement Was Made in
                        Commerce ............................................................................................20

                3.      Plaintiffs Fail to Plead Facts to Support Materiality...............................20

                4.      Plaintiffs Have Pleaded No Facts to Support A Claim for the
                        Required Element of Damages ...............................................................21

        E.      Plaintiffs Have Not Pleaded Facts to Support A Claim for Deceptive Acts
                and Practices Under N.Y. Gen. Bus. Law § 349 (Count IV)...............................22

i

F.  Plaintiffs Have Not Pleaded Facts to Support A Claim for Injury to Business Reputation and Dilution Under N.Y. Gen. Bus. Law § 360-1 (Count V) ................................................................................................ 23

IV.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF, AND ALTERNATIVELY SHOULD DECLINE TO EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT (COUNT VII) ......................... 23

V.  THE COURT SHOULD DISMISS WITH PREJUDICE AND NOT GRANT LEAVE TO AMEND ................................................................................. 24

VI.  CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
414 F.3d 400 (2d Cir. 2005).................................................................................................9, 10

*Accion v. Hernandez*,
367 F.3d 61 (1st Cir. 2004)..........................................................................................................19

*Arnold v. ABC, Inc.*,
No. 06-cv-1747-GBD, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) .................................10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................6

*BGA, LLC v. Ulster County, N.Y.*,
320 Fed.Appx. 92 (2d Cir. 2009)................................................................................................24

*Board-Tech Elec. Co. v. Eaton Corp.*,
737 Fed. Appx. 556 (2d. Cir. 2018)............................................................................................16

*Borghese Trademarks, Inc. v. Borghese*,
No. 10-cv-5552-JPO, 2013 WL 143807 (S.D.N.Y. Jan. 14, 2013) ...........................................22

*Burberry Ltd. v. Euro Moda, Inc.*,
No. 08-cv-5781-CM, 2009 WL 1675080 (S.D.N.Y. June 10, 2009)...........................................23

*Business Trends Analysts v. Freedonia Grp., Inc.*,
650 F. Supp. 1452 (S.D.N.Y. 1987).......................................................................................9, 11

*C=Holdings B.V. v. Asiarim Corp.*,
992 F. Supp. 2d 22 (S.D.N.Y. 2013)...........................................................................................20

*Casper Sleep, Inc. v. Nectar Brand LLC*,
2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020)............................................................................22

*City of Leavenworth v. Projekt Bayern Ass'n*,
No. 2:22-cv-0174, 2022 WL 4546550 (E.D. Wash. Sept. 28, 2022)...........................................19

*Codename Enters. v. Fremantlemedia N. Am., Inc.*,
No. 16-cv-1267-AT, 2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018) ...........................................15

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
  949 F.2d 42 (2d Cir. 1991)............................................................................................3

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d Cir. 1997).........................................................................................11

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*,
  451 F.3d 295 (2d Cir. 2006)..........................................................................................6

*Dow Jones & Co. v. Harrods Ltd.*,
  346 F.3d 357 (2d Cir. 2003)..........................................................................................7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  11 F.3d 1460 (9th Cir. 1993) ......................................................................................15

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
  493 F. Supp. 2d 545 (E.D.N.Y. 2007) ........................................................................23

*Gurvey v. Cowan, Liebowitz & Latman*,
  P.C., 757 Fed. Appx. 62 (2d Cir. 2018) .....................................................................25

*Harihar v. Jeanne D'Arc Credit Union*,
  2021 WL 1617187 (D. Mass. Apr. 26, 2021) .............................................................19

*Hectronic GmbH v. Hectronic USA Corp.*,
  No. 20-cv-2964-LLS, 2020 WL 6947684 (S.D.N.Y. Nov. 24, 2020) ...............20, 21

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016)...................................................................................12, 14

*Kaplan, Inc. v. Yun*,
  16 F. Supp. 3d 341 (S.D.N.Y. 2014)......................................................................22, 23

*Keller v. Schoharie Cty. Dep't Soc. Servs*,
  848 Fed. Appx. 38 (2d Cir. 2021)...............................................................................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S.Ct. 1377 (2014)..................................................................................................21

*Matson v. Bd. of Educ.*,
  631 F.3d 57 (2d Cir. 2011).............................................................................................6

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007).........................................................................................25

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)....................................................................................................6, 7

*Merck & Co. v. Mediplan Health Consulting*,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006)....................................................................9, 10

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
  No. 15-cv-6067-SJF, 2017 WL 10445800 (S.D.N.Y. Feb. 14, 2017) ..............................21, 22

*Optical Alignment Sys. & Inspection Servs. v. Alignment Servs. of N. Am.*,
  909 F. Supp. 58 (D.N.H. 1995)....................................................................8, 9

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
  No. 19-cv-5979, 2020 WL 2512092 (S.D.N.Y. May 15, 2020) ..................................12, 14, 15

*Picket Fence Preview, Inc. v. Zillow, Inc.*,
  No. 22-cv-2066, 2023 WL 4852971 (2d Cir. July 31, 2023)....................................................15

*S&A Futures, LLC v. Sysco Chi., Inc.*,
  No. 11-cv-7629, 2012 WL 851556 (N.D. Ill. Mar. 13, 2012) ..................................................24

*Saleh v. Sulka Trading, Ltd.*,
  957 F.3d 348 (2d Cir. 2020)....................................................................7, 24

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
  752 F.3d 239 (2d Cir. 2014)....................................................................7, 24

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014)....................................................................25

*Valle v. YMCA*,
  No. 05-cv-5318-LTS, 2006 WL 2571946 (S.D.N.Y. July 6, 2006) ........................................19

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
  403 F. Supp. 3d 361 (S.D.N.Y. 2019)....................................................................13, 14

**Statutes**

15 U.S.C. § 1114(1) ....................................................................9

15 U.S.C. § 1115(a)(1)(B) ....................................................................20

Lanham Act....................................................................*passim*

N.Y. Gen. Bus. Law § 349....................................................................22

N.Y. Gen. Bus. Law § 350....................................................................22

N.Y. Gen. Bus. Law § 360....................................................................23

N.Y. Gen. Bus. Law § 360-1 ....................................................................23

**Other Authorities**

2 Moore's Fed. Prac. § 12.34[2]........................................................................................3

4 McCarthy on Trademarks and Unfair Competition § 23:54 (5th ed.) ...................................9, 15

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 6, 7, 24

Fed. R. Civ. P. 12(b)(6)................................................................................ *passim*

McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.) ...........................................12

Defendant Anand Venkateswaran ("Mr. Venkateswaran") respectfully submits the following Memorandum of Law in Support of Defendant's Motion to Dismiss all claims in the Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## I.      INTRODUCTION

This case has nothing to do with trademark or unfair competition law.  This case was brought by Vignesh Sundaresan ("Mr. Sundaresan"), an individual with hundreds of millions of dollars in assets at his disposal,[1] to impose the costs, burdens, and stress of litigation on Mr. Venkateswaran, his long-time (and now former) friend of more modest means.  This is a misuse of the U.S. legal system, and the Court should dismiss the Complaint with prejudice.

This case concerns the end of a personal friendship between Mr. Venkateswaran and Mr. Sundaresan and the aftermath of their falling out.  After years of friendship and collaborative work for Portkey Technologies Pte Ltd. ("Portkey"), the pair's relationship became damaged beyond repair, and they dissolved their professional relationship.  Since then, Mr. Venkateswaran has moved from India to the United States and endeavored to move forward with his life and career. In these efforts, Mr. Venkateswaran has, like countless other working people, accurately described his work experience in personal materials such as his resume and, relevant here, his LinkedIn and Twitter profiles.  He has also discussed his career at conferences and in digital media channels dedicated to the non-fungible token ("NFT") industry in which he has spent his career.  Mr. Sundaresan, now Mr. Venkateswaran's former employer, seeks to control how Mr. Venkateswaran describes his work experience, and specifically demands that Mr. Venkateswaran refrain from

---

[1] In a June 2021 interview with the *Financial Times*, Mr. Sundaresan stated that the $69.3 million purchase price paid for the digital artwork *Everydays: The First 5000 Days* was "'much less' than 10 percent of [his] net worth."  *See* Stefania Palma, FINANCIAL TIMES, *Crypto investor Vignesh Sundaresan: 'It's the NFT that changed the world'* (June 4, 2021), https://www.ft.com/content/79f3452f-89c9-4c56-804d-dd4b5b5b8c92.

describing it truthfully. This Complaint does not seek to vindicate any legitimate intellectual property rights. Its purpose appears to be personal; to impose costs and to hurt Mr. Venkateswaran by impairing his ability to find gainful employment.

In perpetuating his personal grudge, Mr. Sundaresan, loosely invokes the guise of U.S. trademark law, and asks the Court to give former employers the ability to dictate and control former employees' ability to describe their work experience on sites such as LinkedIn and Twitter – even where, as here, done truthfully. Trademark law, however, does not provide former employers such dangerous control. Specifically:

1.  It is black letter law that trademark law does not prohibit the alleged statements of which Plaintiffs complain, because there can be no likelihood of confusion from references to "former" positions as a matter of law.

2.  Most of the statements Plaintiffs accuse of being false are demonstrably true – confirmed even by Plaintiffs' Complaint. Allegations of any remaining alleged statements lack specificity sufficient even to allege that they were actually made by Mr. Venkateswaran.

3.  None of the alleged statements at issue was used "in commerce," as required for an actionable claim.

4.  No alleged statement could materially influence purchasing decisions or possibly cause Plaintiffs any damage.

5.  The Complaint also seeks an improper advisory opinion where there is no concrete dispute; Mr. Venkateswaran has never disputed the ownership of Plaintiffs' trademarks.

Accordingly, Mr. Venkateswaran respectfully asks that the Court dismiss the Complaint with prejudice. To hold Plaintiffs' claims can survive a motion to dismiss invites dangerous precedent: that employers can sue former employees if those employees represent their work

experience in a way employers dislike, even if truthful. The chilling effect of such a ruling is clear, particularly as well-off corporate employers and wealthy individuals could, as here, abuse the cost of litigation to limit truthful speech of former employees, simply because former employers do not like what is being said. Similarly, to hold such statements – which are descriptive, personal, and do not promote any goods or services – could amount to actionable use in commerce would risk exposing individual employees to a raft of vexatious speech-limiting lawsuits.

No leave to amend should be granted. Plaintiffs and their sophisticated counsel knew of these defects when they filed the Complaint. And if not, they were informed of them weeks prior to this filing and chose not to attempt to address them. *See* Declaration of R. Carroll ("Carroll Decl.") Ex. A (Oct. 2, 2023 letter from R. Carroll to R. Wasnofski, setting forth deficiencies undermining the Complaint).

## II.    BACKGROUND[2]

Mr. Venkateswaran and Plaintiff Mr. Sundaresan were long-time personal friends. *See* Metakovan and Twobadour, THE METAPURSER, *NFTs: The First 5000 Beeples* (Mar. 18, 2021), https://metapurser.substack.com/p/nfts-the-first-5000-beeples[3] (article co-written by Mr. Venkateswaran and Mr. Sundaresan; cited and discussed by Plaintiffs in ¶ 33 of the Complaint, and attached as Exhibit B to the Carroll Decl.).[4] In 2017, Mr. Sundaresan, the founder and CEO of Portkey (*see* ECF No. 1 ¶ 52), asked Mr. Venkateswaran to work with him. *See* Carroll Decl.

---

[2] While Mr. Venkateswaran accepts all well-pleaded facts as true for purposes of this motion under Rule 12(b)(6), as required, he does not concede the accuracy of any allegations, and expressly reserves the right to dispute them.

[3] Notably, since this article was included as an exhibit to correspondence sent to Plaintiffs' counsel, the webpage hosting the article was deactivated. *See* Carroll Decl. ¶ 3.

[4] On a motion to dismiss, the Court may consider materials referenced by Plaintiffs in the Complaint. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *accord* 2 Moore's Fed. Prac. § 12.34[2] (courts may consider "[u]ndisputed documents alleged or referenced in complaint").

Ex. B.  Together, they built Portkey's collection of NFTs and metaverse assets, and in the process transformed the space for digital art and NFTs.  *See id.*  They did so as a business venture and with an aim "to show Indians and people of color that they too could be patrons [and] that crypto was an equalizing power between the West and the Rest."  *See id.*  They both achieved notoriety for their work, but Mr. Sundaresan – the "sole owner" of Portkey (ECF No. 1 ¶ 18) – alone reaped astronomical financial returns.

From 2017 to 2022, Mr. Venkateswaran worked as a contractor for Portkey.  *See* ECF No. 1 ¶ 52.  He provided various services, including "managing personal communications" for Mr. Sundaresan, as well as "developing UI and UX; communications and public relations; community management; management of social media platforms; website development and management; hiring and managing UI/UX design team; and attending and representing in conferences deemed essential for Portkey in terms of software development, education, promotion, marketing or otherwise."  *See id.* ¶¶ 52-53.  He was also "directed by Portkey to assist with the operation of METAPURSE," "a fund dedicated to the acquisition of NFT art and other Web3-related investments."  *Id.* ¶¶ 19, 54.  Importantly, and as is undisputed, Mr. Venkateswaran was also "directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR."  *See id.* ¶ 54.

Mr. Venkateswaran helped identify and effectuate numerous investments and projects in the NFT space for Plaintiffs.  *See* Carroll Decl. Ex. B. [5]  This work included the B.20 token and project, where Mr. Venkateswaran and Plaintiffs highlighted "high-value NFTs"; the purchase of "20 single edition art pieces of Beeple's for $2.2M"; and buying and developing "prime real estate

---

[5] References in materials to "Metakovan" refer to Mr. Sundaresan.  *See* ECF No. 1 ¶ 32.

4

in virtual worlds" with "virtual architects." *See id.* Perhaps most notably, they worked together to enable Portkey's successful $69 million bid to purchase *Everydays: The First 5000 Days* ("*Everydays*"), an NFT created by the artist Beeple (Mike Winkelmann), that was auctioned and sold at Christie's auction house. *See id.*; ECF No. 1 ¶¶ 21-26.

Following personal disagreements with Mr. Sundaresan, Mr. Venkateswaran ended his working relationship with Plaintiffs in 2022. *Id.* ¶¶ 58-60. Since then, Mr. Venkateswaran has moved to a new country and sought to move on with his career. As part of this, and as is common, Mr. Venkateswaran has described his work experience on his personal LinkedIn and Twitter pages. *See id.* ¶ 67. He has also discussed his experience on podcasts, interviews, and videos dedicated to the NFT space. *See id.* ¶¶ 62, 67. At all times, he has accurately described his prior work.

Plaintiffs complain about Mr. Venkateswaran's descriptions of his experience. This includes his LinkedIn profile summary, which stated: "CoFounder and CEO of eDAO. Fmr Steward of Metapurse, the largest NFT Fund in the world. Capital allocation, experience design, artists & repertoire. Creator of the @Twobadour pseudonym." *See id.* ¶ 67 (emphasis omitted). This also includes his Twitter profile summary, which stated: "Co-Founder & CEO @LayerEhq. As @twobadour, Steward of @metapurse, won the $69m @BEEPLE auction. NFT Artist fanboy. Lucky husband, proud father, wishful thinker." *Id.* (emphasis omitted). Plaintiffs also complain that in interviews and videos, Mr. Venkateswaran has stated that he "used to be the steward of Metapurse" and described his role in bidding on *Everydays*. *See id.* ¶ 62. Finally, Plaintiffs complain about statements made about Mr. Venkateswaran by CoinDesk, a third party, in connection with its "flagship annual crypto and Web3 conference" – asserting, implausibly and without any basis, that Mr. Venkateswaran "wrote or approved of the biography." *See id.* ¶ 67.

Mr. Venkateswaran has not made any complained-of statements in commerce to promote

5

any goods or services, and he does not compete with Plaintiffs. Plaintiffs do not allege otherwise.

**III. PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED AGAINST MR. VENKATESWARAN**

### A. Legal Standards

#### 1. Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Therefore, the complainant must set forth factual allegations sufficient to allow "for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although the Court must assume the truth of the facts alleged and must draw all reasonable inferences in the non-movant's favor, the Court is "not bound to accept as true legal conclusion[s] couched as . . . factual allegation[s]." *Bell Atlantic*, 550 U.S. at 555. Therefore, a complaint must contain more than just "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006).

#### 2. Fed. R. Civ. P. 12(b)(1)

A plaintiff asserting a declaratory judgment claim must establish that there exists between the parties "a case of actual controversy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A "case of actual controversy" requires a "definite and concrete" dispute between parties of "adverse legal interests" such that the Court can order "specific relief through a degree of conclusion character," as opposed to "an opinion advising what the law would be upon a

hypothetical state of facts." *Id.* (quotations omitted).  Where a plaintiff fails to show such a case of actual controversy exists, a declaratory judgment claim should be dismissed pursuant to Rule 12(b)(1).  *See Saleh v. Sulka Trading, Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020).  Even where these conditions are satisfied, the Court may, in its discretion, decline to "exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

In resolving a 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  But "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

**B.      The Complained-of Use is Expressly Permitted Under Trademark and Unfair Competition Law Because As a Matter of Law There is No Likelihood of Confusion from Reference to "Former" Positions**

Plaintiffs' alleged bases for their claims are that Mr. Venkateswaran has (accurately) described his former work for the Plaintiffs on LinkedIn and Twitter referring to the names "Twobadour" (to accurately refer to the name he previously used in his work with Plaintiffs) and "Metapurse" (to accurately refer to Plaintiffs' fund by its name), and that he has accurately described some of the work performed in his role. *See, e.g.*, ECF No. 1 ¶¶ 62, 67.  The Complaint pleads neither trademark infringement nor unfair competition; the law expressly permits Mr. Venkateswaran to do what the Complaint alleges that he did.

The Complaint alleges that Mr. Venkateswaran used two asserted trademarks "Twobadour" and "Metapurse" in connection with statements that while working for Plaintiffs, his work concerned Metapurse and that he operated under the pseudonym "Twobadour."  The

7

Complaint itself confirms that these statements are *true*.  Specifically, ¶ 54 of the Complaint states: "In his role at Portkey . . . Venkateswaran was directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR.  At least as early as September 2020, Venkateswaran was directed by Portkey to assist with the operation of METAPURSE."  ECF No. 1 ¶ 54.[6]

With these statements, Mr. Venkateswaran has made clear that this represents his former work experience and not his current role, including by writing that he "***used to be*** the steward of Metapurse" and he is the "***Fmr*** Steward of Metapurse.  *See* ECF No. 1 ¶¶ 62, 67 (emphasis added). It is likewise clear from his personal Twitter profile where he first states his current role, "Co-Founder & CEO @LayerEhq," and then notes his prior experience, "As @twobadour, Steward of @metapurse, won the $69m @BEEPLE auction."  *See id.* ¶ 67 (emphasis omitted).

Where, as here, a defendant is alleged to use company names and other trademarks in a manner that references a former association, there is no likelihood of confusion, and the complaint fails to state a claim, as "[n]o likelihood of confusion results from the fair and accurate use of a company name as a means of identifying either an individual working for a company or of describing the nature of goods or services being offered by that company."  *See Optical Alignment Sys. & Inspection Servs. v. Alignment Servs. of N. Am.*, 909 F. Supp. 58, 61 (D.N.H. 1995) (dismissing Lanham Act claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6); "the plaintiff's own complaint concedes that the individual defendants are former employees" and ["i]f anything, the reference to the individual defendants' former employment with the plaintiff discourages the inference that OASIS and the individual defendants or their company are

---

[6] While it is not necessary to resolve this motion, it is, in fact, clear that Plaintiffs used the title "Steward" of Metapurse to refer to Mr. Venkateswaran's role in working with Plaintiffs.  *See* Carroll Decl., Ex. B.

affiliated") (citations omitted); *see also Business Trends Analysts v. Freedonia Grp., Inc.*, 650 F. Supp. 1452, 1461 (S.D.N.Y. 1987) (denying motion for preliminary injunction; no infringement where former employees identified as "co-founder of Predicasts, Inc" and "formerly Research Director of Predicasts"). Indeed, it is black letter law that "[a] person . . . may use the trademark of another . . . to indicate a previous place of employment if the trademark is used in such a way as to be truthful and not to confuse persons into mistakenly believing that there is a continuing association." 4 McCarthy on Trademarks and Unfair Competition § 23:54 (5th ed.). Further, "[a]n employee who leaves for a new employment can make an honest and non-confusing reference to the former employer in advertising by use of the words 'former,' 'formerly' or similar terms." *Id.* The Court should dismiss each of Plaintiffs' claims for failure to state a claim, because Mr. Venkateswaran only uses the asserted marks in accurately stating his former association with Plaintiffs. *See Optical Alignment Sys. & Inspection Servs.*, 909 F. Supp. at 61.

### C.   Plaintiffs Do Not Plead Facts Showing That The Complained-Of Use is Use in Commerce; It is Fair Use and Could Not Possibly Confuse Consumers

There are additional reasons to dismiss Plaintiffs' trademark infringement claims. As an initial matter, a trademark can only be infringed where it is used "in connection with the sale, offering for sale, distribution or advertising of any goods or services." 15 U.S.C. § 1114(1). Where such use in commerce is not shown, the claim should be dismissed. *See Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 415-16 (S.D.N.Y. 2006) (dismissing trademark infringement claim pursuant to Rule 12 where marks at issue not used in commerce); *see also 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 412-13 (2d Cir. 2005) (reversing preliminary injunction and remanding to District Court "with instructions to [] dismiss with prejudice [plaintiff's] trademark infringement claims" because use at issue was not use in commerce under the Lanham Act). In addition, "[t]o state a claim for trademark infringement . . .

9

plaintiff must allege facts which establish that [the] mark[s] merit[] protection and that Defendant['s] use of [the] mark is likely to cause consumer confusion as to the mark's source." *Arnold v. ABC, Inc.*, No. 06-cv-1747-GBD, 2007 WL 210330, at \*2 (S.D.N.Y. Jan. 29, 2007) (dismissing claims under Rule 12(b)(6)).  Here, Mr. Venkateswaran has not used the asserted marks in commerce.  Moreover, his use of the terms could not possibly confuse any consumers and is fair use.

### 1.   The Complaint Fails to Plead Use in Commerce

"Use in commerce" requires that a mark actually be used in connection with goods or services.  A mark is "used in commerce" when, in connection with goods, it is placed on goods, their containers, or displays or documents associated with goods.  *See 1-800 Contacts, Inc.*, 414 F.3d 400 at 407 (citing 15 U.S.C. § 1127).  In connection with services, a mark is used in commerce "'when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.'"  *Id.* (citing 15 U.S.C. § 1127).

Plaintiffs fail to plead any facts to support a contention that Mr. Venkateswaran made use of the asserted marks in commerce.  In the statements accused in the Complaint, Mr. Venkateswaran is not promoting ***any*** goods or services, and Plaintiffs do not allege otherwise.  His statements at issue were made on his personal webpages and in discussions about his personal work experience, and he has done so while making clear what his current affiliations are.  *See supra* Part III.B.  Without any connection to goods or services being sold, there is no use in commerce and the court should dismiss Plaintiffs' trademark infringement claims for failure to plead this critical element.  *See Merck & Co.*, 425 F. Supp. 2d at 415-16; see also *1-800 Contacts, Inc.*, 414 F.3d 400 at 412-13.

**2.    The Complaint Fails to Plead a Basis on Which Any Consumer Could be Confused by Mr. Venkateswaran's Alleged Statements**

"To state a claim for trademark infringement . . . plaintiff must allege facts which establish that [the] mark[s] merit[] protection and that Defendant['s] use of [the] mark is likely to cause consumer confusion as to the mark's source." *Arnold*, 2007 WL 210330, at *2 (dismissing claims under Rule 12). Here, even assuming Mr. Venkateswaran's alleged use of the terms could qualify as use in commerce (and they do not), no consumer could be confused into thinking that Plaintiffs are the source of any goods or services offered by Mr. Venkateswaran, as he is not using the asserted marks to identify, distinguish, or indicate the source of goods or services. Moreover, the textual materials complained of clearly indicate his current affiliations, undercutting any allegation of confusion.

First, the statements at issue are accompanied by language making clear that Mr. Venkateswaran was formerly associated but no longer is associated with Metapurse, such as his statements that he "***used to be*** the steward of Metapurse" and that he is the "***Fmr*** Steward of Metapurse. *See* ECF No. 1 ¶¶ 62, 67 (emphasis added). These truthful qualifications undermine any claim of infringement. *See Business Trends Analysts*, 650 F. Supp. at 1461 ("Stating that these individuals have previously been employed by Predicasts does not invite the inference that the new company, TFG, is affiliated with the old one.").

Second, the statements are accompanied by statements indicating Mr. Venkateswaran's current employment and associations. *See* ECF No. 1 ¶ 67 ("Co-founder and CEO of eDAO" and "Co-founder and CEO @LayerEhq"). This too negates any claim of consumer confusion. *See, e.g.*, *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase . . . [is] . . . evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants'

own trademarks."); *accord Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19-cv-5979, 2020 WL 2512092, at \*5 (S.D.N.Y. May 15, 2020) (granting motion to dismiss under Rule 12; "Defendant's clear identification of the articles' source by prominently displaying the BTN masthead at the top of the articles at issue evidences that defendant did not use the Mark as a trademark.").

The Complaint fails to plead any plausible basis on which any consumer could be confused as to Mr. Venkateswaran's current affiliation.

### 3. Plaintiffs Have Not Sufficiently Pleaded Likelihood of Confusion Because The Alleged Use Is Nominative Fair Use

The complained-of uses of the alleged trademarks "Twobadour" and "Metapurse" are nominative fair uses because Mr. Venkateswaran used these terms to identify, not Mr. Venkateswaran's goods or services, but Plaintiffs' work experience. *See* McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.).

The Second Circuit has adopted three factors specifically relating to "nominative fair use":

(1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark;

(2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and

(3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016). All three factors are met, based on the facts alleged by Plaintiffs.

First, an accurate description of Mr. Venkateswaran's work experience requires using the alleged trademarks "Twobadour" and "Metapurse"; he worked as Twobadour and serviced

Metapurse. Use of these terms is particularly required because for the majority of the time that Mr. Venkateswaran was engaged in newsworthy, reputation-enhancing work, he did so solely under the pseudonym Twobadour. *See* Carroll Decl. Ex. B. Given this, he must use the term Twobadour to connect himself to his accomplishments and experience. Indeed, Plaintiffs do not plead any alternative means for Mr. Venkateswaran to describe his work experience other than by using these terms. *See Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 379-80 (S.D.N.Y. 2019) (dismissing complaint under Rule 12(b)(6) for nominative fair use; finding it would "not be possible to refer to Weight Watchers without its mark").

The second factor considers "whether the alleged infringer stepped over the line into a likelihood of confusion by using a mark too prominently or too often, in terms of size, emphasis or repetition." *See id.* at 380 (quotation omitted). It is clear from a review of Mr. Venkateswaran's LinkedIn and Twitter profiles (at ¶ 67 of the Complaint) that he has not "stepped over the line." On LinkedIn, Mr. Venkateswaran uses each alleged trademark just once. *See id.* Each is in the same font as the remaining text – and not displayed more prominently. *See id.* And each appears only following a description of Mr. Venkateswaran's current affiliation ("CoFounder and CEO of eDAO"). *Id.* Finally, "Metapurse" is used in the statement "***Fmr*** Steward of Metapurse," making clear that he was formerly but no longer is in this role. *See id.* (emphasis added). Likewise, on Twitter, each term is used just once, in the same font as the rest of the profile text, and only after a description of Mr. Venkateswaran's current affiliation. *See id.* This factor weighs in favor of fair use. *See Weight Watchers Int'l, Inc.*, 403 F. Supp. 3d at 380.

The third factor, which considers whether a defendant suggested sponsorship or endorsement by Plaintiffs, weighs overwhelmingly in favor of fair use. In the complained-of content, Mr. Venkateswaran has clearly and accurately established that he had a former

13

relationship with Plaintiffs but no longer does.  He used the marks while noting his current affiliation and while making clear that he formerly served as the Steward of Metapurse.  *See* ECF No. 1 ¶ 67.  In no way do these statements suggest current sponsorship or affiliation with Plaintiffs. *See Weight Watchers Int'l, Inc.*, 403 F. Supp. 3d at 380.  All three factors weigh in favor of nominative fair use, and require dismissal.  *See id.*

In addition to these three factors, courts consider the traditional *Polaroid* factors for consumer confusion – even though the Second Circuit also recognizes that "many of the *Polaroid* factors are a bad fit" in nominative fair use cases.  *See Int'l Info. Sys. Sec. Certification Consortium, Inc.*, 823 F.3d at 165.  The *Polaroid* factors are design to assess likelihood of confusion, but as discussed, Plaintiffs have pleaded no plausible basis for any consumer confusion here based on Mr. Venkateswaran's accurate representations in personal materials.  *See supra* Part III.C.2. Dismissal is appropriate.  *See Weight Watchers Int'l, Inc.*, 403 F. Supp. 3d at 380.

### 4.      The Alleged Use is Descriptive Fair Use

Mr. Venkateswaran's use of the alleged trademarks is descriptive fair use.  All Mr. Venkateswaran has done is describe his prior roles, as workers do all the time on LinkedIn, in resumes, and through other personal sites.  Plaintiffs ask that the Court prohibit this free speech. Trademark law's descriptive fair use provision does not allow this.

A trademark infringement claim should be dismissed for descriptive fair use where "the use at issue was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *See, e.g.*, *Outhouse PR, LLC*, 2020 WL 2512092, at *4 (dismissing claim under Rule 12(b)(6)) (quotation omitted).  Here, all three requirements are easily satisfied.

Mr. Venkateswaran does not use the asserted trademarks "as a mark," which is use to designate the source of any good or service or even in connection with any good or service. *See id.*  Indeed, the Complaint does not refer to any goods or services being offered by Mr.

14

Venkateswaran.

"A use of a mark is descriptive if the words were used to describe the ingredients, quality or composition of a product, not the source of the product." *Id.* at *14. Here, Mr. Venkateswaran is not using the asserted trademarks to denote the source of any product or service; he is using is to accurately describe his past work experience – as is his right. *See* 4 McCarthy on Trademarks and Unfair Competition § 23:54 (5th ed.). This use is descriptive, as it "merely describes the subject but not the source." *See Outhouse PR, LLC*, 2020 WL 2512092, at *6. For the same reason, Mr. Venkateswaran's use of the mark is plainly in good faith.

Descriptive fair use is yet another independent basis on which the Court should dismiss Plaintiffs' trademark infringement claims. *See, e.g.*, *Outhouse PR, LLC*, 2020 WL 2512092, at *7 (dismissing trademark claim because mark was only used in descriptive manner); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993) (affirming dismissal of trademark claims under Rule 12(b)(6) after finding "fair use as a matter of law" because "uses were descriptive").

### D.    The Complaint Fails to Plead Necessary Factual Bases for Unfair Competition / False Advertising Claims (Counts I , II, VI)

Plaintiffs' claims for unfair competition and false advertising fail. "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff."[7] *Picket Fence Preview, Inc. v. Zillow, Inc.*, No. 22-cv-2066,

---

[7] "The standard for unfair competition under New York common law is the same as a Lanham Act trademark infringement claim, except that a plaintiff must prove 'bad faith' in order to prevail under New York common law." *Codename Enters. v. Fremantlemedia N. Am., Inc.*, No. 16-cv-1267-AT, 2018 WL 3407709, at *13 (S.D.N.Y. Jan. 12, 2018). In addition to the other deficiencies undermining Plaintiffs' claims, Plaintiffs fail to plead any basis for their bare allegations of bad faith (*see* ECF No. 1 ¶¶ 78, 100) as required for Plaintiff's New York common law claim.

2023 WL 4852971, at *4 (2d Cir. July 31, 2023). Plaintiffs have not identified any false statement by Mr. Venkateswaran, any use in commerce by him, any facts to support a claim of materiality, or any facts to support a claim of damages. Each of these deficiencies, alone, is sufficient to dismiss Plaintiffs' claims.

### 1. Plaintiffs Identify No False Statement by Mr. Venkateswaran

Plaintiffs' claims center on statements made by Mr. Venkateswaran in various fora, including on LinkedIn and Twitter, that are demonstrably true and not misleading. This is confirmed by the Complaint itself. For this alone, any false advertising, or similar, claim fails. *See, e.g.*, *Board-Tech Elec. Co. v. Eaton Corp.*, 737 Fed. Appx. 556, 558 (2d. Cir. 2018) ("First (and obviously), a plaintiff bringing a false advertising claim under Section 1125(a) must show falsity.") (quotations omitted).

The statements at issue can be summarized as follows:

1. Mr. Venkateswaran worked for Portkey;

2. While working for Portkey, Mr. Venkateswaran served as the Steward of Metapurse;

3. He operated under the pseudonym Twobadour; and

4. He was involved in bidding on *Everydays*.

*See* ECF No. 1 ¶¶ 11, 62-64, 67, 93-94. These statements form the bases for Plaintiffs' allegations. *See id.* As Plaintiffs' own statements and the Complaint confirm, none of these statements is false. *See supra* Part III.B. None can form the basis of a false advertising claim. *See, e.g.*, *Board-Tech Elec. Co.*, 737 Fed. Appx. at 558.

#### i.    Mr. Venkateswaran accurately represented his work for Portkey

First, Plaintiffs claim that Mr. Venkateswaran has "held himself out to the public as the source of Portkey's business operations and success" (ECF No. 1 ¶ 92) and "[m]isrepresent[ed] his role in Portkey through various public interviews and/or publishing untrue information on his

16

personal Twitter account, LinkedIn account." *See id.* ¶ 64.  Plaintiffs purport to support this contention with images of Mr. Venkateswaran's LinkedIn and Twitter profile pages, which respectively note that he was the "Fmr Steward of Metapurse" and "Steward of @metapurse." *See id.* ¶ 67.  Plaintiffs also take issue with statements made by Mr. Venkateswaran that, while working for Portkey, he served as the "Steward of Metapurse," operated under the pseudonym Twobadour, and was involved in bidding on *Everydays*.  *See id.* ¶¶ 62, 64, 67.  It is clear **even from the Complaint**, however, that Mr. Venkateswaran has not misrepresented his role at Portkey.  There is no factual allegation to support a false advertising claim.

### a.  Mr. Venkateswaran accurately represented that he worked for Portkey and Metapurse

It is undisputed that Mr. Venkateswaran worked for Portkey.  *See id.* ¶ 54 (purporting to describe Mr. Venkateswaran's "role at Portkey").  It also is undisputed that "Venkateswaran was directed by Portkey to assist with the operation of METAPURSE." *Id.*  Plaintiffs have no basis to complain about Mr. Venkateswaran's statements noting this.  Further, and contrary to Plaintiffs' allegations, Mr. Venkateswaran has not "continue[d] to . . . associate himself with . . . METAPURSE." *Cf. id.* ¶¶ 4, 11.  As the Complaint confirms, Mr. Venkateswaran has clearly and truthfully indicated that he was **previously** associated with Metapurse in his former role as "Steward of Metapurse." *See id.* ¶ 62 ("'I **used to be** the steward of Metapurse'"); *id.* ¶ 67 ("**Fmr** Steward of Metapurse") (emphasis added).

### b.  Mr. Venkateswaran accurately represented that he created and operated under the pseudonym "Twobadour"

The Complaint also confirms that Mr. Venkateswaran did, in fact, create and operate under the pseudonym "Twobadour" and, moreover, that he did so at Plaintiffs' direction.  Specifically, the Complaint states:  "Venkateswaran was directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR." *Id.* ¶ 54.  And Plaintiffs'

17

allegation is also contradicted by the Substack post referenced in ¶ 33 of the Complaint (Carroll Decl. Ex. B). The article, which was co-written by both Plaintiff Mr. Sundaresan and Mr. Venkateswaran, and published on Metapurse's platform, confirms "Anand wears Twobadour." *See* Ex. B. The Complaint also confirms that Mr. Venkateswaran did create the Twobadour pseudonym and, moreover, that he did so "under Sundaresan's instruction as an extension of Venkateswaran's role." *See* ECF No. 1 ¶ 40. It is clear that there is no basis to allege that Mr. Venkateswaran falsely claimed to have operated under the Twobadour pseudonym.

### c. Mr. Venkateswaran accurately represented that he was the "Steward of Metapurse"

The same article also confirms Mr. Venkateswaran's involvement in various aspects of Metapurse's business, including that his role was "steward of Metapurse." *See* Carroll Decl. Ex. B ("Metakovan and Twobadour are powerful personas that need not be one person or have just one purpose. As founder and steward of Metapurse, they are charged with helping build the metaverse."). Mr. Venkateswaran has accurately stated that he was the "Steward of Metapurse."

### d. Mr. Venkateswaran accurately stated that he bid on *Everydays*

Finally, the article confirms Mr. Venkateswaran's role in bidding on *Everydays*. The article describes "[h]ow two immigrants from Tamil Nadu bought a piece of digital art for $69M" and explains that "[b]y winning the Christie's auction of Beeple's Everydays: The First 5000 Days, *we* added a dash of mahogany to that color scheme." *See* Ex. B (emphasis added); *see also id.* ("*We* also paid $69.3M at Chrsitie's for the other [Beeple] piece.") (emphasis added). Mr. Venkateswaran can truthfully state that he "was one of the two guys who bought the $69 million-dollar Beeple piece" and "was 'one of the two guys that won the Christies auction. . . . and bought the $69 million Beeple piece.'" *Cf.* ECF No. 1 ¶ 62.

18

ii.      **Plaintiffs Complain About Statements That Plaintiffs Do Not (and Cannot) Plausibly Allege That Mr. Venkateswaran Made**

Plaintiffs also conclusively assert, without factual support, that Mr. Venkateswaran made additional statements. These allegations are not supported by citations to any documents and fail to include basic allegations as to "who did what to whom, when, where, and why," and the Court should not credit them. *See Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n any [] action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why . . . ."); *accord Valle v. YMCA*, No. 05-cv-5318-LTS, 2006 WL 2571946, at *6 (S.D.N.Y. July 6, 2006) (dismissing complaint because "[plaintiff] offers no facts to support this assertion," and "a complaint consisting of only bald assertions and setting forth no facts upon which a court could find a violation fails to state a claim under Rule 12(b)(6)"). Plaintiffs assert that Mr. Venkateswaran has claimed that he (i) owns *Everydays*, (ii) was "a co-founder of METAPURSE," (iii) was the only individual to operate as TWOBADOUR, and (iv) "owns the trademark and pseudonym TWOBADOUR and its associated online identity." *See* ECF No. 1 ¶¶ 11, 62-64, 67, 93, 95. Plaintiffs fail to cite any documents to support these allegations or to provide any details, presumably because they cannot truthfully do so. Such threadbare conclusions cannot form the basis of false advertising or unfair competition claims, and they should not be credited to assist Plaintiffs in bullying a former associate. *See City of Leavenworth v. Projekt Bayern Ass'n*, No. 2:22-cv-0174, 2022 WL 4546550, at *3 (E.D. Wash. Sept. 28, 2022) ("To be held liable for making false statements, the statements must be made by the *defendant*.") (emphasis in original) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Claims based on these alleged statements should be dismissed. *See Valle*, 2006 WL 2571946, at *6-7; *see also Harihar v. Jeanne D'Arc Credit Union*, 2021 WL 1617187, at *2-3 (D. Mass. Apr. 26, 2021) (false

19

advertising claim insufficient "because [plaintiff] does not set forth specific factual allegations from which the Court may infer that the defendants are liable to him").

>    **2.    Plaintiffs Fail to Plead That A False Statement Was Made in Commerce**

Even assuming these statements were both made by Mr. Venkateswaran and false (and there is no plausible basis to credit them because they lack detail), the claims must still be dismissed.  As is the case for trademark infringement, false advertising claims require use ***in commerce*** and should be dismissed where this cannot be shown.  *See* 15 U.S.C. § 1115(a)(1)(B) (accused use be "in connection with any goods or services" and consist of "commercial advertising or promotion"); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 22, 243-44 (S.D.N.Y. 2013) (dismissing false advertising claims because statements were not used in commerce).

As noted, Plaintiffs fail to plead facts to support their threadbare allegation of use in commerce for purposes of trademark or unfair competition law.  *See supra* Part III.C.1.  The statements at issue are not used to promote competing goods or services and were made on a personal basis.  *See id.*  They thus cannot form the basis of a false advertising claim.  *See C=Holdings B.V.*, 992 F. Supp. 2d at 243-44.

>    **3.    Plaintiffs Fail to Plead Facts to Support Materiality**

Where a plaintiff fails to plead facts that "support a reasonable inference that defendant misrepresented an inherent quality or characteristic," the materiality requirement of a false advertising is not satisfied and the claim must be dismissed.  *See Hectronic GmbH v. Hectronic USA Corp.*, No. 20-cv-2964-LLS, 2020 WL 6947684, at *7 (S.D.N.Y. Nov. 24, 2020).  A conclusory allegation of materiality alone is insufficient to survive a motion to dismiss.  *See id.* Here the sole allegations concerning materiality are unsubstantiated, conclusory statements that Mr. Venkateswaran's act and statements "were material" because "they are likely to influence

purchasing decisions by members of the public" and "are likely to cause confusion." *See* ECF No. 1 ¶¶ 86, 97. These boilerplate statements find no support in the Complaint, which identifies no "purchasing decisions" that could be influenced. Mr. Venkateswaran is an individual accused of describing his work experience, chiefly on personal webpages. Meanwhile, Plaintiffs have not pleaded that they sell any goods or services to consumers. Portkey is "a software and technology company that operates many of Sundaresan's blockchain and Web3 projects." *See* ECF No. 1 ¶ 18. Portkey owns Metapurse, which is a "fund dedicated to the acquisition of NFT art and other Web3-related investments," that "solely use[s] Sundaresan's capital to make investments and acquisitions." *See id.* ¶¶ 19, 47. In other words, Portkey is Mr. Sundaresan's investment vehicle. Plaintiffs fail to identify any customers whose purchasing decisions could be affected, much less explain how Mr. Venkateswaran's statements could materially affect such decisions. The false advertising claims fail, and should be dismissed. *See Hectronic GmbH*, 2020 WL 6947684, at *7.

### 4. Plaintiffs Have Pleaded No Facts to Support A Claim for the Required Element of Damages

Plaintiffs also fail to plead facts to establish the required element of damages. "[T]o come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales" not just hurt feelings. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014). Where a plaintiff fails to plead facts to support a claim for damages, its false advertising claim should be dismissed. *See Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-cv-6067-SJF, 2017 WL 10445800, at *10-11 (S.D.N.Y. Feb. 14, 2017) (dismissing false advertising claim for failure to state a claim because "[t]he complaint [wa]s bereft of any factual allegations from which it may reasonably be inferred that MAC suffered any economic or reputational injury"). Here, there is not a single allegation that can support an argument that Mr. Venkateswaran's statements have or

21

could cause actual damage to Plaintiffs. Mr. Venkateswaran is an individual who has accurately described his prior work experience in personal materials. He is not competing with Plaintiffs for anything, and they do not allege otherwise. Indeed, the word "compete" appears nowhere in the complaint. Likewise, Plaintiffs allege no actual or even speculative lost sales. Nor could they, as Plaintiffs have not pleaded that they sell anything to consumers. The only harm even conclusory suggested is speculative harm that might allegedly befall Plaintiffs' reputations. *See* ECF No. 1 ¶ 80 (conclusorily claiming exploitation of "goodwill and reputation"). This is not sufficient to maintain a false advertising claim. *See, e.g.*, *Millennium Access Control Tech.*, 2017 WL 10445800, at *11; *Borghese Trademarks, Inc. v. Borghese*, No. 10-cv-5552-JPO, 2013 WL 143807, at *17 (S.D.N.Y. Jan. 14, 2013) (granting summary judgment on false advertising claims because Lanham Act standing requires more than a "subjective belief," as "the Second Circuit has explicitly stated that 'speculative' injuries do not satisfy the standing requirement") (citing *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994)).

### E. Plaintiffs Have Not Pleaded Facts to Support A Claim for Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349 (Count IV)

Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 fail for the same reasons Plaintiffs' false advertising claims fail. *See, e.g.*, *Casper Sleep, Inc. v. Nectar Brand LLC*, 2020 WL 5659581, at *7 (S.D.N.Y. Sept. 23, 2020) (dismissing claims under Lanham Act and NY GBL §§ 349 and 350 as substantially the same). The claim also fails because Plaintiffs fail to allege harm to consumers beyond trademark confusion and unfair competition. *See Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (dismissing § 349 claim because "[t]he alleged deceptive acts" "are precisely the acts that constitute the alleged trademark infringement, which are outside the scope of [§ 349]" and "ordinary trademark disputes do not pose a significant risk of harm to the public health or interest and are therefore not the type of deceptive conduct that the statutes were designed to

address") (quotations and citation omitted).  Here, Plaintiffs dedicated just a single sentence to their claim under § 349 (ECF No. ¶ 106) and made no effort to allege harm beyond trademark infringement.  *See id.* (alleging conduct is "likely to cause confusion" without articulating any other harm).  This too requires dismissal.  *See Kaplan, Inc.*, 16 F. Supp. 3d at 352-53.

> **F.      Plaintiffs Have Not Pleaded Facts to Support A Claim for Injury to Business Reputation and Dilution Under N.Y. Gen. Bus. Law § 360-1 (Count V)**

Plaintiffs' claim under N.Y. Gen. Bus. Law § 360-l fails because, as discussed, Mr. Venkateswaran has not used any claimed trademark to identify goods or services in commerce.

N.Y. Gen. Bus. Law § 360-l provides a cause of action against "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."  N.Y. Gen. Bus. Law § 360-1.  But such a claim, like a claim for trademark infringement, requires that the marks at issue actually be used in commerce.  *See FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 548 n.4 (E.D.N.Y. 2007) (denying leave to amend claim under N.Y. Gen. Bus. § 360-1 as futile under 12(b)(6) standard because it "requires use of the trademark, and the definition of 'use' under N.Y. Gen. Bus. Law § 360 mirrors the definition of 'use' in the Lanham Act"); *accord Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781-CM, 2009 WL 1675080, at *10 n.3 (S.D.N.Y. June 10, 2009).  As noted above, the two marks at issue were not used by Mr. Venkateswaran in commerce.  *Supra* Part III.C.1. Accordingly, Plaintiffs' claim under § 360-l should be dismissed.  *See FragranceNet.com, Inc.*, 493 F. Supp. 2d at 555 (proposed claim under 360-1 "cannot survive a motion to dismiss").

**IV.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF, AND ALTERNATIVELY SHOULD DECLINE TO EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT (COUNT VII)**

The Court lacks subject matter jurisdiction over Plaintiffs' declaratory judgment claim

because there is no case or controversy concerning ownership of Plaintiffs' trademark rights. As set forth above, where a plaintiff fails to show such a case of actual controversy exists, a declaratory judgment claim should be dismissed under Rule 12(b)(1). *See Saleh*, 957 F.3d at 354.

Plaintiffs seek "determination[s] that Portkey has exclusive rights to and ownership of the trademark and pseudonym TWOBADOUR" and "the trademark METAPURSE." *See* ECF No. 1 ¶¶ 120-21. But Mr. Venkateswaran has never asserted Plaintiffs do not have such rights and ownership, let alone asserted that he owns such rights. *See* Declaration of A. Venkateswaran ¶¶ 1-2, 4-5.[8] Nor has he even challenged the validity of Plaintiffs' asserted trademarks. *See id.* ¶¶ 3, 6. The Complaint does not (and could not accurately) allege otherwise. Accordingly, there is no case or controversy concerning ownership of Plaintiffs' trademark rights and the Court lacks declaratory judgment jurisdiction over this claim. *See S&A Futures, LLC v. Sysco Chi., Inc.*, No. 11-cv-7629, 2012 WL 851556, at *5 (N.D. Ill. Mar. 13, 2012) (dismissing claim for a declaratory judgment that plaintiffs own valid trademark rights for lack of case or controversy because defendant "never contended that it owns or otherwise has any interest" in the marks).

Alternatively, the Court should decline to exercise its discretion over Plaintiffs' declaratory judgment claim. *See BGA, LLC v. Ulster County, N.Y.*, 320 Fed.Appx. 92, 93 (2d Cir. 2009) (no abuse of discretion in declining to exercise jurisdiction in suit seeking declaratory judgment).

## V.    THE COURT SHOULD DISMISS WITH PREJUDICE AND NOT GRANT LEAVE TO AMEND

Although "leave to amend shall be freely given when justice so requires," leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the

---

[8] In resolving a 12(b)(1) motion, the Court need only treat uncontroverted facts in a complaint as true; where, as here. "jurisdictional facts are placed in dispute" by an affidavit, the Court should not treat allegations in a complaint as true. *See Tandon*, 752 F.3d at 243.

opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Accordingly, leave to amend may be denied if Plaintiffs cannot specify how amendment would cure pleading deficiencies. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

First, amending the complaint would be futile. As set forth above, there are ample reasons why Plaintiffs' claim fail – most notably that the complained-of conduct is expressly permitted. *See supra* Part III.B. No amount of detail added into the complaint can contravene this and the other defects delineated above. *See Keller v. Schoharie Cty. Dep't Soc. Servs*, 848 Fed. Appx. 38, 39 (2d Cir. 2021) (no leave to amend where doing so would be futile).

Moreover, Plaintiffs' lawsuit was filed, and has been maintained, in bad faith. Before this motion was filed, Mr. Venkateswaran set forth in detail the many deficiencies in the Complaint. *See* Carroll Decl. Ex. A (Oct. 2, 2023 letter from R. Carroll to R. Wasnofski). In the same letter, Mr. Venkateswaran asked that Plaintiffs reduce burdens on both the parties and Court by dismissing or amending their Complaint before Mr. Venkateswaran was forced to file this motion. *See id.* at 4. Evidencing their bad faith, Plaintiffs did not even respond. No leave to amend should be granted. *See Gurvey v. Cowan, Liebowitz & Latman*, P.C., 757 Fed. Appx. 62, 65 (2d Cir. 2018) (no leave to amend complaint given evidence of bad faith).

Finally, as a practical matter, any delay in resolving this lawsuit will further Plaintiffs' improper motives and impose costs on Mr. Venkateswaran. Such a ruling may invite further lawsuits by former employers who wish to improperly control what former employees say about their prior work. Failing to disincentivize these lawsuits would chill speech in a manner unwarranted under trademark and competition law.

## VI.    CONCLUSION

For the foregoing reasons, Defendant Mr. Venkateswaran respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety and without leave to amend.

Dated: October 30, 2023

Respectfully submitted,

*/s/ Robert D. Carroll*
Robert D. Carroll
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
RCarroll@goodwinlaw.com

Timothy Keegan
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
TKeegan@goodwinlaw.com

*Attorneys for Defendant Anand Venkateswaran*