# EXHIBIT A

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 2 of 57

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PORTKEY TECHNOLOGIES PTE LTD. and VIGNESH SUNDARESAN, <br><br> Plaintiffs, <br><br> -against- <br><br> ANAND VENKATESWARAN, <br><br> Defendant. | Civil Case No. **1:23-cv-5074-JPO** <br><br><br> **FIRST AMENDED COMPLAINT** |

Plaintiffs Portkey Technologies Pte Ltd. ("Portkey") and Vignesh Sundaresan ("Sundaresan") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their **First Amended** Complaint against Defendant Anand Venkateswaran ("Defendant" or "Venkateswaran"), hereby allege as follows:

## NATURE OF THE ACTION

1. This is an action for unfair competition, reverse passing off, false and misleading representations of fact, false advertising, and trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and related claims under New York State and common law, resulting from, *inter alia*, Defendant's repeated and intentional false and misleading statements holding himself out as the source of Plaintiffs' business operations and success, and use of the TWOBADOUR and METAPURSE trademarks, which acts have caused confusion among the public and undermine Plaintiffs' reputation and goodwill.

2. Without limitation, Defendant has repeatedly issued public statements falsely claiming, expressly and impliedly, to have been**, *inter alia*, (i) responsible for the purchase and**

Case 1:23-cv-05074   Document 1   Filed 06/15/23   Page   of 26

**management of Plaintiffs' collection of NFTs and other digital assets, which were purchased and managed by Plaintiffs in connection with a fund created by Portkey under the name METAPURSE, and (ii)** directly involved in Plaintiffs' historic purchase

of the NFT artwork created by Beeple known as *Everydays: The First 5000 Days* ("Everydays" or the "Beeple NFT"). Without limitation, Defendant has publicly claimed to be one of the two people who purchased the Beeple NFT, stating in 2022, that he was "one of the two guys that won the Christies auction... and bought the $69 million Beeple piece." Defendant has also publicly claimed to be one of the owners of the Beeple NFT, including stating that he "was one of the two guys who bought the 69 million dollar Beeple piece," and including in his **public** Twitter bio that he "won" the Beeple NFT auction.

3.      By this action, Plaintiffs also seek a declaratory judgement, pursuant to 28 U.S.C. §§ 2201 and 2202, that Portkey owns the trademarks TWOBADOUR and METAPURSE.

4.      Unless permanently enjoined, Defendant will continue to falsely associate himself with Plaintiffs' business, misuse Plaintiffs' intellectual property, cause confusion, mistake, and deception among the public, and ultimately harm Plaintiffs' goodwill and business prospects.

5.      Plaintiffs therefore seek injunctive relief, a declaratory judgment, actual damages, treble damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## THE PARTIES

6.      Plaintiff Portkey is a limited company established and existing under the laws of Singapore, with its principal place of business located at: Parkview Square, 600 North Bridge Road, #12-02/03, Postal 188778.

7.      Plaintiff Sundaresan is a natural person and citizen of India. Sundaresan is the founder, sole proprietor, and CEO of Portkey.

8.      Upon information and belief, Defendant Venkateswaran is an individual residing at 680 Wellesley St, Weston, MA 02493.

8.    Upon information and belief, Defendant Venkateswaran is an individual residing at 680 Wellesley Street, Weston, MA 02493.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10.    Defendant is subject to the Court's personal jurisdiction because, upon information and belief, Defendant has committed tortious acts within New York and has also committed tortious acts outside of New York causing injury to Plaintiffs within New York.

11.    Plaintiffs' claims arise out of and related to Defendants' transactions of business, and tortious acts committed in New York, and outside of New York causing damage to Plaintiffs in this New York because, *inter alia*, Defendant has:

> Repeatedly made and continues to make false statements in New York and outside of New York claiming to have been directly responsible for the purchase of the Beeple NFT and Portkey's business operations and success and/or stated, expressly or impliedly, that he owns the Beeple NFT;
>
> Repeated these false statements through various public channels, including social media, online blogs, and in numerous interviews posted online, which are all accessible within New York;
>
> Repeatedly used and continues to use and/or otherwise associate himself with the trademark TWOBADOUR, which is owned by Portkey; and
>
> Repeatedly used and continues to use and/or otherwise associate himself with the trademark METAPURSE, which is owned by Portkey.

12.    Plaintiffs also have achieved reputations as leaders in ~~this industry and are routinely~~**the blockchain, Web3, and NFT industries, are routinely** sought out for investment opportunities by businesses and ~~entrepreneurs in New York.~~

**entrepreneurs in New York, and have made investments in New York-based companies.**

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page of 26

13.  Defendant's tortious acts and statements in New York, and out of New York have

damaged **Plaintiffs'** existing and future business **investments and** opportunities ~~for Plaintiffs~~, causing injury to Plaintiffs
 within New York.

14.  Therefore, this Court has long-arm jurisdiction over Defendant pursuant to CPLR

**§§ 302(a)(1)-(3).**


~~§§ 302(a)(1)-(3).~~

~~3~~

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

A. ~~Sundaresan's Purchase of the Beeple NFT~~**Background Regarding Plaintiffs**

16.     Sundaresan in an Indian-born blockchain entrepreneur and investor who is an advocate for and investor in blockchain technology, emerging technology projects, and decentralized financial systems.

**17.     Sundaresan founded Portkey in 2017 and is its sole owner.**

**18.     Portkey is a software and technology company that operates many of Sundaresan's blockchain, NFT, and Web3 projects.**

~~17~~**19**.     In addition to founding Portkey, Sundaresan has made various timely investments in technology**, blockchain, and cryptocurrency** projects, including**, for example,** Ethereum, Bitcoin, Polkadot, and Decentraland.

~~18.     Portkey is a software and technology company that operates many of Sundaresan's blockchain and Web3 projects. Sundaresan founded Portkey in 2017 and is its sole owner.~~

~~19.~~     ~~In~~ **20.     From 2017 to approximately March 2020, Sundaresan purchased several thousand NFTs. In approximately September** 2020, Portkey created METAPURSE, a fund ~~dedicated to~~**utilized for** the acquisition of ~~NFT~~ **digital** art **NFTs and virtual land NFTs,** and other Web3-related investments ("METAPURSE"). **Plaintiffs currently hold approximately 5,000 digital art NFTs, virtual land NFTs, and other digital assets.**

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page  of 26

**21.     Plaintiffs are well-known and regarded in the NFT space because of their collection of a wide array of NFTs, including digital artwork and virtual land, including, but not limited to, as part of the METAPURSE fund.**

~~20~~**22**.     As a result of Portkey's investments and activities through **its** METAPURSE **fund**, Sundaresan ~~has~~ gained a worldwide reputation as a well-known **collector,** investor**,** and supporter of new and in-development blockchain**, NFT,** and Web3 businesses, and art-related initiatives. **B. Sundaresan's Historic Purchase of the Prized Beeple NFT**

~~21.     On or about February 16, 2021, Christie's auction house announced that it would hold an auction for the Beeple NFT, with open bidding to take place from February 25 through March 11, 2021.~~

~~22.     Through such auction, Christie's became the first major auction house to offer a digital-only work of art with an NFT as a guarantee of its authenticity. The auction also marked the first time a major auction house accepted cryptocurrency as payment.~~

23.      ~~A press statement released by~~**Between late February and early March of 2021,** Christie's ~~in New York heralded the significance of~~**auction house held an auction for the one-of-a-kind Beeple NFT.**

~~the auction.~~

24.      ~~An image of the Beeple NFT~~ created for sale by Christie's is shown here:



(Deleted)

25.      ~~Everydays represents~~**24.**      **The Beeple NFT is** a work **of art** by the artist Beeple (Mike Winkelmann) ~~comprised~~ **comprised** of the first 5,000 digital pictures he created following his ambitious challenge to post a new **piece of** artwork each day, which he began on May 1, 2007. ~~Everydays~~**The monumental digital collage** documents the evolution of Beeple's artistic development and brings together the first 5,000 days of this project.

25.      An image of the Beeple NFT **is shown here:**

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 11 of 57

(Added)



26. On March 11, 2021, Sundaresan successfully bid and acquired the Beeple NFT for $69,346,250 (42329.453 ETH).

27. Sundaresan alone determined and executed his bidding strategy in pursuing the Beeple NFT, and he funded the purchase of the work entirely with his own assets.

28. Defendant played no role in ~~the~~ Sundaresan's purchase of the Beeple NFT. **Defendant had no involvement with Sundaresan's decision to pursue the** purchase of the Beeple NFT **or the bidding strategy employed by Sundaresan. Defendant also did not have any involvement in financing Sundaresan's purchase of the Beeple NFT.**

29. Sundaresan acquired the Beeple NFT**, a crown jewel in the NFT art field,** in his role as the founder of METAPURSE.

**30. Through the landmark auction of the Beeple NFT**, Christie's became the first major auction house to offer a digital-only work of art with an NFT as a guarantee of its authenticity. The auction also marked the first time a major auction house accepted cryptocurrency as payment.

~~30~~**31**. The price paid by Sundaresan set a record for the most expensive NFT ever sold. **The Beeple NFT** ~~Everydays~~ remains the most expensive single-edition NFT ever sold.

~~31.~~ ~~The~~ 32. At the time of the sale, **the** Beeple NFT ~~currently ranks~~**ranked** third amongst the most valuable artworks ever sold at auction by a living artist, behind Jeff Koons and David Hockney.

~~32. At the time of the sale, Sundaresan, under the pseudonym Metakovan, released a statement with Christie's explaining the historical importance of his acquisition.~~

~~33. Within a week of the transaction, Sundaresan revealed in a Substack post that he was Metakovan. The article also explained Sundaresan's reasoning behind his purchase of the~~

Case 1:23-cv-05074-JPO Document 20-1 Filed 11/22/23 Page 13 of 57

Beeple NFT. His goal was to acquire and later tokenize ownership of NFTs in the METAPURSE collection. On a more personal note, he also shared that he hoped to demonstrate that Indians and people of color could be patrons of the arts.

3433. The purchase of Everydaysthe Beeple NFT was significant for Sundaresan and it received wide wide media attention, furthering his reputation as a leading collector of NFTs and development of blockchain technologies and Web3 projects.

35. 34. Portkey's METAPURSE fund also received wide media attention, cementing its reputation as a leading fund involved in NFT investing.

~~36~~**35**.   By association, other Portkey projects and investments became more notable and publicized. The purchase **of the Beeple NFT** also led to additional business opportunities for Portkey.

~~37~~**36**.   The sale of ~~Everydays~~**the Beeple NFT** furthered Beeple's advocacy for the NFT art market, ~~where~~ **where** he remains a prominent artist and still creates and sells his work. Sundaresan and Beeple have appeared together to talk about the significance of NFT art and Web3 projects.

Case 1:23-cv-05074-JPO   Document 23-1   Filed 11/22/23   Page 15

**~~B~~C. Portkey's Ownership of the TWOBADOUR Trademark**

~~38~~**37**.   In 2020, Plaintiffs began creating different pseudonyms for ~~Portkey~~ **Portkey's independent**

**contractors                            and                        ** employees                                        to

use ~~on different~~**in furtherance of various** business ventures.

~~39~~**38**.   In   connection   with   its   business,   ~~Sundaresan~~**Portkey**   coined   the   trademark

TWOBADOUR                                                                                                            **and**

**began using the same** at least as early as April 2020~~, which Portkey adopted and used~~.

~~40~~**39**.   TWOBADOUR   was   created   under   Sundaresan's   instruction   ~~as   an   extension   of~~

~~Venkateswaran's   role   in   assisting   with   communications   on   behalf   of   Plaintiffs~~**for   use   with**

**Portkey's**

**business**.

~~41~~**40**.   Multiple   Portkey   employees   and   independent   contractors   have   used   ~~this~~

~~trademark~~**the**

**TWOBADOUR trademark at Portkey's direction** in connection with conducting Portkey's

business,   including   when   blogging,   responding   to   emails,   and   posting   social   media   content.

**Defendant was never the sole individual behind the TWOBADOUR name.**

~~42~~**41**.   Plaintiffs spent substantial time, effort, and money to establish TWOBADOUR as

a source identifier and online identity.

~~43~~**42**.   TWOBADOUR   is   an   inherently   distinctive   trademark   with   significant   renown

among the public.

~~44~~**43**.   Based   on   its   use   of   the   trademark   TWOBADOUR,   Portkey   owns   common   law

trademark rights therein.

Case 1:23-cv-05074-JPO    Document 1    Filed 06/15/23    Page    of 26

45**44**

.        Portkey also owns several trademark applications for the mark TWOBADOUR covering various countries, including an international application filed with WIPO (the World Intellectual Property Organization) that includes an extension of protection to the United States, International Application Ser. No. MM202300404Q. ~~The~~**This** application covers the following goods and services: Downloadable computer software for minting non-fungible tokens (NFTs); downloadable audio, digital, music and video files authenticated by non-fungible tokens (NFTs); computer software for use in the virtual display of artwork and NFTs; Advertising and promotion

services; advertising and publicity services; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; advisory services for business management; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; business collaboration services for artists to create art and art non-fungible tokens (NFTs); business consulting services; business development services; business management; business management consultancy in the field of virtual reality technology; business management consultancy services; business management consultancy services provided via the internet; business management for freelance service providers; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; business management of public auctions; business reputation management and improvement services; career advancement consultancy services; career advisory services, other than education and training advice; career planning consultancy; conducting interactive virtual auctions; conducting virtual trade shows online; consulting services relating to publicity; development of publicity concepts; dissemination of advertising, marketing and publicity

materials; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; marketing advice; marketing assistance; marketing services; on-line advertising on computer networks; online auctioneering; online retail store services featuring works of art; online trading services in which seller posts products to be auctioned and bidding is done via the internet; online wholesale store services featuring works of art; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; providing online auction services; retail services; talent agency services

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 19

[business management of performing artists]; consultation in the curation of artwork and NFTs; artwork and NFT curation, namely, selection, purchasing, and sales of artwork and NFTs; consultation in the purchase and sale of artwork and NFTs; artwork and NFT curation services; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services; management of investments; provision of investment information; cryptocurrency asset management; cryptocurrency investment advisory services; cryptocurrency investment services; financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation; artwork and NFT investment services; consultation in the investment in artwork and NFTs; Curator services for non-fungible tokens (NFTs); career advisory services [education or training advice]; advisory services

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page of 26

relating to entertainment; career counselling [education or training advice]; career information and advisory services [educational and training advice]; organization of art exhibitions for cultural or educational purposes; organization of exhibitions for entertainment purposes; art exhibition services; arranging and conducting of art exhibitions for cultural or educational purposes; display of works of art in exhibitions, shows, museums, galleries; arranging and conducting of colloquiums, conferences, congresses, seminars, symposiums and training workshops; arranging and conducting of seminars; arranging of seminars; conducting of instructional seminars;

Case 1:23-cv-05074-JPO   Document 25-1   Filed 11/22/23   Page 21 of 57

conducting seminars; artwork and NFT curation services; consultation in the curation of artwork and NFTs; artwork and NFT curation, namely, selection, purchasing, and sales of artwork and NFTs; Design consultancy; design engineering; design services; design and development of non-fungible tokens (NFTs); design and development of new technology for others; design and development of computer software; technological consultancy relating to digital transformation; electronic storage of digital images, music, photographs and images; non-downloadable software for the display of artwork and NFTs, artwork and NFT inventory, and artwork and NFT management; design and development of computer software for use in the virtual display of artwork and NFTs.

45. **Defendant does not claim ownership in the TWOBADOUR trademark and rights therein.**

46. **Defendant never asserted that Portkey does not own the trademark TWOBADOUR and rights therein.**

47. **Defendant concedes that Portkey is the exclusive owner of the trademark TWOBADOUR.**

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 22 of 57

**48.** **As described herein, however, Defendant uses the TWOBADOUR trademark to falsely represent that he was the sole individual responsible for all actions associated with the TWOBADOUR pseudonym and, in so doing, is causing confusion in the marketplace, including without limitation, as to the source of services and business success associated with the TWOBADOUR trademark.**

### ~~C~~**D**. Portkey's Ownership of the METAPURSE Trademark

~~46~~**49**. In connection with its business, Portkey adopted and used the trademark METAPURSE at least as early as September 2020.

~~47~~**50**. METAPURSE was created under Sundaresan's instruction ~~and solely used Sundaresan's capital to make investments and acquisitions~~**for use with Portkey's business**.

**51.** **The METAPURSE fund has always been capitalized solely by Sundaresan. All investments and acquisitions made through the fund belong solely to Portkey and have been made under the direction of Portkey.**

**52.** **Defendant never managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund or the assets acquired through the fund.**

**53.** **Defendant was never the "steward of Metapurse."**

~~48~~**54**. Plaintiffs spent substantial time, effort, and money to establish METAPURSE as the leading NFT fund in the world.

~~49~~**55**. METAPURSE is an inherently distinctive trademark with significant renown among the public.

~~50~~**56**. Based on its use of the trademark METAPURSE, Portkey owns common law trademark rights therein.

Case 1:23-cv-05074-JPO    Document 1    Filed 06/15/23    Page   of 26

5157.   Portkey also owns several trademark applications for the mark METAPURSE, including U.S. Trademark Application Ser. No. 79341844, covering Advertising and promotion services; advertising and publicity services; advertising by transmission of on-line publicity for

third parties through electronic communications networks; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; consulting services relating to publicity; on-line advertising on computer networks; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; sales promotion services; advisory services for business management; business management consultancy services; business management consultancy services provided via the internet; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; business consulting services; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; dissemination of advertising, marketing and publicity materials; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance;

Case 1:23-cv-05074-JPO   Document 1   Filed 06/15/23   Page   of 26

consultation services relating to investment; investment advisory services; investment services;

management of investments; provision of investment information; cryptocurrency asset

management; cryptocurrency investment advisory services; cryptocurrency investment services;

26

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 26

financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation.

**58. Defendant does not claim ownership in the METAPURSE trademark and rights therein.**

**59. Defendant never asserted that Portkey does not own the trademark METAPURSE and rights therein.**

**60. Defendant concedes that Portkey is the exclusive owner of the trademark METAPURSE.**

**61. As described herein, however, Defendant uses the METAPURSE trademark to falsely represent that he managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund and, in so doing, is causing confusion in the marketplace, including without limitation, as to the source of services and business success associated with the METAPURSE trademark.**

~~D~~**E. Defendant's** ~~Role at~~**Independent Contractor Arrangement with** **Portkey**

~~52~~**62**. After Sundaresan started Portkey in 2017, ~~Venkateswaran was hired~~**Portkey engaged** **Defendant** as an independent contractor to assist with, *inter alia*, managing personal communications on behalf of Sundaresan and company communications on behalf of Portkey.

~~53~~**63**. On or about August 14, 2017, Portkey and ~~Venkateswaran~~**Defendant** entered into an independent contractor agreement (the "First ICA") ~~where Venkateswaran would~~**under which Defendant was**

30

**to** provide Portkey with the following services: developing UI and UX; communications and public relations; community

management; management of social media platforms; website development and management; hiring and managing UI/UX design team; and attending and representing in conferences deemed essential for Portkey in terms of software development, education, promotion, marketing or otherwise.

~~54~~**64**.   In his **independent contractor** role at Portkey, beginning at least as early as April 23, 2020, ~~Venkateswaran~~ **Defendant** was directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR. At least as early as September 2020, ~~Venkateswaran~~**Defendant** was directed by Portkey to assist with the operation of METAPURSE.

~~55~~**65**.   On or about November 1, 2020, the First ICA was terminated by ~~Venkateswaran~~**Defendant**.

~~56~~**66**.   On or about the same day, **November 1, 2020,** Portkey and Wordesmith Collective Singapore Pte. Ltd. ("Wordesmith") entered into an independent contractor agreement (the "Second ICA") where Wordesmith ~~would~~**was to** provide ~~to~~ Portkey **with** the same scope of services stated in Paragraph ~~53. Venkateswaran~~**63. Defendant** is the founder and sole shareholder of Wordesmith.

~~57.~~    ~~As part of~~**67.   In signing** the Second ICA, ~~Venkateswaran had~~**Defendant** agreed that all intellectual property that                                                                          he used during the course of his ~~contract~~**independent contractor agreement with Portkey** was to be owned exclusively by Portkey.

~~58~~**68**.   On or about January 15, 2022, Wordesmith requested to terminate the Second ICA~~,~~.

~~and~~ Portkey and Defendant agreed that the Second ICA would be terminated on February 28, 2022.

~~59~~**69**.   The termination of ~~Venkateswaran's contract~~**the Second ICA** was related to rising

tensions                                                                                           between

Plaintiffs

and  ~~Venkateswaran regarding Venkateswaran's use of the trademark and pseudonym~~

~~TWOBADOUR to build other~~**Defendant regarding Defendant's use of Portkey's intellectual**

**property in connection with efforts to build** business ventures **and relationships solely for**

**Defendant's benefit** outside of Portkey**, including competing ventures in the blockchain, NFT,**

**and Web3 industries**.

**70.** **On or about February 28, 2022, the Second ICA was terminated and Defendant**

60. On or about February 28, 2022, Venkateswaran terminated the relationship with Portkey by signing**signed** a release indicating**confirming** that he had no claims against Portkey and that all of his work had been

performed under a**independent** contractor agreement**agreements**.

**E**F**. Venkateswaran's**Defendant's False and Misleading** Statements After Leaving Portkey**

61**71**.  Despite knowing that Sundaresan purchased the Beeple NFT entirely on his own, Plaintiffs have come to learn that, beginning at least as early as August 2022, and continuing under present at increasing frequency, Defendant has made, and continues to make,**began making** public statements**,** explicitly and implicitly**,** proclaiming himself to be the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT.

62**72**.  Since his departure from**contractual relationship with** Portkey**, Venkateswaran was terminated, Defendant** has made numerous false **and misleading** public statements designed to confuse the public into mistakenly believing that he and Sundaresan purchased the Beeple NFT together**, that he has/had an ownership interest therein, and that he is associated with Plaintiffs**. By way of example:

> i.   In an August 1, 2022, video on YouTube, Future of Media ft. EDAO (available at: https://www.youtube.com/watch?v=yB53hDQ_oz4), Venkateswaran**Defendant** spoke about how he was "**one of the two guys that won the Christies auction... and bought the $69 million Beeple piece**.";

26

ii. In an August 24, 2022, video on Youtube, Hacking The Creator

Economy - The Blockchain Council Podcast (available at:

https://www.youtube.com/watch?v=20yeYKwWveQ),

~~Venkateswaran~~**Defendant** stated, "**I used to be the steward of**

**Metapurse...I was one of the two guys who bought the $69 million-**

**dollar Beeple piece**."

Case 1:23-cv-05074-JPO Document 25-1 Filed 11/22/23 Page 31 of 57

**73.** **Defendant has made numerous other false and misleading statements and taken** 63. ~~Venkateswaran has made numerous other statements and taken~~ actions that have **negatively** impacted Plaintiffs by diminishing Plaintiffs' business achievements and trading on Plaintiffs' goodwill.

~~64.~~ ~~These~~**74.** **Defendant's false and misleading** statements have included, without limitation:

    i.    Misrepresenting his role in Portkey through various public interviews and/or publishing untrue information on his ~~personal~~**public** Twitter account, **public** LinkedIn account, and **public** blog, thereby diminishing Sundaresan's role in Portkey and Portkey's overall business success;

    ii.    Claiming credit for purchases ~~on behalf of METAPURSE in which he was not involved~~**of NFTs made and/or managed by Portkey through its METAPURSE fund**; and

    iii.    Claiming to have been a co-founder of **and steward of** METAPURSE.

~~65.In~~ ~~making the~~**75.Through his** above-referenced false **and misleading** statements, Defendant has sought to promote his own businesses, including, without limitation eDAO and Layer-E, which **operate in the same space as Portkey and** have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively.

**76.** **Defendant's false statements relate to an inherent characteristic of his businesses, *e.g.*, that they are substantially the same as Plaintiffs' business and/or will be as successful as Plaintiffs' business.**

**77.** **By falsely associating himself and his own businesses with Plaintiffs, Defendant has sought to impact decisions of consumers and investors, to Plaintiffs' detriment.**

Case 1:23-cv-05074-JPO    Document 20-1    Filed 11/22/23    Page 32 of 57

**78.**   Defendant has also sought to bolster his position in the public's eye about his import at Metapurse and in the purchase of the Beeple NFT **when, in reality, he was engaged as an independent contractor working under Sundaresan's direction**.

Case 1:23-cv-05074   Document 1   Filed 06/15/23   Page   of 26

66**79**.   Upon information and belief, ~~Venkateswaran~~**Defendant** has communicated with portfolio

companies and others who had prior relationships with Portkey in an effort to promote his

business

ventures. Upon information and belief, he has asked such other persons to participate with him in podcasts and other public talks regarding his prior role with Plaintiffs in order to further trade upon the goodwill of Plaintiffs and claim responsibility for Plaintiffs' business success.

~~67~~**80**. Following termination of his agreement with Portkey, ~~Venkateswaran~~**Defendant** has also **used the** ~~continued to use and associate himself with the~~ trademark and pseudonym TWOBADOUR~~,~~ ~~claiming to have been~~ **in commerce to associate himself with Plaintiffs and to associate Plaintiffs' success with his personal business ventures. Defendant has also used the TWOBADOUR trademark to falsely claim that he was** the only person behind **the name and mark TWOBADOUR, *e.g.*, suggesting that he "is"** TWOBADOUR. ~~He~~**Additionally, Defendant** has falsely claimed to have been the **"**steward of METAPURSE**,"** when ~~in fact~~ ~~TWOBADOUR, owned by Portkey, was the steward of METAPURSE~~**he was not. In doing so, Defendant falsely represented that he managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund**. Examples include, without limitation:

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page of 26

i.On ~~Venkateswaran's~~**Defendant's** LinkedIn page, his profile summary ~~reads~~**read**: "~~Co-~~ **Co-Founder**

~~Founder~~ **and CEO of eDAO. Fmr Steward of Metapurse, the largest NFT Fund in the world**. Capital allocation, experience design, artists &

~~Venkateswaran's LinkedIn page.~~
~~(Accessed May 23, 2023).~~

26

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 36 of 57

repertoire. **Creator of the @Twobadour pseudonym.**" (emphasis added);



**Defendant's LinkedIn page
(Accessed May 23, 2023).**

ii. The top of ~~Venkateswaran's~~**Defendant's** Twitter feed ~~reads~~**read**: "Co-Founder & CEO

@LayerEhq. **As @twobadour, Steward of @metapurse, won the $69m**

**@BEEPLE auction.** NFT Artist fanboy. Lucky husband, proud father,

wishful thinker." (emphasis added); and

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page  of 26



~~Venkateswaran's~~**Defendant's** Twitter page~~.~~ (Accessed June 5, 2023).

iii.     ~~Venkateswaran's~~**Defendant's** biography page for the 2023 Consensus by CoinDesk

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 38 of 57

conference (CoinDesk's flagship annual crypto and Web3 conference),

reads: "Anand is the Co-Founder and CEO of the Polygon-incubated ~~Layer-E~~**Layer-**

**E**. He has been a journalist, an ad-man, and a GTM strategist for FinTech.

**In the metaverse, he was Twobadour, Steward of the $250mn**

**Metapurse Fund. With Metakovan, he won the Christie's auction for**

**the $69 mn Beeple's First 5000 Everydays.** He was the executive

producer of Dreamverse New York, the largest ever NFT Art Exhibition.

With a collectibles-based product suite at Layer-E, he hopes to supercharge engagement and revenue for global brands and creators." (emphasis added). ~~And on April 28, 2023~~**Moreover**, at the Consensus by CoinDesk conference ~~Venkateswaran~~**on April 28, 2023, Defendant**, along with a Web3 entrepreneur, presented a talk entitled, "Who Are You in Web3? Exploring Tokenized Identity." The description for the

talk reads: **"Going by the pseudonym Twobadour.eth, Anand Venkateswaran made headlines in 2021 as one half of the duo behind the $69.3M purchase of a Beeple NFT.** What happens to the person behind an internet handle? Is he or she replaceable? **Does the identity belong to an organization, or the person?** Venkateswaran discusses with Yat Siu, a leading expert on property rights and IP on the blockchain." (emphasis added). During this talk, ~~Anand~~**Defendant** made multiple references to creating the pseudonym TWOBADOUR, being TWOBADOUR, and being one of the two purchasers of the Beeple NFT. Upon information and belief, Defendant wrote or approved of the **CoinDesk** biography.

~~68~~**81**.Following **the** termination of his **independent contractor** agreement with Portkey, ~~Venkateswaran has also~~ **Defendant also used**

26

Case 1:23-cv-05074-JPO   Document 20-1   Filed 11/22/23   Page 40 of 57

~~continued to use~~ and ~~associate~~**associated** himself with the trademark METAPURSE. By way of example, the top of ~~Venkateswaran's~~**Defendant's** Twitter feed ~~identifies him~~**identified himself** as "Steward of @metapurse."

82.Defendant's use of the trademarks TWOBADOUR and METAPURSE as alleged herein, including online, constitutes use in commerce. Without limitation, LinkedIn is "the world's largest professional network on the internet," used by individuals to develop professional opportunities and to strengthen professional networks and relationships. Defendant's use of the trademarks TWOBADOUR and METAPURSE through the other public channels alleged herein,

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 41 of 57

**including promotional blogs, videos, publications, conferences and events, also constitutes**

**use of the trademarks in commerce.**

83.     **To the extent that Defendant uses the term "former" when discussing Plaintiffs and**

**their related business endeavors, including but not limited to regarding TWOBADOUR and**

**METAPURSE, such word or derivations thereof does not shield Defendant from liability.**

~~69~~**84**.    Upon information and belief, ~~Venkateswaran~~**Defendant** continues to make false**,**

**misleading,** and ~~tortious~~

**tortious** statements along the lines described above in connection with the promotion of his

businesses.

~~70~~**85**.    Upon information and belief, ~~Venkateswaran~~**Defendant** has not issued any public statements

retracting his false and misleading statements.

~~71~~**86**.    Upon information and belief, ~~Venkateswaran~~**Defendant** has not requested that any clarifications or

retractions of the false ~~or~~**and** misleading statements referenced above be corrected.

~~72.     Venkateswaran's~~**87.    Defendant's** explicit and implicit falsehoods and

misstatements have harmed

~~Portkey's and Sundaresan's~~**Plaintiffs'** reputations, current investments, and ~~the~~

~~opportunity~~**opportunities** to undertake new business projects and investments, including ~~here~~ in

this District.

~~73.     Venkateswaran's~~**88.    Defendant's** statements and actions ~~have~~ also **have** harmed

Plaintiffs' relationships **with**

~~with~~ current and prospective clients and business partners.

30

Case 1:23-cv-05074-JPO Document 20-1 Filed 11/22/23 Page 42

~~74.~~ ~~Venkateswaran~~**89.** **Defendant** has actual knowledge of Sundaresan's sole purchase of the Beeple NFT, ~~and~~ of Plaintiffs' sole ownership of the trademark and pseudonym TWOBADOUR and its associated online identity, **and of Plaintiffs' sole** ownership of **the** METAPURSE **fund and trademark**.

~~75~~**90**. Defendant's false and misleading statements have caused the public to mistakenly believe**, *inter alia*,** that Defendant is the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT~~.~~**, and/or that he managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund.**

~~76.~~ ~~Venkateswaran~~**91.** **Defendant** has actual knowledge that Plaintiffs own all rights, title, and interest **in** ~~in~~ the trademark and pseudonym TWOBADOUR and its associated online identity, and that ~~Venkateswaran was one of~~ a number of individuals who worked for Plaintiffs ~~using~~**used** the TWOBADOUR trademark and pseudonym **to conduct company business**.

~~77.~~ ~~Venkateswaran~~**92.** **Defendant** has actual knowledge that Plaintiffs own all rights, title, and interest**_____in** **the trademark METAPURSE, and that Sundaresan had ultimate responsibility for managing, supervising, and controlling the collection of digital assets purchased through Plaintiffs' METAPURSE fund.**

~~in the trademark and METAPURSE, and that Venkateswaran was one of a number of individuals who were responsible for assisting with METAPURSE at Plaintiffs' direction.~~

~~78.~~ ~~Venkateswaran's~~**93.** **Defendant's** foregoing acts have been willful, wanton, and in bad faith, and **with** **the intent to misrepresent Plaintiffs' business operations and successes as that** ~~with the intent to misrepresent Portkey's and Sundaresan's business operations and success as that~~

Case 1:23-cv-05074-JPO    Document 23-1    Filed 11/22/23    Page 43 of 57

of his own.

79.    ~~Venkateswaran is attempting to exploit Portkey's and Sundaresan's reputations and~~

**94.    Defendant is attempting to exploit Plaintiffs' reputations and** intellectual property to intentionally cause confusion among investors, artists, artist estates, trade conference organizers and organizations, scholars, publishers, and other market participants, hoping people choose to do business with him and his associated businesses, mistakenly believing that he was the source of ~~Portkey's and Sundaresan's~~**Plaintiffs'** business operations and success**, and that he remains associated with Plaintiffs and their business**.

80.    ~~Venkateswaran's~~**95.    Defendant's** false and misleading statements exploit the goodwill and reputation associated with Plaintiffs.

~~81~~**96**.    Upon information and belief, as a result of Defendant's false and misleading statements, people turn to Defendant for business opportunities, believing that he **is or** was responsible for Plaintiffs' business operations and success.

82**97**.  As a proximate result of ~~Venkateswaran's acts~~**Defendant's actions**, Plaintiffs have suffered and will

continue to suffer significant damage and harm to their business, goodwill, reputation, and profits.

83**98**.  Plaintiffs' remedy at law is not adequate to compensate them for the irreparable

injury which has already been inflicted on Plaintiffs and which will be inflicted on them in the

future by virtue of Defendant's conduct.

## COUNT I
### (Unfair Competition/Reverse Passing Off, 15 U.S.C. § 1125(a))

84**99**.  Plaintiffs reallege and incorporate herein by reference each of the foregoing

Paragraphs as if fully set forth herein.

85**100**. Defendant's acts constitute the use, in interstate commerce, of false or misleading

descriptions of fact or false or misleading representations of fact likely to cause confusion, or to

cause mistake, or to deceive as to the nature and extent of the affiliation, connection, or association

of Defendant with Plaintiffs, as to the source of the business operations provided by Plaintiffs, in

violation of 15 U.S.C. § 1125(a)(1)(A).

86**101**. Defendant's acts ~~were~~**are** material in that they are likely to influence purchasing

decisions by members of the public.

87**102**. Defendant's acts were intentional, willful, and done with full knowledge.

88.   **103.** Defendant's acts have caused and will continue to cause irreparable harm and injury

to Plaintiffs. Unless Defendant is enjoined from further actions, Defendant will continue his illegal

acts and cause immeasurable damage to the goodwill and reputation of Plaintiffs.

89**104**. In addition, as a result of Defendant's conduct, Plaintiffs have been damaged in an

amount to be determined at trial, plus interest.

Case 1:23-cv-05074 Document 1 Filed 06/15/23 Page of 26

90. **105.** In addition to actual damages and any profits Defendant derived from his improper

conduct, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiffs to

recover their attorneys' fees.

## <u>COUNT II</u>
**(False or Misleading Representations or Advertising, 15 U.S.C. § 1125(a))**

91**106**. Plaintiffs reallege and incorporate herein by reference each of the foregoing

Paragraphs as if fully set forth herein.

92. **107.** Defendant has acted knowingly and intentionally held himself out to the public as

the source of Portkey's business operations and success.

93. **108.** Defendant repeatedly caused the public to believe that he is an owner the of the

Beeple NFT.

94**109**. Defendant repeatedly caused the public to believe that he was responsible for

Portkey's business operations and success.

95**110**. Defendant repeatedly caused the public to believe that he owns the trademark and

pseudonym TWOBADOUR and its associated online identity.

96**111**. Defendant's statements were literally false and/or implicitly false.

97**112**. Defendant's false statements are material in that they are likely to influence**cause confusion**

**and likely to influence** purchasing **and investment** decisions by members of the public, and are likely to cause confusion.

98**113**. Defendant's aforesaid acts constitute false and/or misleading representations **in**

violation of Section 43(a) for**of** the Lanham Act, 15 U.S.C. § 1125(a).

99**114**. Upon information and belief, Defendant has obtained gains, profits, and business

advantages as a result of his wrongful acts in an amount to be determined.

100**115**. Upon information and belief, Defendant's aforementioned acts have been willful,

wanton, and in bad faith, and with the intent to misrepresent his role at Portkey, his role in the purchase

of and/or ownership of the Beeple NFT, his role in the ownership of the TWOBADOUR trademark

and pseudonym and its associated online identity, **his role in the ownership of the METAPURSE**

**30**

**trademark and acquisitions made by the fund,** and to trade off the reputation and goodwill of **Plaintiffs.**

~~Plaintiffs.~~ Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

~~101~~**116**.        Defendant's wrongful acts will continue unless enjoined by this Court.

~~102~~**117**. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and

damage as a result of the aforementioned acts of Defendant in an amount thus far not determined.

<div align="center">

**COUNT III**
**(Trademark Infringement, 15 U.S.C. § 1125(a))**

</div>

~~103~~**118**.        Plaintiffs reallege and incorporate herein by reference each of the foregoing

Paragraphs as if fully set forth herein.

**119. Without the authorization or consent of Portkey, Defendant has used and, upon**

**information and belief, continues to use the TWOBADOUR and METAPURSE trademarks in a**

**false and misleading manner.**

**120. Further, Defendant's promotion of his blockchain, Web3, and NFT business**

**services in U.S. commerce are and have been competing with Portkey's blockchain, Web3, and**

**NFT business services.**

**121. Defendant's unauthorized use of the TWOBADOUR and METAPURSE**

**trademarks is likely to cause consumer confusion, mistake, and/or deception in the relevant**

**market(s).**

~~104.~~ **122.** Defendant's conduct constitutes willful trademark infringement ~~of Portkey's~~

~~trademark TWOBADOUR~~ in violation of 15

U.S.C. § 1125(a).

<div align="center">

**COUNT IV**
**(Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349)**

</div>

~~105~~**123**. Plaintiffs reallege and incorporate herein by reference each of the foregoing

allegations as if fully set forth herein.

<div align="center">

**30**

</div>

**124. Defendant engaged in a consumer-oriented act or practice by using the**

**TWOBADOUR and METAPURSE trademarks in connection with the promotion of his business**

**ventures in a false and misleading manner.**

**125.    Defendant's foregoing actions have been intentional.**

~~106~~**126.** Defendant's conduct is likely to cause confusion and constitutes deceptive acts and

practices in violation of N.Y. Gen. Bus. Law § 349.

## COUNT V
### (Injury to Business Reputation and Dilution Under N.Y. Gen. Bus. Law § 360-l)

~~107~~**127.** Plaintiffs reallege and incorporate herein by reference each of the foregoing

allegations as if fully set forth herein.

~~108~~**128.** Portkey owns the ~~trademark~~**trademarks** TWOBADOUR **and METAPURSE**.

**129. The trademarks TWOBADOUR and METAPURSE are inherently distinctive and**

~~109. The trademark TWOBADOUR is distinct and~~ closely associated with Portkey's **business and reputation, having come to represent the highest**

~~business and reputations~~**standards of quality**.

**130. Defendant's misuse of Portkey's TWOBADOUR and METAPURSE trademarks,**

~~110.    Defendants' misuse of Portkey's intellectual property,~~and false association with

Plaintiffs' business, will ultimately dilute the value **and distinctive**

**quality** of the trademark TWOBADOUR and pseudonym TWOBADOUR and its associated online ~~identity.~~

**identity and the value and distinctive quality of the trademark METAPURSE within the meaning**

**of N.Y. Gen. Bus. Law § 360-l.**

~~111~~**131.** Defendant's conduct constitutes injury to business reputation and dilution in

violation of N.Y. Gen. Bus. Law § 360-l.

## COUNT VI
### (Trademark Infringement and Unfair Competition, New York Common Law)

112**132**. Plaintiff realleges and incorporates herein by reference each of the foregoing

Case 1:23-cv-05074-JPO Document 23-1 Filed 11/22/23 Page 51

allegations as if fully set forth herein.

113**133**. Defendant's ~~conduct constitutes~~**foregoing acts constitute** willful trademark infringement and unfair

competition in violation of New York common law.

<div align="center">

**COUNT VII**
**(Claim for Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)**

</div>

114**134**.        Plaintiffs reallege and incorporate herein by reference each of the foregoing

allegations as if fully set forth herein.

115**135**. Portkey owns the trademark and pseudonym TWOBADOUR and its associated

online identity.

116**136**. Portkey owns the trademark METAPURSE.

117**137**. Defendant has no legal rights to ~~the~~ use ~~of~~ the trademark and pseudonym **TWOBADOUR**

**in a false and misleading manner or in a manner that otherwise causes confusion, but has continued**

~~TWOBADOUR, but has continued~~ to use same and to associate himself with same **in such a manner**.

118**138**. Defendant has no legal rights to ~~the~~ use ~~of~~ the trademark METAPURSE~~, but has~~ **in a false and**

**misleading manner or a manner that otherwise causes confusion, but has** continued to use same ~~and to associate himself with same.~~

**and to associate himself with same in such a manner.**

119**139**.        Accordingly, an actual and justiciable controversy exists between the Parties.

120**140**. A determination that Portkey has exclusive rights to and ownership of the

trademark and pseudonym TWOBADOUR and its associated online identity ~~would resolve this~~**,** **and that Defendant**

**may not use the TWOBADOUR mark in a false and misleading manner or a manner that otherwise**

**causes confusion, would resolve this** controversy.

~~121~~**141**.　　　　A determination that Portkey has exclusive rights to and ownership of the

**trademark METAPURSE, and that Defendant may not use the METAPURSE mark in a false and**

~~trademark METAPURSE~~**misleading manner or a manner that otherwise causes confusion,** would resolve this controversy.

**PRAYER FOR RELIEF**

142. **WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its

favor on all counts of this Complaint and grant Plaintiffs the following relief:

143. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting unfair competition and reverse passing off, and awarding Plaintiffs (i) actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

144. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting false or misleading statements or representations or otherwise engaging in false advertising in regarding to Plaintiffs and awarding Plaintiffs (i) actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

145. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making further use of the trademark or pseudonym TWOBADOUR, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto **in a false and misleading manner or a manner that otherwise causes confusion**;

146. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making any further use of the trademark METAPURSE, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto **in**

**a false and misleading manner or a manner that otherwise causes confusion;**

147.      Permanently enjoin and restrain Defendant, successors or assigns, and all persons

or entities acting in concert or in participation with Defendant, from directly or indirectly making

public use of Plaintiffs' names and any designations or trademarks associated with Plaintiffs;

148.      Permanently enjoin and restrain Defendant, successors or assigns, and all persons

or entities acting in concert or in participation with Defendant, from directly or indirectly taking any

further acts constituting use of Plaintiff's names and any designations or trademarks associated **with**

**Plaintiffs in a false and misleading manner or a manner that otherwise causes confusion;**

26

~~with Plaintiffs;~~

~~129~~**149**. Order Defendant to publicly issue corrective statements through all appropriate

channels, including without limitation all of his social media accounts, websites, and blogs, to correct any false statements made in regard to Plaintiffs, and to send ~~a~~ written corrective ~~statement~~**statements** to all third-parties to whom he made such false statements;

~~130~~**150**. Order Defendant to file with the Court and serve upon Plaintiffs' counsel within

thirty (30) days after service on Defendant of an injunction in this action, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith, pursuant to 15 U.S.C. § 1116(a);

~~131~~**151**. Order Defendant to provide Plaintiffs an accounting of any and all monies, profits,

gains, and advantages derived by Defendant through the aforementioned acts;

~~132~~**152**. Award Plaintiffs three times Defendant's profits or three times Plaintiffs' damages

sustained as a result of Defendant's aforementioned acts, pursuant to 15 U.S.C. § 1117(a);

~~133~~**153**. Award Plaintiffs their reasonable attorneys' fees, taxable costs, and disbursements,

pursuant to 15 U.S.C. § 1117(a);

134**154**.     Award Plaintiffs pre-judgment and post-judgment interest;

135**155**. Declare that Portkey owns the trademark and pseudonym TWOBADOUR and its

associated online identity;

136**156**. Declare that Portkey owns the trademark METAPURSE; and

137**157**.     Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: ~~June 15~~**November 20**, 2023

<div style="margin-left:50%">

Respectfully submitted,

By:

    */s/ Robert M. Wasnofski, Jr.*
Robert M. Wasnofski, Jr.
Daniel A. Schnapp
**Mary Kate Brennan**
**Samuel J. Weiner**
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Phone: (212) 768-6748
Fax: (212) 768 6800
robert.wasnofski@dentons.com
daniel.schnapp@dentons.com
**marykate.brennan@dentons.com samuel.weiner@dentons.com**

*Attorneys for Plaintiffs Portkey Technologies Pte Ltd. and Vignesh Sundaresan*

</div>

| Summary report: Litera Compare for Word 11.6.0.100 Document comparison done on 11/20/2023 3:09:38 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:** iw://goodwindms.goodwinprocter.com/ACTIVE/126194258/1 | |
| **Modified DMS:** iw://goodwindms.goodwinprocter.com/ACTIVE/126194259/1 | |
| **Changes:** | |
| **Add** | 440 |
| Delete | 314 |
| Move From | 13 |
| Move To | 13 |
| **Table Insert** | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 5 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 785 |