**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
PORTKEY TECHNOLOGIES PTE LTD. and
VIGNESH SUNDARESAN,

               Plaintiffs,

            - against -

ANAND VENKATESWARAN,

               Defendant.

-----------------------------------------------------------------X

: Civil Case No. 23-cv-5074-JPO
:
:
:
:
:
:
:
:
:
:

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTS ALLEGED IN THE FAC.......................................................................... 3

      a.   Plaintiffs and their ownership and use of the TWOBADOUR and
           METAPURSE trademarks ........................................................................... 3

      b.   Plaintiffs' historic purchase of the Beeple NFT ....................................... 5

      c.   Defendant's independent contractor role at Portkey, his false and
           misleading statements, and his infringing use of Plaintiffs' trademarks ............... 6

III.  STANDARD OF REVIEW ...................................................................................... 8

      a.   The legal standard for a motion to dismiss under Rule 12(b)(6) ........................... 8

      b.   The legal standard for a motion to dismiss under Rule 12(b)(1) ........................... 9

IV.   ARGUMENT ............................................................................................................. 9

      a.   The Court should not consider the blog post on the motion to dismiss ................. 9

      b.   Plaintiffs have pleaded plausible reverse passing off and false advertising
           claims under Section 43(a) of the Lanham Act ...................................................... 10

           i.    Reverse passing off under Section 43(a) of the Lanham Act ................... 10

           ii.   False advertising under Section 43(a) of the Lanham Act........................ 11

                 1.   The FAC sufficiently alleges Defendants' false statements ......... 11

                 2.   The FAC sufficiently alleges materiality..................................... 13

                 3.   The FAC sufficiently alleges that Defendant placed false
                      and misleading statements into interstate commerce.................... 14

                 4.   The FAC sufficiently alleges damages ........................................ 15

      c.   Portkey has exceeded the low bar of pleading sufficient facts to support its
           claim of trademark infringement and unfair competition .................................... 16

           i.    The FAC alleges that Defendant uses the TWOBADOUR and
                 METAPURSE marks in commerce ........................................................... 17

           ii.   Defendant's prematurely asserted fair use defenses are not
                 supported by the facts and cannot be resolved now................................. 18

i

d.      Plaintiffs have adequately pleaded their claims under New York law ................. 22

        i.      Plaintiffs have alleged sufficient facts to plead a plausible violation
               of the New York Deceptive Trade Practice statute.................................. 22

        ii.     Plaintiffs have alleged sufficient facts to plead a plausible claim of
               trademark dilution under New York General Business Law § 360 .......... 23

        iii.    Portkey has alleged sufficient facts to plead a plausible claim of
               trademark infringement under New York law ......................................... 23

e.      Plaintiffs have pleaded a plausible claim for declaratory relief............................ 23

V.     CONCLUSION...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3B Med., Inc. v. SoClean, Inc.*,
   857 F. App'x 28 (2d Cir. 2021) ................................................................................................15

*A&E TV Networks, LLC v. Big Fish Ent., LLC*,
   No. 22 CIV. 7411 (KPF), 2023 WL 4053871 (S.D.N.Y. June 16, 2023)................................18

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
   131 F. Supp. 3d 196 (S.D.N.Y. Sept. 18, 2015) ......................................................................19

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)....................................................................................................12

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016).......................................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................8

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003).......................................................................................................10

*C=Holdings B.V. v. Asiarim Corp.*
   992 F. Supp. 2d 223 (S.D.N.Y. 2013)................................................................................15, 17

*Can't Live Without It, LLC v. ETS Express, Inc.*,
   287 F. Supp. 3d 400 (S.D.N.Y. 2018)......................................................................................23

*Cap. Recs., LLC v. Vimeo, LLC*,
   2018 WL 1634123 (S.D.N.Y. Mar. 31, 2018) .........................................................................24

*Chubb INA Holdings Inc. v. Hole In Won LLC*,
   No. 19-CV-2514 (JPO), 2020 WL 774130 (S.D.N.Y. Feb. 18, 2020) .....................................16

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
   843 F.3d 48 (2d Cir. 2016).......................................................................................................15

*Commodity Futures Trading Comm'n v. Archegos Capital Mgt. LP*,
   No. 22-CV-3401 (JPO), 2023 WL 6123102 (S.D.N.Y. Sept. 19, 2023) ..............................9, 10

iii

*Courtenay Commc'ns Corp. v. Hall*,
    334 F.3d 210 (2d Cir. 2003)...............................................................................................21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..............................................................................................................10

*Demetriades v. Kaufmann*,
    698 F. Supp. 521 (S.D.N.Y. 1988) .....................................................................................14

*Disney Enterprises, Inc. v. Sarelli*,
    322 F. Supp. 3d 413 (S.D.N.Y. 2018)...........................................................................22, 23

*F.X. Maltz, Ltd. v. Morgenthau*,
    556 F.2d 123 (2d Cir. 1977)................................................................................................25

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016)..................................................................................................9

*Goldberg v. Danaher*,
    599 F.3d 181 (2d Cir. 2010)..................................................................................................8

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)................................................................................................8

*Grand v. Schwarz*,
    2016 WL 2733133 (S.D.N.Y. May 10, 2016) .....................................................................18

*Hectronic GmbH v. Hectronic USA Corp.*,
    No. 20 CIV. 2964 (LLS), 2020 WL 6947684 (S.D.N.Y. Nov. 24, 2020) ...........................13

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020).................................................................................10

*Int'l Code Council, Inc. v. UpCodes Inc.*,
    43 F.4th 46 (2d Cir. 2022) .......................................................................................11, 12, 13

*Int'l Council of Shopping Centers, Inc. v. Info Quarter, LLC*,
    No. 17-CV-5526 (AJN), 2018 WL 4284279 (S.D.N.Y. Sept. 7, 2018) ...............................18

*Intl. Info. Sys. Sec. Certification Consortium, Inc. v. Sec. U., LLC*,
    823 F.3d 153 (2d Cir. 2016)................................................................................................20

*JA Apparel Corp. v. Abboud*,
    568 F.3d 390 (2d Cir. 2009)................................................................................................21

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)...........................................................................................18, 19

iv

*Lebewohl v. Heart Attack Grill LLC*,
  890 F. Supp. 2d 278 (S.D.N.Y. 2012)..................................................................................18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)............................................................................................................16

*LoanStreet, Inc. v. Troia*,
  No. 21 CIV. 6166 (NRB), 2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022) ........................14, 17

*M. Shanken Commc'ns, Inc. v. Cigar500.com*,
  2008 WL 2696168 (S.D.N.Y. July 7, 2008) ........................................................................19, 22

*Manigault v. ABC Inc.*,
  2018 WL 2022823 (S.D.N.Y. Apr. 12, 2018)........................................................................18

*Mannatech, Inc. v. Glycobiotics Intern.*,
  Inc., No. 3-06-CV-0471-BD, 2008 WL 918311 (N.D. Tex. Mar. 13, 2008)...........................17

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)............................................................................................................24

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006)..................................................................................16, 19

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014)................................................................................................16

*Palin v. N.Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019).................................................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
  No. 97 Civ. 0629 (KMW), 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997)...............................17

*Prince v. Intercept*,
  634 F. Supp. 3d 114, 136, fn. 23 (S.D.N.Y. 2022) ..............................................................10

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
  241 F.3d 232 (2d Cir. 2011).................................................................................................13

*Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*,
  380 F.3d 126 (2d Cir. 2004)................................................................................................10

*Soter Techs., LLC v. IP Video Corp.*,
  523 F. Supp. 3d 389 (S.D.N.Y. 2021)...................................................................................8

*Sports Auth., Inc. v. Prime Hospitality Corp.*,
  89 F.3d 955 (2d Cir. 1996).................................................................................................21, 23

v

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
  752 F.3d 239 (2d Cir. 2014)..................................................................................................9

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
  820 F. Supp. 2d 541 (S.D.N.Y. 2011).................................................................................10

*Trane Intl. Inc. v. Calentadores de Am., S.A. de C.V.*,
  No. 21CV4497 (DLC), 2022 WL 1523527 (S.D.N.Y. May 13, 2022) ...................................17

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
  No. 21-CV-10638 (NSR), 2023 WL 4029824 (S.D.N.Y. June 14, 2023).........................12, 14

*Wonder Labs, Inc. v. Procter & Gamble Co.*,
  728 F. Supp. 1058 (S.D.N.Y. 1990).....................................................................................21

**Statutes**

15 United States Code
  § 1115(b)(4) .......................................................................................................................21
  § 1125(a)(3) .......................................................................................................................14
  § 1127.................................................................................................................................14

28 United States Code § 2201(a) ..............................................................................................24

Lanham Act § 43(a) ....................................................................................................10, 16, 17

New York General Business Law
  § 360-l................................................................................................................................23

Federal Rule of Civil Procedure
  8(a)(2) ..................................................................................................................................8
  12(b)(1) ...........................................................................................................................9, 25
  12(b)(6) .........................................................................................................................8, 9, 10
  15(a)(1)(B) ...........................................................................................................................1

Plaintiffs Portkey Technologies Pte Ltd. ("Portkey") and Vignesh Sundaresan ("Sundaresan," collectively, "Plaintiffs"), by and through their undersigned counsel, Dentons US LLP, hereby respectfully submit this Memorandum of Law in Opposition to Defendant Anand Venkateswaran's ("Defendant's") motion to dismiss plaintiffs' first amended complaint ("FAC" or "Amended Complaint").[1]

## I.    INTRODUCTION

This case involves straightforward claims for false advertising, unfair competition, reverse passing off, trademark infringement, and related claims arising from, *inter alia*, (i) Defendant's repeated and intentional false and misleading statements in which Defendant holds himself out as the source of Plaintiffs' significant business operations and success, and (ii) Defendant's misuse of Portkey's trademarks, METAPURSE and TWOBADOUR, in a false and misleading manner, which acts are likely to cause confusion.

Defendant, a former independent contractor hired by Portkey, has brazenly issued public statements through various online platforms and channels (including YouTube, LinkedIn, Twitter, and blogs) and participation in numerous conferences and public interviews, falsely claiming responsibility for the purchase and management of Plaintiffs' world-renowned collection of digital art NFTs and other digital assets, including Plaintiffs' 2021 historic purchase of the world's most valuable NFT artwork at the time of purchase, *Everydays: The First 5000 Days* ("Beeple NFT").

As part of his wrongful conduct, Defendant also has used Portkey's TWOBADOUR and METAPURSE trademarks in a false and misleading manner.  Defendant has made such false and

---

[1] Under Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs filed the FAC as a matter of right on November 20, 2023.  (Dkt. 22). Although Defendant filed a letter informing the Court that it would rely on its initially filed motion to dismiss (Dkt. 25), Defendant inappropriately made supplemental arguments in that letter directed to Plaintiffs' FAC.  Plaintiffs respectfully request that the Court disregard those arguments.

1

misleading statements and misused Portkey's trademarks for his personal gain and to promote his own businesses, which operate in the same marketplace as Portkey, and involve, among other things, the commercialization of NFTs.  Defendant's willful actions have materially damaged Plaintiffs' investments, goodwill and reputations, and opportunities to undertake new business projects and investments, and has caused a diminution in value of the Beeple NFT, among other things.

In Defendant's motion to dismiss, filed against Plaintiffs' original complaint, Defendant pays scant attention to the well-pleaded facts and causes of action in the FAC.  Defendant primarily focuses on issues relevant only to Plaintiff's trademark infringement claims, entirely ignoring Plaintiffs' reverse passing off claim and effectively ignoring Plaintiffs' claim for false advertising.  Yet, this action largely concerns Defendant's consistent and repeated misrepresentations of Plaintiffs' services and successes as his own.

Although Defendant tries to distract the Court from his wrongful conduct by telling a stock David and Goliath story, the Court easily will be able to see through that ploy.  By falsely associating himself and his personal businesses with Plaintiffs, Defendant has and continues to confuse the public.  To Plaintiffs' detriment, Defendant has unlawfully sought to confuse the public, benefit from Plaintiffs' goodwill and reputations, and impact the decisions of consumers and investors.

Defendant doubles down on his illegal actions throughout his motion by repeating many of the same false and misleading statements that resulted in this lawsuit.  Indeed, the heart of Defendant's motion is premised on the content of an inaccurate, old blog post, yet that post

2

(which was removed before Defendant filed its motion) cannot be properly considered by the Court in deciding the instant motion.[2]

Defendant's arguments regarding fair use, use in commerce, and materiality all fail. Similarly, Defendant's factual claims regarding his unauthorized use of the METAPURSE and TWOBADOUR marks are inaccurate, as shown by Plaintiffs' FAC. His policy argument and warning about "dangerous precedent" also ring hollow. Plaintiffs do not seek to prevent Defendant from truthfully and accurately stating that he was an independent contractor engaged by Portkey for a period of time. Rather, Plaintiffs seek (i) an injunction to prohibit Defendant from causing further confusion in the marketplace, harming Plaintiffs' goodwill, and unlawfully exploiting Plaintiffs' work, investments, and intellectual property, (ii) an award of damages for Defendant's unlawful acts, and (iii) a declaratory judgment determining that Portkey has exclusive rights to the TWOBADOUR and METAPURSE marks and that Defendant has no legal rights to use the trademarks in a false and misleading manner or a manner that otherwise causes confusion. For the reasons set forth herein, Defendant's motion should be dismissed in its entirety.

## II.    FACTS ALLEGED IN THE FAC

### a.    Plaintiffs and their ownership and use of the TWOBADOUR and METAPURSE trademarks

In 2017, Sundaresan, an Indian-born blockchain entrepreneur and investor, founded Portkey, a software and technology company that operates many of Sundaresan's blockchain, Web3, and NFT projects. (FAC ¶¶ 16 –18.) Sundaresan is Porkey's CEO and sole owner. (*Id.* ¶ 17.) In 2020, Plaintiffs began creating different pseudonyms for Portkey employees to use on

---

[2] The blog post that Defendant seeks to rely on is neither mentioned in nor attached to the FAC, and constitutes inadmissible hearsay.

3

different business ventures.  (*Id.* ¶ 37.) Portkey coined the trademark TWOBADOUR and began using the same at least as early as April 2020.  (*Id.* ¶ 38.) The TWOBADOUR mark was created under Sundaresan's instruction for use with Portkey's business.  (*Id.* ¶ 39.) Multiple Portkey employees and independent contractors have used the TWOBADOUR trademark at Portkey's direction in conducting Portkey's business, including when blogging and posting social media content.  (*Id.* ¶ 40.) Defendant was never the sole individual behind the TWOBADOUR name. (*Id.* ¶ 40.) Plaintiffs spent substantial time, effort, and money to establish TWOBADOUR as a source identifier and online identity.  (*Id.* ¶ 41.) Portkey owns common law trademark rights in and several trademark applications for the TWOBADOUR mark.  (*Id.* ¶¶ 43–44.)

Portkey created METAPURSE, a fund utilized for the acquisition of digital art NFTs and virtual land NFTs, and other Web3-related investments, in approximately September 2020.  (*Id.* ¶¶ 20, 49.) It was created under Sundaresan's instruction for use with Portkey's business.  (*Id.* ¶ 50.) The METAPURSE fund has always been capitalized fully by Sundaresan.  (*Id.* ¶ 51.) All investments and acquisitions made through the fund belong solely to Portkey and have been made under the direction of Portkey.  (*Id.*) Plaintiffs spent substantial time, effort, and money to establish METAPURSE as the leading NFT fund in the world.  (*Id.* ¶ 54.) Portkey owns common law trademark rights in and several trademark applications for the METAPURSE mark, including U.S. Trademark Application Ser. No. 79341844.  (*Id.* ¶¶ 56–57.) In an independent contractor agreement that Defendant entered into with Portkey (*see infra*), Defendant agreed that all intellectual property that he used during the course of his contract was to be owned exclusively by Portkey.  (*Id.* ¶ 67.)

Plaintiffs currently hold approximately 5,000 digital art NFTs, virtual land NFTs, and other digital assets.  (*Id.* ¶ 20.) As a result of Portkey's investments and activities in connection

4

with the TWOBADOUR and METAPURSE marks, Sundaresan has gained a worldwide reputation as a well-known investor and supporter of new and in-development blockchain and Web3 businesses, and art-related initiatives.  (*Id.* ¶ 22.)

### b.  Plaintiffs' historic purchase of the Beeple NFT

Between late February and early March of 2021, Christie's announced that it would hold an auction for the Beeple NFT.  (*Id.* ¶ 23.) On March 11, 2021, Sundaresan successfully bid and acquired this crown jewel in the NFT art field for $69,346,250 (42329.453 ETH) in his role as the owner and founder of METAPURSE.  (*Id.* ¶¶ 26, 29.) Sundaresan's purchase of the Beeple NFT has been described as marking a landmark moment for the art world because, among other reasons, the following:

- Christie's became the first major auction house to offer a digital-only work of art with an NFT as a guarantee of its authenticity.  (*Id.* ¶ 30.)
- The auction marked the first time a major auction house accepted cryptocurrency as payment.  (*Id.*)
- The price paid by Sundaresan set a record for the most expensive NFT ever sold. (*Id.* ¶ 31.)
- The Beeple NFT ranked third amongst the most valuable artworks ever sold at auction by a living artist.  (*Id.* ¶ 32.)

The purchase of the Beeple NFT received wide media attention, furthering Sundaresan's reputation as a leading collector of NFTs and developer of blockchain technologies and Web3 projects.  (*Id.* ¶ 33.) Likewise, METAPURSE received wide media attention, cementing its reputation as a leading fund involved in NFT investing.  (*Id.* ¶ 34.) By association, other Portkey projects and investments became more notable and publicized.  (*Id.* ¶ 35.) The monumental purchase also led to additional business opportunities for Portkey.  (*Id.*) Defendant played no role in Sundaresan's purchase of the Beeple NFT.  (*Id.* ¶ 28.) Defendant had no involvement with Sundaresan's decision to pursue the purchase of the Beeple NFT or the bidding strategy

employed by Sundaresan.  (*Id.*) Defendant also did not have any involvement in financing

Sundaresan's purchase of the Beeple NFT.  (*Id.*)

### c. Defendant's independent contractor role at Portkey, his false and misleading statements, and his infringing use of Plaintiffs' trademarks

As set forth in the FAC, Defendant has been falsely misrepresenting Plaintiffs' business

activities and successes as those of his own.  Contrary to the picture painted in Defendant's

motion, Plaintiffs did not create a business venture with Defendant.  (Motion to Dismiss

("MTD") at 3–4.) Rather, Portkey engaged Defendant as an independent contractor to assist with

managing personal communications on behalf of Sundaresan and company communications on

behalf of Portkey.[3]  (FAC ¶ 62.) Despite knowing TWOBADOUR was owned exclusively by

Portkey (*id.* ¶ 67), he began improperly using TWOBADOUR to build business ventures and

relationships solely for his benefit outside of Portkey, including competing ventures in the

blockchain, NFT, and Web3 industries.  (*Id.* ¶ 69.) Consequently, tensions rose and his

independent contractor relationship with Portkey was terminated effective February 28, 2022.

(*Id.* ¶ 68.) Since that date, Defendant has improperly made, and continues to make, false

statements about his role with Portkey and to use Portkey's TWOBADOUR and METAPURSE

trademarks in a false and misleading manner.  Examples of Defendant's false statements include,

but are not limited to, the following:

- Proclaiming to be the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or responsible for the purchase of the Beeple NFT.  (*Id.* ¶¶ 71–72.)
- Misrepresenting his role in Portkey through various public interviews and/or publishing untrue information on his public Twitter account, LinkedIn account, and blog, thereby claiming Portkey's overall business success as his own.  (*Id.* ¶ 74.)

---

[3] On or about August 14, 2017, Portkey and Defendant entered into an independent contractor agreement (the "First ICA").  (FAC ¶ 63.) Defendant terminated the First ICA on or about November 1, 2020, and, on or about the same day, Portkey and Wordesmith Collective Singapore Pte. Ltd. ("Wordesmith") entered into an independent contractor agreement ("Second ICA").  (*Id.* ¶¶ 65–66.) Defendant is the founder and sole shareholder of Wordesmith.  (*Id.* ¶ 66.)

- Claiming credit for purchases on behalf of METAPURSE in which he was not involved. (*Id.*)
- Claiming to be the only person behind TWOBADOUR. (*Id.* ¶ 80.)
- Claiming to have been the steward of METAPURSE. (*Id.* ¶¶ 72, 74, 80, 81.)
- Claiming to have been a co-founder of METAPURSE. (*Id.* ¶ 74.)

Additionally, Defendant has improperly:

- Prominently used Portkey's TWOBADOUR and METAPURSE marks in his public LinkedIn and Twitter bios immediately next to the names of his new businesses (eDAO and Layer-E or LayerEhq), which are not affiliated with Plaintiffs, and, on his Twitter account, included links to Portkey's TWOBADOUR and METAPURSE Twitter accounts and displayed the two marks in a distinguishing color;
- Sought to promote his own businesses and bolster his position in the public's eye about his import at METAPURSE and in the purchase of the Beeple NFT;
- Communicated with portfolio companies and others who had prior relationships with Portkey in an effort to promote his personal business ventures; and
- Asked third-parties to participate with him in podcasts and other public talks regarding his prior role at Portkey in order to further trade upon Plaintiffs' goodwill and claim responsibility for Plaintiffs' business success.

(*Id.* ¶¶ 78–80.)

Discovery is certain to uncover further bad acts by Defendant. Defendant's false statements have been willful, wanton, and in bad faith, and with the intent to misrepresent Plaintiffs' business operations and successes as that of his own. (*Id.* ¶ 93). Indeed, Defendant is fully aware that his statements are false, including without limitation, because he knows (i) other employees and independent contractors of Portkey conducted business using the TWOBADOUR mark such that he himself was not "the" TWOBADOUR (*id.* ¶¶ 40, 80), (ii) he played no role in Sundaresan's purchase of the Beeple NFT (*id.* ¶¶ 2, 28), and (iii) he did not manage, supervise, control, or otherwise have responsibility for the METAPURSE fund and the assets acquired through the fund. (*Id.* ¶¶ 2, 80.)

Defendant's wrongful actions have harmed, *inter alia*, Plaintiffs' reputations, current and prospective business relationships, investments, and opportunities. (*Id.* ¶¶ 87–88.) Defendant

7

also has caused the public to mistakenly believe falsehoods regarding ownership of the Beeple NFT, TWOBADOUR, and METAPURSE. (*Id.* ¶¶ 89–92.) In sum, Defendant has attempted to exploit Plaintiffs' reputations and intellectual property to intentionally cause confusion and misrepresent Plaintiffs' business operations and success as his own. (*Id.* ¶¶ 93–97.)

## III.    STANDARD OF REVIEW

### a.    The legal standard for a motion to dismiss under Rule 12(b)(6)

"The ultimate question [on a motion to dismiss] is whether '[a] claim has facial plausibility[.]'" *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 396 (S.D.N.Y. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). In so doing, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alterations omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 550 U.S. at 545 (quotations omitted). A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Id.* Plaintiffs only need to provide "enough facts to state a claim to relief that is plausible on its face" and "raise a reasonable expectation that discovery will reveal [the necessary] evidence." *Id.* at 556, 570. "A claim has facial plausibility when the

8

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The party moving for dismissal must show that no claim has been stated.  *Goldberg v. Danaher*, 599 F.3d 181, 183–184 (2d Cir. 2010).

### b.   The legal standard for a motion to dismiss under Rule 12(b)(1)

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### IV.    ARGUMENT

### a.   The Court should not consider the blog post on the motion to dismiss

Throughout his motion,[4] Defendant improperly seeks to rely on a Substack blog post. (Dkt. 18-1.) (*See* MTD at 3 –5, 8, 13, 18.) This blog post, however, falls outside of the scope of the FAC.  Indeed, the FAC does not even reference it.  Accordingly, the Court should ignore the blog post when deciding Defendant's motion.

As this Court has recently held, "[b]ecause a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Commodity Futures Trading Comm'n v. Archegos Capital Mgt. LP*, No. 22-CV-3401 (JPO), 2023 WL 6123102, at *5 (S.D.N.Y. Sept. 19, 2023) (*citing Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).  Generally, those "include facts stated on the face of the complaint, documents attached to the complaint or incorporated by reference, and matters of which judicial notice may be

---

[4] Count IV (declaratory judgment) is the only cause of action that Defendant seeks to dismiss under Rule 12(b)(1). (*See* MTD at Section IV.)  Defendant does not seek to rely on the blog post for that portion of his motion.  (*Id.*)

taken." *Id.* Here, the blog post is not annexed to or referenced in the FAC.[5] Nor is it something of which judicial notice should be taken.[6] As Defendant even acknowledges, the post was removed (*see* MTD at 3, fn. 3) because, as Defendant knows, it contained numerous inaccuracies.[7] Nevertheless, Defendant inappropriately seeks to rely on it now, however, the Court should not consider it in analyzing Defendant's motion.[8]

### b. Plaintiffs have pleaded plausible reverse passing off and false advertising claims under Section 43(a) of the Lanham Act

The Lanham Act makes actionable "false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003) (internal citation omitted). Here, Plaintiffs sufficiently pleaded claims for (i) reverse passing off (Count I, FAC ¶¶ 99–105), and (ii) false advertising under Section 43(a) of the Lanham Act. (Count II, FAC ¶¶ 106–117.)

### i. Reverse passing off under Section 43(a) of the Lanham Act

Defendant fails to address Plaintiffs' reverse passing off claim **at all**. Therefore, such claim should not be dismissed.[9] (*See* MTD Sections III(D).)

---

[5] The post was not attached to the original Complaint either. (*See* Dkt. 1.) Although "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss," the post should not be considered here because the FAC does not rely "heavily upon its terms and effect" (nor at all). *Archegos*, 2023 WL 6123102, at *5 (internal citations omitted). As this Court has held, "[i]n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" but is not attached to the complaint. *Id.* (quoting *Glob. Network Commc'ns*, 458 F.3d at 157). Such is not the case here.

[6] *See, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (where there is a challenge to authenticity or a document is not "capable of accurate and ready determination," judicial notice is inappropriate).

[7] Defendant seeks to use the post "to show the truth of [its] contents" – namely, to argue that Defendant's misstatements were neither false nor misleading (*see, e.g.*, MTD at 18), but the Court cannot properly consider it in assessing this motion. *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 n.3 (S.D.N.Y. 2011) (refusing to consider documents outside of the complaint on a motion to dismiss that were submitted to show the truth of their contents).

[8] In the event the Court takes judicial notice of the blog post, it should only take notice of its existence. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 136, fn. 23 (S.D.N.Y. 2022) ("[I]n taking judicial notice of articles written by or about Plaintiff that were attached to a declaration submitted by the First Look Defendants, the Court looks only to what statements the documents contain—*not for the truth of the matter asserted*.") (emphasis added).

[9] The FAC alleges that Defendant has held himself out as the source of Portkey's services when he was not, and that he is unfairly riding on the coattails of Portkey and causing the public to mistakenly believe that he was – and

### ii.  False advertising under Section 43(a) of the Lanham Act

The FAC contains a properly pleaded claim for false advertising under the Lanham Act,

as it alleges the following: (i) "falsity of the challenged statement"; (ii) "that the false or

misleading representation involved an inherent or material quality of the [services]"; (iii) "that

the defendant placed the false or misleading statement in interstate commerce"; and (iv) "that the

plaintiff has been injured as a result of the misrepresentation." *Int'l Code Council, Inc. v.*

*UpCodes Inc.*, 43 F.4th 46, 56 (2d Cir. 2022) (reversing-in-part dismissal of false advertising

claim).

### 1.  The FAC sufficiently alleges Defendants' false statements

The FAC sufficiently sets forth false statements made by Defendant.  (*See*, *e.g.,* FAC ¶¶

71–98.) As alleged, Defendant's false statements include the following:

- Proclaiming to be the owner of the Beeple NFT, when he is not. (*Id.* ¶¶ 71–72.)
- Proclaiming to be responsible for the purchase of the Beeple NFT, when he was not.  (*Id.*)
- Diminishing Sundaresan's role in Portkey and Portkey's overall success, when Sundaresan, who has a worldwide reputation in the blockchain, Web3, and art spaces, founded and is the sole proprietor and CEO of Portkey.  (*Id.* ¶¶ 7, 20, 74.)
- Claiming to be the co-founder of METAPURSE, when he was not.  (*Id.*)
- Claiming to have been the steward of METAPURSE, when he was not.  (*Id.* ¶¶ 72, 74, 80–81)
- Claiming to have been the only person behind TWOBADOUR, when he was not. (*Id.* ¶ 80.)

Defendant argues, "[t]here is no factual allegation to support a false advertising claim"

(MTD at 17), relying on the blog post and certain allegations set forth in Plaintiffs' original

Complaint, but those arguments lack any merit whatsoever.  First, to the extent Defendant asks

---

perhaps currently still is – a principal owner of the Beeple NFT and responsible for Portkey's business success. (*See* FAC ¶¶ 2, 11, 71–84.) Misrepresenting someone else's services as one's own constitutes reverse passing off.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27, n.1, (2003) (holding "reverse passing off" to be where someone "misrepresents someone else's goods or services as his own."); *Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004) ("[Plaintiff's] allegation that [defendant's] directories falsely designated the services provided at the New Orleans and Dallas [hotel] properties as being provided by [defendant's] hotels is sufficient to withstand a Rule 12(b)(6) motion."). (*See also* FAC ¶¶ 99–105.)

11

the Court to compare Plaintiffs' well-pleaded claims with other statements contained in extrinsic evidence (*i.e.*, the blog post), those are "factual questions that are not well suited for resolution on a motion to dismiss." *Int'l Code Council*, 43 F.4th at 62. Moreover, the blog post should not be considered for the purpose of this motion. (*See supra* Section IV(a).)

Second, Defendant falsely argues that "[i]t is clear ***even from the Complaint*** . . . that [Defendant] has not misrepresented his role at Portkey." (MTD at 17.) For example, Defendant argues that, "[a]s the Complaint confirms, [Defendant] has clearly and truthfully indicated that he was ***previously*** associated with Metapurse in his former role as 'Steward of Metapurse.'" (MTD at 17.) Yet, the FAC clearly contradicts Defendant's position, as Plaintiffs allege, "Defendant was never 'the steward of Metapurse'" and "never managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund." (FAC ¶¶ 53, 51.) Therefore, any representation about being the "steward of Metapurse" – either previously or currently – is false and misleading.[10]

Ultimately, in claiming that the FAC fails to set forth false statements made by Defendant, Defendant does nothing more than further disseminate such falsities while improperly asking the Court to resolve "[f]act-specific questions [that] cannot be resolved on the pleadings." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

---

[10] Defendant argues that Plaintiffs' references to "additional statements" made by Defendant that were false and misleading should not be credited by the Court. (MTD at 19.) Yet, even as to the single allegation that Defendant is apparently referencing, ("[u]pon information and belief, Defendant wrote or approved of the [false] CoinDesk biograph"], Plaintiffs have "pled sufficient facts to nudge the claims across the line from conceivable to plausible." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, No. 21-CV-10638 (NSR), 2023 WL 4029824, at *2 (S.D.N.Y. June 14, 2023) (internal citation omitted) (refusing to dismiss 43(a) claim for false advertising). For example, Plaintiffs alleged that not only did Defendant approve his CoinDesk biography, but he also made multiple false and misleading statements when speaking at the CoinDesk conference. (FAC ¶ 80.)

12

### 2.   The FAC sufficiently alleges materiality

At the pleading stage, Plaintiffs only are required to allege that Defendant "that the false or misleading representation involved an inherent or material quality of the [services]".  *Int'l Code Council*, 43 F.4th at 63 (citing *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2011). Plaintiffs' FAC does so.  Without limitation, Plaintiffs allege that, "Defendant's acts are material in that they are likely to influence purchasing decisions by members of the public" (FAC ¶ 101), and "Defendant's false statements are material in that they are likely to cause confusion and likely to influence purchasing and investment decisions by members of the public."  (*Id.* ¶ 112.)

Defendant argues that "the Complaint . . . identifies no 'purchasing decisions' that could be influenced," citing *Hectronic GmbH v. Hectronic USA Corp.*, No. 20 CIV. 2964 (LLS), 2020 WL 6947684, at *7 (S.D.N.Y. Nov. 24, 2020).  (MTD at 20–21.) Unlike in *Hetronic*, where the complaint included only one conclusory statement about materiality (2020 WL 6947684, at *7), here, Plaintiffs allege sufficient facts to demonstrate that Defendant's false and misleading statements are "likely to influence purchasing decisions by members of the public" (MTD at 20–21) because the statements are central to Defendant's Web3 and NFT business ventures, *e.g.*, eDao and Layer-E, "which operate in the same space as Portkey and have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively."  (FAC ¶ 75.) The FAC also alleges, "Defendant's false statements relate to an inherent characteristic of his businesses, *e.g.,* that they are substantially the same as Plaintiffs' business and/or will be as successful as Plaintiffs' business."  (*Id.* ¶ 76.) Additionally, "[b]y falsely associating himself and his own businesses with Plaintiffs, Defendant has sought to impact decisions of consumers and investors, to Plaintiffs' detriment."  (*Id.* ¶ 77.) Such allegations are more than sufficient for the

13

purpose of surviving a motion to dismiss. *Int'l Code Council*, 43 F.4th at 64 ("[T]he question of whether or not [consumers] construed a statement as material generally cannot be determined on consideration of a motion to dismiss.") (Internal citation omitted).

### 3. The FAC sufficiently alleges that Defendant placed false and misleading statements into interstate commerce

The FAC contains numerous allegations that Defendant made his false and misleading statements "in commerce." Under 15 U.S.C. § 1125(a)(3), "in commerce" means "all commerce which may lawfully be regulated by Congress." § 1127. As this Court recently held, "[s]tatements made in connection with intrastate activities, if they substantially affect interstate commerce in the aggregate, are actionable." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, No. 21-CV-10638 (NSR), 2023 WL 4029824, at \*7 (S.D.N.Y. June 14, 2023) (denying motion to dismiss false advertising claim, holding that "[g]iven that the alleged false advertising … is ostensibly directed at the broad audience of consumers that sell products on e-commerce websites (such as eBay) that operate nationally (and internationally), it undoubtedly occurs 'in commerce.'"). Moreover, "a defendant's wholly intrastate activities will be subject to [the Act's] apparently long reach if those activities may be said to affect plaintiff's business and that business is interstate." *Id.* (citing *Demetriades v. Kaufmann*, 698 F. Supp. 521, 524 (S.D.N.Y. 1988)).

Here, as pleaded, Defendant disseminated his false and misleading statements online through YouTube (FAC ¶ 72) and social media, including on his public LinkedIn and Twitter accounts. (*Id.* ¶¶ 2, 74, 80–82.) LinkedIn, for example, "is the world's largest professional network on the internet." (*Id.* ¶ 82.) Twitter similarly has worldwide reach. Such allegations are robust and demonstrate how Defendant made false statements in commerce, *e.g.*, via the Internet. *See LoanStreet, Inc. v. Troia*, No. 21 CIV. 6166 (NRB), 2022 WL 3544170, at \*10 (S.D.N.Y.

14

Aug. 17, 2022) (holding that "use in commerce" for Lanham Act purposes includes use on the internet).  Additionally, Plaintiffs sufficiently pleaded that these statements "affect" their business, which is "interstate."  *Unlimited Cellular*, 2023 WL 4029824, at *7.  For example, the FAC alleges that "Defendant's explicit and implicit falsehoods and misstatements have harmed Plaintiffs' reputations, current investments, and opportunities to undertake new business projects and investments" (FAC ¶ 87) and "Defendant's statements and actions also have harmed Plaintiffs' relationships with current and prospective clients and business partners."  (*Id.* ¶ 88.)

Defendant cites to *C=Holdings B.V. v. Asiarim Corp.* to support his position that Plaintiffs failed to properly plead that the false statements were made in commerce.  992 F. Supp. 2d 223 (S.D.N.Y. 2013).  (MTD at 20.) The Court in *C=Holdings*, however, allowed the false advertising claim to be tried.  Moreover, after a bench trial, the Court held that the defendant engaged in false advertising and unfair competition under the Lanham Act. 992 F. Supp. 2d at 243.  Regarding certain false statements, the Court held that the defendant:

> placed that material falsehood *into interstate commerce by publishing its advertisement on the Internet*—an obvious "campaign to penetrate the relevant market." . . . Accordingly, the Court will enter judgment in favor of [plaintiff] on its false advertising claim with respect to [defendant's] advertisement of Commodore-branded products *on its website*.

*Id*.  (Emphasis added.) That is exactly what Defendant did here; he placed false and misleading statements online, including on his social media profiles.  *Cf id.* (only rejecting the false advertising claims involving statements included in SEC filings and not online).

### 4.  The FAC sufficiently alleges damages

To satisfy the injury requirement, a false advertising claimant must plead "the cause of actual or likely injury to the plaintiff."  *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).  The injury must be "economic or

15

reputational injury flowing directly from the deception wrought," and such injury "occurs when deception of consumers causes them to withhold trade from the plaintiff." *3B Med., Inc. v. SoClean, Inc.*, 857 F. App'x 28 (2d Cir. 2021) (holding that the district court erred when it concluded that the plaintiff's complaint failed to plausibly allege injury). Here, Plaintiffs specifically allege that "as a result of Defendant's false and misleading statements, people turn to Defendant for business opportunities, believing that he is or was responsible for Plaintiffs' business operations and success" (FAC ¶ 96), *i.e.*, that customers approach Defendant with business opportunities rather that Plaintiffs due to Defendant's false statements. *See, e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 13 –134 (2014); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (characterizing "direct diversion of sales" as injury under Lanham Act). The FAC also alleges that, "[a]s a proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer significant damage and harm to their business, goodwill, reputation, and profits." (FAC ¶ 97.) Plaintiffs have sufficiently pleaded damages.

   c. **Portkey has exceeded the low bar of pleading sufficient facts to support its claim of trademark infringement and unfair competition**

   Trademark and unfair compeition claims—like the ones at issue here—"ordinarily do[] not lend [themselves] to a motion to dismiss." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (addressing both infringement and unfair competition claims). To properly plead a claim for trademark infringement under Section 43(a) of the Lanham Act, Portkey must "demonstrate (1) it holds a valid trademark entitled to protection and (2) there is a likelihood of confusion." *Chubb INA Holdings Inc. v. Hole In Won LLC*, No. 19-CV-2514 (JPO), 2020 WL 774130, at *2 (S.D.N.Y. Feb. 18, 2020) (internal citation omitted). Portkey has done both. In fact, Defendant does not contest Portkey's rights in the

16

TWOBADOUR and METAPURSE marks **at all**.  Instead, Defendant argues that: (i) Plaintiffs failed to plead use of the marks in commerce, and (ii) "fair use" principles save him from liability.  Portkey, however, did allege that Defendant used its trademarks in commerce, and fair use does not shield Defendant's unlawful acts.[11]

### i.   The FAC alleges that Defendant uses the TWOBADOUR and METAPURSE marks in commerce

As aforementioned, the term "use in commerce" is "broad and has a sweeping reach." *LoanStreet, Inc. v. Troia*, No. 21 CIV. 6166 (NRB), 2022 WL 3544170, at *10 (S.D.N.Y. Aug. 17, 2022) (citing *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997)).  Axiomatically, use of a mark on the Internet suffices to establish "use in commerce" under the Lanham Act.  *C=Holdings*, 992 F. Supp. 2d at 240 (collecting cases).  (*See also supra*, Section III(c)(iv).)

Plaintiffs' well-pleaded FAC clearly and repeatedly identifies how Defendant improperly uses the TWOBADOUR and METAPURSE marks online and otherwise, which use was made in connection with Defendant's efforts to build business ventures and relationships solely for Defendant's benefit, including ventures that compete with Portkey in the NFT, blockchain, and Web3 industries.  (*See, e.g.*, FAC ¶¶ 69, 80, 82, 120.) Defendant's improper use of Portkey's marks on his public LinkedIn and Twitter accounts, as highlighted in the FAC (*id.* ¶ 80), as well as on YouTube and blogs (*id.* ¶¶ 72, 75), sufficiently demonstrates "use in commerce" for pleading purposes.  *Trane Intl. Inc. v. Calentadores de Am., S.A. de C.V.*, No. 21CV4497 (DLC), 2022 WL 1523527, at *4 (S.D.N.Y. May 13, 2022) ("[T]he use of the American Standard mark

---

[11] Defendant's fair use defense is only asserted against Plaintiffs' trademark claims.  (*See* MTD at 12-15.) Moreover, fair use is not a defense to false advertising claims brough under Section 43(a) of the Lanham Act.  *See Mannatech, Inc. v. Glycobiotics Intern.*, Inc., No. 3-06-CV-0471-BD, 2008 WL 918311, at *2 (N.D. Tex. Mar. 13, 2008) (holding that the defendant could not rely upon the doctrine of nominative fair use to obtain summary judgment in its favor on a false advertising claim because nominative fair use could not apply to a false advertising claim).

on the Ariston Group website and the @_ASWH Twitter account constitutes use in commerce.")
The FAC also includes allegations that Defendant uses Portkey's trademarks in a false and
misleading manner through other public channels, including through videos, publications, and at
trade conferences and events. (*Id.* ¶ 82.) "A plaintiff is not required to demonstrate that a
defendant made use of the mark in any particular way to satisfy the "use in commerce"
requirement." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013); *see also Lebewohl v.
Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 290 (S.D.N.Y. 2012) ("[C]ourts have treated the
'in commerce' requirement as not imposing a stringent limitation."). There can be no questions
that the FAC sufficiently pleads use in commerce.

### ii. Defendant's prematurely asserted fair use defenses are not supported by the facts and cannot be resolved now

Defendant argues that the Court should grant its motion based on principles of "fair use."
Such arguments, however, do not hold weight here. As an initial matter, it is well established
that "[i]t is often the case that 'the invocation of the fair use doctrine necessary [sic] raises
questions of fact that cannot be resolved on a motion to dismiss.'" *A&E TV Networks, LLC v.
Big Fish Ent., LLC*, No. 22 CIV. 7411 (KPF), 2023 WL 4053871, at *23 (S.D.N.Y. June 16,
2023) (quoting *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869,
902 (S.D.N.Y. 2016)). This is one of those cases. It would be improper for the Court to dismiss
Portkey's trademark infringement claims based on fair use, whether nominative or descriptive,
because the defense requires a complex factual analysis and consideration of facts outside the
complaint. *See Int'l Council of Shopping Centers, Inc. v. Info Quarter, LLC*, No. 17-CV-5526
(AJN), 2018 WL 4284279, at *5 (S.D.N.Y. Sept. 7, 2018) ("Courts have routinely rejected
nominative fair use arguments at the motion to dismiss stage because of its inherently factual
inquiry."); *Manigault v. ABC Inc.*, 2018 WL 2022823, at *4 (S.D.N.Y. Apr. 12, 2018)

18

(Nominative fair use is a "merits issue[ ] to be determined on a summary judgment motion or at trial."); *Grand v. Schwarz*, 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016) ("[E]valuating [nominative fair use] on a motion to dismiss is inappropriate."); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015) ("[T]he invocation of the fair use doctrine necessarily raises questions of fact that cannot be resolved on a motion to dismiss.") (citing *Kelly-Brown* , 717 F.3d at 308); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008) (in denying a motion to dismiss, the Court held that it "could not conclude as a matter of law that the defendants' use of the plaintiff's marks was primarily in a descriptive sense, and not in a trademark sense."); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. at 412 (holding that "the classic fair use defense fails, at least at this stage, where the only question is the sufficiency of the pleadings.").

Also, the facts do not support Defendant's fair use arguments.  Defendant argues that "the law expressly permits" him to use Portkey's marks in order to "refer to the name he previously used in his work with Plaintiffs" and "refer to Plaintiffs' fund by its name."  (MTD at 7.) In support of his argument, Defendant cites Professor McCarthy:

> A person or company may use the trademark of another . . . to indicate a previous place of employment *if the trademark is used in such a way as to be truthful and not to confuse persons into mistakenly believing that there is a continuing association*.

4 McCarthy on Trademarks and Unfair Competition § 23:54 (5th ed.) (emphasis added).  (MTD at 9.) Defendant, however, gives little attention to the second half of that statement, which is at the heart of this case.  As plainly set forth in the FAC, Defendant's use of Portkey's trademarks invites confusion.  "Defendant was never the sole individual behind the TWOBADOUR name." (FAC ¶ 40.) "Multiple Portkey employees and independent contractors have used the TWOBADOUR trademark at Portkey's direction … when blogging, responding to emails, and posting social media content." (*Id.*)  He never "won" the Beeple NFT auction.  (*Id.* ¶¶ 2, 72, 80.)

19

Additionally, "Defendant was never the 'steward of Metapurse'" (FAC ¶ 53) and "never managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund or the assets acquired through the fund." (*Id.* ¶ 52.) The METAPURSE fund has always been funded by Sundaresan and all investments and acquisitions made through the fund have been done under the direction of Portkey. (*Id.* ¶ 51.) As such, many of Defendant's public statements, including the statements on his LinkedIn profile ("**Fmr Steward or Metapurse** … **Creator of the @Twobadour pseudonym**") and Twitter profile ("**As @twobadour, Steward of @metapurse, won the $69m @BEEPLE auction**") (*Id.* ¶ 80), are false.

In light of the above, and other well-pleaded allegations in the FAC, Defendant cannot possibly prevail on a nominative fair use defense. As an initial matter, in this Circuit, "nominative fair use is not an affirmative defense to an infringement claim" and therefore cannot be relied upon to excuse likelihood of confusion. *Intl. Info. Sys. Sec. Certification Consortium, Inc. v. Sec. U., LLC*, 823 F.3d 153, 167–168 (2d Cir. 2016). When nominative fair use is asserted, courts must consider the *Polaroid* likelihood of confusion factors in addition to (i) "whether use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service," (ii) "whether the defendant uses only so much of plaintiff's mark as is necessary to identify the product or service," and (iii) "whether the defendant's conduct or language reflects the true and accurate relationship between plaintiff's and defendant's products or services." (*Id.*) These factors all weigh in Plaintiffs' favor. As made clear above and throughout the FAC, Defendant did not truthfully and accurately describe his "independent contractor" role at Portkey (*see supra* Section II(c)) and Defendant's use of the marks goes well beyond what is "necessary," as Defendant prominently included Portkey's marks at the very top of his public LinkedIn and Twitter bios (*id.* ¶ 67, 80, 81), included links

20

from his Twitter bio to Portkey's TWOBADOUR and METAPURSE Twitter accounts, and displayed the two marks in his Twitter profile in a distinguishing color.  Such use, combined with Defendant's placement of Portkey's marks in his bios immediately next to the names of his new businesses (eDAO and Layer-E), certainly invites confusion as to source, affiliation, sponsorship, and endorsement.  (*Id.* ¶¶ 75, 80.) *See Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 n. 1 (2d Cir. 2003) (vacating dismissal of Lanham Act claims and holding nominative fair use did not supply alternative grounds for dismissal because defendant's "hyperlink connection to a page of endorsements suggests affiliation, sponsorship, or endorsement by" the plaintiff.)  (Internal quotation marks omitted).

Defendant's descriptive fair use defense, sometimes referred to as "classic fair use," also must fail as it is not applicable here.  To demonstrate descriptive fair use, a defendant must establish that it used the subject term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks omitted); *see also* 15 U.S.C. § 1115(b)(4).  Since Defendant is using Porktey's trademarks in reference to Portkey, this defense does not apply here.[12]  The marks TWOBADOUR and METAPURSE have no inherent descriptive meaning apart from serving as Portkey's trademarks. And Defendant is not using them in good faith, but rather to associate himself with Portkey and to create an affiliation between Portkey and Defendant's new business ventures (*e.g.*, eDAO and Layer-E).  (FAC at ¶¶ 75, 80.)[13]  Indeed, he has prominently used the marks at the top of his public LinkedIn and Twitter profiles in connection with advertising his affiliation with eDAO

---

[12] Descriptive fair use applies where a party uses term not as a mark but to fairly and in good faith describe an attribute of its product or service. *See Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058 (S.D.N.Y. 1990) (use of "the dentists' choice" in advertising CREST toothpaste was fair use of toothbrush manufacturer's "Dentist's Choice" trademark).

[13] Moreover, as recognized by the Second Circuit, "[good faith], like many intent issues, is best left in the hands of the trier of fact." *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996).

21

and Layer-E, neither of which are affiliated with Portkey, and, on Twitter, included links from his Twitter bio to Portkey's TWOBADOUR and METAPURSE Twitter accounts and displayed Portkey's marks in a distinguishing color. *See Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 431 (S.D.N.Y. 2018) (rejecting descriptive fair use defense and holding "Defendants' advertising efforts were specifically designed to evoke in consumers' minds Plaintiffs' renowned marks . . . in an effort to trade on their popularity and goodwill."); *M. Shanken Commun., Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008) (in denying a motion to dismiss trademark infringement claim based on classic fair use defense, the Court held that it "could not conclude as a matter of law . . . that consumers would not be confused as to the plaintiff's possible sponsorship of the defendant's website based on the use of the plaintiff's mark."). As such, this Court has no basis on which to dismiss Portkey's trademark infringement claims on descriptive fair use grounds.

### d. Plaintiffs have adequately pleaded its claims under New York law

#### i. Plaintiffs have alleged sufficient facts to plead a plausible violation of the New York Deceptive Trade Practice statute

Defendant's primary argument on this claim is that Plaintiffs must plead "harm to consumers beyond trademark confusion and unfair competition." (MTD at 22.) Plaintiffs' FAC sufficiently pleads this claim. (*See* FAC ¶¶ 123 –126.) As this Court has held, the gravamen of the complaint must be consumer injury or harm to the public interest. *Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 412 (S.D.N.Y. 2018) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). Plaintiffs have sufficiently alleged consumer injury and harm here. (*See, e.g.*, FAC ¶¶ 72, 90, 101, 112, 124.)

### ii. Plaintiffs have alleged sufficient facts to plead a plausible claim of trademark dilution under New York General Business Law § 360

Defendant's sole argument to dismiss Plaintiffs' well-pleaded claim under N.Y. Gen. Bus. Law § 360-l is the same lack of use in commerce argument that Plaintiffs previously addressed and discredited. For the same reasons set forth above in Section IV(c)(i), Defendant's argument fails and this claim should not be dismissed.

### iii. Portkey has alleged sufficient facts to plead a plausible claim of trademark infringement under New York law

In a footnote, Defendant argues that Plaintiffs' common law trademark infringement claim fails because "Plaintiffs fail to plead any basis for their bare allegations of bad faith." (MTD at 15, n.7.) Yet, as detailed in the FAC, Plaintiffs allege that Defendant made numerous false claims with knowledge of such falsity, including without limitation that he purchased the Beeple NFT, owned the Beeple NFT, was the sole individual who communicated under the TWOBADOUR name, and managed Portkey's METAPURSE fund. (*See, e.g.*, FAC ¶¶ 2, 71–72, 74, 78, 80–82). *See Cap. Recs., LLC v. Vimeo, LLC*, 2018 WL 1634123, at \*5 (S.D.N.Y. Mar. 31, 2018) (finding the complaint sufficiently alleged bad faith at the pleading stage, where the Court "must accept these allegations as true and draw all reasonable inferences in Plaintiffs' favor."). This claim too should not be dismissed.

### e. Plaintiffs have pleaded a plausible claim for declaratory relief

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). An action seeking declaratory relief satisfies the case-or-controversy requirement, and thus permits the exercise of federal jurisdiction, if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests" and is "real and substantial," such

23

that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Plaintiffs ask the Court to declare that Portkey owns the TWOBADOUR and METAPURSE trademarks and that Defendant has no legal rights to use the trademarks in a false and misleading manner or a manner that otherwise causes confusion, as set forth in the FAC. (Count VII, FAC ¶¶ 134–141.) Defendant argues that Plaintiffs' declaratory judgment claim must be dismissed under Rule 12(b)(1) because there is no actual case or controversy. While Defendant submitted a declaration making certain attestations about the TWOBADOUR and METAPURSE marks, Defendant **did not** affirmatively declare that Portkey owns the TWOBADOUR and METAPURSE marks, and Defendant intends to continue using the marks in a false and misleading manner as alleged in the FAC unless this Court orders otherwise. (*See* Declaration of Anand Venkateswaran (Dkt. 19).) Thus, an actual controversy exists and this cause of action should not be dismissed.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

24

25

Dated:  December 1, 2023
       New York, New York

Respectfully submitted,

By:

  */s/ Robert M. Wasnofski, Jr.*
Robert M. Wasnofski, Jr.
Daniel A. Schnapp
Mary Kate Brennan
Samuel J. Weiner
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Phone:  (212) 768-6748
Fax:  (212) 768 6800
robert.wasnofski@dentons.com
daniel.schnapp@dentons.com
marykate.brennan@dentons.com
samuel.weiner@dentons.com

*Attorneys for Plaintiffs Portkey*
*Technologies Pte Ltd. and Vignesh*
*Sundaresan*