# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

PORTKEY TECHNOLOGIES PTE LTD. and
VIGNESH SUNDARESAN,

                   Plaintiffs,

              - against -

ANAND VENKATESWARAN,

                  Defendant.

-----------------------------------------------------------------X

:  Civil Case No. 23-cv-5074-JPO
:
:
:
:
:
:
:
:
:
:

**[PROPOSED] PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

After electing to rely on his originally filed motion to dismiss – despite Plaintiffs subsequently amending their Complaint – and considering Plaintiffs' opposition to his motion, Defendant improperly introduced new arguments in his Reply (Dkt. 28) (*e.g.*, claiming that "Plaintiffs ask the Court to create new law" (Reply, at 4)) and distorted or completely ignored a number of Plaintiffs' well-pleaded facts.  Plaintiffs therefore respectfully submit this sur-reply.

First, recognizing that Plaintiffs' First Amended Complaint ("FAC") sufficiently alleges that Defendant's false statements and misuse of Portkey's trademarks were made in connection with Defendant's efforts to *promote* his individual commercial activities and his competing businesses, eDao and Layer-E, Defendant now suggests that any such false statements and misuse of Portkey's marks must "appear[] in an advertisement" to constitute use in commerce. (*Id.*, at 3).  For example, Defendant emphasized that "[n]o statement appeared in an advertisement" in his opening paragraph.  (*Id.*, at 1.)  That is of no moment.  Rather, Defendant's use of false statements and Portkey's marks on social media and other channels in connection with the promotion of his individual commercial activities and other businesses constitute "use in commerce," even if such use is not in the form of traditional advertisements.

Second, the Reply distorts a number of facts involving Defendant's false and misleading statements.  Notably, Defendant seeks to mislead the Court by arguing that Plaintiffs' Amended Complaint confirms that Defendant's false and misleading statements are demonstrably true. (*Id.*, at 1.)  Not so, as the FAC consistently and repeatedly alleges that Defendant's statements are *false and misleading*.  (*See*, *e.g.*, FAC, ¶¶ 1-2, 11, 13, 71-98, 111-112.)

Finally, Defendant argues that Plaintiffs "relied" on an outdated, inaccurate, and unsubstantiated blog post in bringing this lawsuit.  (*Id.*, at 5-6).  This is a demonstrably false statement, as explained below.

1

I.        **Plaintiffs sufficiently pleaded that Defendant made false statements and misused Portkey's marks in commerce**

Defendant's argument that Plaintiffs failed to allege that Defendant's false statements and misuse of Portkey's marks were made "in commerce" is unfounded.  (*See* FAC, ¶¶ 11, 72, 74, 75, 79-82, 84, 100, 120, 124).  Should the Court rule in Defendant's favor on this issue, it would create new law and overturn years of precedent.

Contrary to Defendant's misleading suggestion, there is no requirement that a plaintiff demonstrate that a defendant used false statements or another's mark *in advertising*.  *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 267 (2d Cir. 2011) (holding that "commerce" includes "all commerce which lawfully may be regulated by Congress").  Section 43(a) of the Lanham Act, upon which many of Plaintiffs' claims are based, prohibits use in commerce of any mark or false or misleading representation of fact which, "**in connection with any goods or services**" is likely to cause confusion or in "commercial advertising **or promotion,** misrepresents the nature, characteristics, qualities, … of his or her or another person's **goods, services, or commercial activities**."  15 U.S.C. § 1125(a).[1]  (Emphasis added.)  Thus, false statements and misuse of another's mark by a defendant need not be made in a traditional *advertisement*; use by a defendant "in connection with any goods or services" or with the mere "promotion" thereof is sufficient.  A quick look at Plaintiffs' FAC, including the below allegations, confirms that Plaintiffs sufficiently pleaded use in commerce by Defendant:[2]

- "Through his above-referenced false and misleading statement, Defendant has sought to **promote** his own businesses, including, without limitation eDAO and Layer-e…." (FAC, ¶ 75.)  (Emphasis added.)

---

[1] To the extent Defendant references 15 U.S.C. § 1114 in its motion papers, which makes "use in commerce … of a *registered mark* in connection with the *sale, offering for sale, distribution, or advertising* of any goods or services" actionable, it does not apply here because Plaintiffs did not assert a claim under that section of the Lanham Act.
[2] The allegations in the FAC far exceed the "notice pleading standard."  *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 618 (S.D.N.Y. 2013.) (Internal citation omitted.) ("Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss under Rule 12(b)(6).").

2

- "Defendant has communicated with portfolio companies … in an effort to **promote** his business ventures." (*Id.*, ¶ 79.) (Emphasis added.)

- "… Defendant's use of the trademarks TWOBADOUR and METAPURSE through the other public channels alleged herein, including **promotional blogs** … also constitutes use of the trademarks in commerce." (*Id.*, ¶ 82.) (Emphasis added.)

- "… Defendant continues to make false, misleading, and tortious statements along the lines described above in connection with the **promotion** of his business." (*Id.*, ¶ 84.) (Emphasis added.)

- " Further, Defendant's **promotion** of his … Web3, and NFT business services in U.S. commerce are and have been competing with Portkey's … Web3, and NFT business services." (*Id.*, ¶ 120.) (Emphasis added.)

- "Defendant engaged in a consumer-oriented act or practice by using the TWOBADOUR and METAPURSE trademarks in connection with the **promotion** of his business ventures…." (*Id.*, ¶ 124.) (Emphasis added.)

The cases Defendant cited in his Reply to support the argument that his statements were not "used in commerce" are easily distinguishable. For example, in *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, the primary case relied upon by Defendant regarding "use in commerce," the Second Circuit did not issue a sweeping rule that online statements cannot qualify as use in commerce, like Defendant's citation intimates, but merely held that defendant's *internal, non-public* use of plaintiff's mark did not qualify as "use in commerce." 414 F.3d 400, 412 (2d Cir. 2005) (holding that "[a] company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark").[3] Given the unique facts of *1-800 Contacts*, Defendant's citation to it appears intended to mislead the Court regarding the "use in commerce" element of Plaintiffs' claims.

---

[3] Moreover, Defendant's citation to the Fourth Circuit's holding in *Radiance Found., Inc. v. N.A.A.C.P.* actually supports Plaintiffs' position that their Section 43(a) claims were sufficiently plead. 786 F.3d 316 (4th Cir. 2015). In *Radiance*, the court held that actionable trademark claims require "that the infringer's use be 'in connection with' goods or services in a manner that is 'likely to cause confusion'" *Id.* at 322. That is exactly what Plaintiffs' well-pleaded allegations show – how Defendant's false statements and use of Portkey's trademarks were used, including in connection with Defendant's businesses, which use is likely to cause confusion. (*See, e.g.,* FAC, ¶¶ 71-77.)

3

To the extent Defendant's argument relies on the definition of "use in commerce" in Section 45 of the Lanham Act, that argument must fail. 15 USC § 1127. Section 45 describes the kind of use needed to *acquire* registrable trademark rights, not the kind of use that may constitute trademark infringement. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 139, 90 U.S.P.Q.2d 1287 (2d Cir. 2009); McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.) (stating "it is not a reasonable reading of the statute" to conclude that Section 45's definition of "use in commerce" should be applied to "use in commerce" for infringement purposes).[4] As the Court recently held in *LoanStreet, Inc. v. Troia*, a "narrow reading of use in commerce ... is inconsistent with the body of case law recognizing that the term is broad and has sweeping reach." 2022 WL 3544170, at *10. (Internal citations omitted.)

**II.     The FAC does not "confirm" that Defendant's statements are true, but instead alleges many times over that they are false and misleading**

Defendant seeks to mislead the Court once again by arguing that "[t]he Amended Complaint confirms that many of the alleged [false] statements" are true. Wrong. The FAC clearly identifies many false and misleading statements made by Defendant in commerce. (FAC, ¶¶ 1-2, 4, 11, 13, 48, 61, 71-98, 100, 107-115, 124, 137-138.) Defendant's assertion to the contrary is absurd, and should not distract the Court from the actual contents of Plaintiffs' FAC.

**III.    The extrinsic blog post does not give rise to Plaintiffs' claims and should not be considered at all for purposes of the motion to dismiss**

Defendant argues for the first time that an inaccurate blog post, which was taken down prior to Defendant's motion, *forms the basis* of all of Plaintiffs' claims except for their declaratory judgment claim. (Reply, at 5-6.) While Plaintiffs' original Complaint (Dkt. 1) made

---

[4] As the *Rescuecom* Court held, "[t]he Senate Report for the 1988 amendment confirms that the definition in § 1127 was meant to apply only to registering a mark rather than infringing one" and that "'use of any type will continue to be considered in an infringement action.'" 562 F.3d at 138 (citing S. Rep. 100–515 100th Cong. at 45 (1988)).

4

passing reference to the blog post,[5] in no way did Plaintiffs *rely on it* to establish their claims. Rather, the post was referenced only to provide background information about Mr. Sundaresan; that information has no bearing on Plaintiffs' claims and therefore was not included in the FAC.[6]

In his unfortunate and disingenuous attempts to shoehorn the blog post into the caselaw he cites,[7] Defendant purposefully mischaracterizes its significance. *Underwood v. Coinbase Glob., Inc.*, cited by Defendant, is wholly inapposite. 654 F. Supp. 3d 224 (S.D.N.Y. 2023). There, this Court held that although the amended complaint did not reference or attach a user agreement that was referenced and incorporated in plaintiff's original complaint, "the contractual obligations between [defendants] and plaintiffs—as set out in the User Agreement—**are central to plaintiffs' claims** in the Complaint" and plaintiff "**rel[ied]** on the terms and effect of the User Agreement in drafting the Complaint." *Id.*, 654 F. Supp. 3d at 237. (Emphasis added) (Internal citation omitted.) Because plaintiff "**relied on [the user agreement] in bringing the suit**," the Court held the agreement could be considered on defendant's motion to dismiss. *Id*. (Emphasis added.) (Internal citations omitted.) That is not the case here. Defendant cannot credibly argue that the blog post is "central" to Plaintiffs' claims or that Plaintiffs *relied on it* to bring this action. Plaintiffs' claims exist wholly apart from the contents of the deleted blog post. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

---

[5] (*See* Complaint, ¶ 33.) ("Within a week of the transaction, Sundaresan revealed in a Substack post that he was Metakovan. The article also explained Sundaresan's reasoning behind his purchase of the Beeple NFT. His goal was to acquire and later tokenize ownership of NFTs in the METAPURSE collection. On a more personal note, he also shared that he hoped to demonstrate that Indians and people of color could be patrons of the arts.")

[6] Plaintiffs do not admit that the blog post was written by Mr. Sundaresan. Facts regarding the creation of that post will come out through discovery. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (holding that on a motion to dismiss, the court cannot consider extrinsic materials for the truth of the statements they contain.).

[7] While ignoring the caselaw cited in Plaintiffs' Opposition (Dkt. 27), Defendant cites *Nguyen v. Algenist LLC*, No. 22 CIV. 13 (KPF), 2022 WL 17251733 S.D.N.Y. Nov. 28, 2022) to support his argument that Plaintiffs' false advertising claims should be dismissed based on the extraneous blog post. (Reply, at 5.) In *Nguyen*, however, plaintiff **cited and relied upon** in the article in its complaint. Here, the FAC does not cite or rely upon the blog post. Additionally, the FAC "**supersedes the original [complaint], and renders it of no legal effect**." *Underwood*, 654 F. Supp. 3d at 235. (Internal citation omitted.) (Emphasis added.)

153 (2d Cir. 2002) ("a *plaintiff's reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (Emphasis in the original.)  Here, nothing in the blog post changes the fact that Defendant's statements were false and misleading, as will be shown through discovery.  Accordingly, the blog post should be ignored for purposes of deciding the instant motion.

## CONCLUSION

Plaintiffs therefore respectfully request that Defendant's motion to dismiss be denied, together with such other and further relief as the Court deems just and proper.

Dated:  December 15, 2023              Respectfully submitted,
        New York, New York

                                       By:
                                               */s/ Robert M. Wasnofski, Jr.*
                                               Robert M. Wasnofski, Jr.
                                               Daniel A. Schnapp
                                               Mary Kate Brennan
                                               Samuel J. Weiner
                                               DENTONS US LLP
                                               1221 Avenue of the Americas
                                               New York, NY 10020-1089
                                               Phone:  (212) 768-6748
                                               Fax:  (212) 768 6800
                                               robert.wasnofski@dentons.com
                                               daniel.schnapp@dentons.com
                                               marykate.brennan@dentons.com
                                               samuel.weiner@dentons.com

                                               *Attorneys for Plaintiffs Portkey*
                                               *Technologies Pte Ltd. and Vignesh*
                                               *Sundaresan*

6