**DENTONS**

| | |
|---|---|
| **Robert M. Wasnofski, Jr.** | Dentons US LLP |
| | 1221 Avenue of the Americas |
| robert.wasnofski@dentons.com | New York, NY 10020-1089 |
| D        +1 212-768-6748 | United States |

dentons.com

April 25, 2024

**VIA ECF**

Hon. J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re:**    ***Portkey Technologies Pte Ltd. et al v. Venkateswaran*, 23-cv-5074 (JPO)**
Conference re Defendant's Motion to Stay Discovery

Dear Judge Oetken:

As the Court is aware, we represent Plaintiffs Portkey Technologies Pte Ltd. and Vignesh Sundaresan ("Plaintiffs") in the above-referenced matter.  In light of certain issues and statements raised by Defendant's counsel during the April 23, 2024 telephonic conference ("Conference") regarding Defendant Anand Venkateswaran's motion to stay discovery (Dkt. 31), Plaintiffs are compelled to respectfully submit a few clarifying points.[1]

During the Conference, Defendant's counsel stated, "there is no dispute that Mr. Venkateswaran is not competing with Portkey."  Ex. A at 9:5-6.  This statement is incorrect.  As pleaded in the First Amended Complaint ("FAC") (Dkt. 22), **the parties operate in the same industries**, namely, blockchain, NFT, and Web3.[2]  And Defendant has repeatedly made false statements and misused Portkey's trademarks in connection with his promotion of competing businesses, including his NFT/Web3 ventures eDAO and Layer-E.  *See generally* FAC ¶¶ 71-98.

---

[1] A true and correct copy of the Conference transcript is attached hereto as Exhibit A.

[2] Without limitation, the FAC, in relevant part, pleads, "Portkey is a software and technology company that operates many … blockchain, NFT, and Web3 projects" (FAC ¶ 18), including "METAPURSE, a fund utilized for the acquisition of digital art NFTs and virtual land NFTs, and other Web3-related investments."  *Id.* ¶ 20.  Defendant made "use of Portkey's intellectual property in connection with efforts to build business ventures and relationships solely for Defendant's benefit outside of Portkey, *including competing ventures in the blockchain, NFT, and Web3 industries*."  *Id.* ¶ 69.  (Emphasis added.) "Defendant's promotion of his blockchain, Web3, and NFT business services in U.S. commerce *are and have been competing with Portkey's blockchain, Web3 and NFT business services.*").  *Id.* ¶ 120. (Emphasis added.)  Additionally, "[t]hrough his . . . false and misleading statements, Defendant has *sought to promote his own businesses, including, without limitation eDAO and Layer-E, which operate in the same space as Portkey and have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively*."  *Id.* ¶ 75. (Emphasis added.)

**Zaanouni Law Firm & Associates ► LuatViet ► Fernanda Lopes & Associados ► Guevara & Gutierrez ► Paz Horowitz Abogados ► Sirote ► Adepetun Caxton-Martins Agbor & Segun ► Davis Brown ► East African Law Chambers ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms**

**DENTONS**

dentons.com

April 25, 2024
Page 2

Defendant's counsel also stated that Defendant is simply making "plain vanilla former employer statements … which are clearly protected by the doctrine of nominative fair use and descriptive fair use." Ex. A at 10:18-20.  That is not true.  This is not, for example, a case where an individual simply identifies – accurately – his prior employer, role, and length of employment.  Rather, Defendant has made many false statements about the role he played at Portkey, including **"that he managed, supervised, controlled, or was otherwise responsible for [Portkey's] METAPURSE fund and the assets acquired through the fund**" (FAC ¶ 80) and made such false statements while **"promot[ing] his own businesses, including, without limitation eDAO and Layer-E, which operate in the same space as Portkey and have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively.**" *Id.* ¶ 75.  Many of Defendant's other false statements are pleaded in detail in the FAC.[3]  Defendant has made these statements at industry conferences and events, and through various other public channels, including online blogs and during recorded interviews. *Id.* ¶¶ 11, 74, 82.  Such acts are not only "likely to cause confusion … as to the … association of Defendant with Plaintiffs, [or] as to the source of the business operations provided by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A)" (*id.* ¶ 100), but, as mentioned during the Conference, **Defendant's acts have already caused actual confusion.** *See* Ex. A at 3:6-13.  Even without the benefit of discovery, Plaintiffs are aware of more than a dozen articles and at least one book that repeat Defendant's false statements as true. *See id.* at 3:10-13, 7:6-9; *see also* Ex. D at Appendix 2 (*see infra*).

While Plaintiffs addressed fair use in their Opposition to the Motion to Dismiss (Dkt. 27), they respectfully highlight a few points on this issue.  First, Defendant asserts a fair use defense only against Plaintiffs' trademark claims. *See* Motion to Dismiss (Dkt. 16 at 12-15).  This is not surprising because fair use is not a defense to false advertising claims brought under Section 43(a) of the Lanham Act. *See Mannatech, Inc. v. Glycobiotics Intern., Inc.*, No. 3-06-CV-0471-BD, 2008 WL 918311, at *2 (N.D. Tex. Mar. 13, 2008).  Second, in this Circuit, "nominative fair use is not an affirmative defense to an infringement claim" and therefore cannot be relied upon to excuse likelihood of confusion. *Intl. Info. Sys. Sec. Certification Consortium, Inc. v. Sec. U., LLC*, 823 F.3d 153, 167–168 (2d Cir. 2016).  Third, this Court has repeatedly held that assertions of fair use raise questions of fact that cannot be resolved on a motion to dismiss. *See, e.g., A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015).  As Plaintiffs' claims are meritorious and supported by fact and law, *i.e.*, not "utterly devoid of merit" or "facially deficient," discovery should not be stayed. *Bennett v. Cuomo*, No. 22-CV-7846 (VSB), 2023 WL 2021560, at *2-3 (S.D.N.Y. Feb. 15, 2023) (collecting cases).

Further, though Defendant's counsel stated that Plaintiffs' recently-served discovery requests (which were served *after* Defendant filed the motion to stay) are burdensome, he failed to explain why or put the discovery requests before the Court for its review.  Plaintiffs therefor attach copies of their initial discovery requests so the Court can see for itself that the requests are

---

[3] *See, e.g.*, FAC ¶¶ 11, 71, 72, 74, 77, 80-81, 90, 94, 96.

**DENTONS**

dentons.com

April 25, 2024
Page 3

narrowly tailored to the relevant issues of this case.[4]  The requests target Defendant's false statements and misuse of Portkey's trademarks, including such statements and use made in connection with Defendant's competitive businesses, eDAO and Layer-E.  *See* Ex. B (RFPs 1, 2, 18-21), Ex. C (ROGs 12 and 13), and Ex. D. (RFAs 41-48, 60, 121, 124-127).

Respectfully submitted,

Robert M. Wasnofski, Jr.

cc: All counsel of record (via ECF)

---

[4] A true and correct copy of Plaintiffs' First Set of Requests for Production ("RFPs") is attached hereto as Exhibit B; a true and correct copy of Plaintiffs' First Set of Interrogatories ("ROGs") is attached hereto as Exhibit C; and a true and correct copy of Plaintiffs' First Set of Requests for Admission ("RFAs") is attached hereto as Exhibit D (exhibits omitted).