# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PORTKEY TECHNOLOGIES PTE LTD. and VIGNESH SUNDARESAN, | Civil Case No. 1:23-cv-5074-JPO |
| Plaintiffs, | |
| -against- | **[PROPOSED]** <br> **SECOND AMENDED COMPLAINT** |
| ANAND VENKATESWARAN, | **Jury Trial Requested** |
| Defendant. | |

Plaintiffs Portkey Technologies Pte Ltd. ("Portkey") and Vignesh Sundaresan ("Sundaresan") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Second Amended Complaint against Defendant Anand Venkateswaran ("Defendant" or "Venkateswaran"), hereby allege as follows:

## NATURE OF THE ACTION

1.      This is an action for unfair competition, reverse passing off, false and misleading representations of fact, false advertising, and trademark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and related claims under New York State and common law, resulting from, *inter alia*, Defendant's repeated and intentional false and misleading statements holding himself out as the source of Plaintiffs' business operations and success, and use of the TWOBADOUR and METAPURSE trademarks, which acts have caused confusion among the public and undermine Plaintiffs' reputation and goodwill.

2.      Without limitation, Defendant has repeatedly issued public statements falsely claiming, expressly and impliedly, to have been, *inter alia*, (i) responsible for the purchase and

management of Plaintiffs' collection of NFTs and other digital assets, which were purchased and managed by Plaintiffs in connection with a fund created by Portkey under the name METAPURSE, and (ii) directly involved in Plaintiffs' historic purchase of the NFT artwork created by Beeple known as *Everydays: The First 5000 Days* ("Everydays" or the "Beeple NFT"). Without limitation, Defendant has publicly claimed to be one of the two people who purchased the Beeple NFT, stating in 2022, that he was "one of the two guys that won the Christies auction… and bought the $69 million Beeple piece." Defendant has also publicly claimed to be one of the owners of the Beeple NFT, including stating that he "was one of the two guys who bought the 69 million dollar Beeple piece," and including in his public Twitter bio that he "won" the Beeple NFT auction.

3.      By this action, Plaintiffs also seek a declaratory judgement, pursuant to 28 U.S.C. §§ 2201 and 2202, that Portkey owns the trademarks TWOBADOUR and METAPURSE.

4.      Unless permanently enjoined, Defendant will continue to falsely associate himself with Plaintiffs' business, misuse Plaintiffs' intellectual property, cause confusion, mistake, and deception among the public, and ultimately harm Plaintiffs' goodwill and business prospects.

5.      Plaintiffs therefore seek injunctive relief, a declaratory judgment, actual damages, treble damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## THE PARTIES

6.      Plaintiff Portkey is a limited company established and existing under the laws of Singapore, with its principal place of business located at: Parkview Square, 600 North Bridge Road, #12-02/03, Postal 188778.

7.      Plaintiff Sundaresan is a natural person and citizen of India. Sundaresan is the founder, sole proprietor, and CEO of Portkey.

2

8. Upon information and belief, Defendant Venkateswaran is an individual residing at 680 Wellesley Street, Weston, MA 02493.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10. Defendant is subject to the Court's personal jurisdiction because, upon information and belief, Defendant has committed tortious acts within New York and has also committed tortious acts outside of New York causing injury to Plaintiffs within New York.

11. Plaintiffs' claims arise out of and related to Defendants' transactions of business, and tortious acts committed in New York, and outside of New York causing damage to Plaintiffs in New York because, *inter alia*, Defendant has:

> Repeatedly made and continues to make false statements in New York and outside of New York claiming to have been directly responsible for the purchase of the Beeple NFT and Portkey's business operations and success and/or stated, expressly or impliedly, that he owns the Beeple NFT;

> Repeated these false statements through various public channels, including social media, online blogs, and in numerous interviews posted online, which are all accessible within New York;

> Repeatedly used and/or otherwise associated himself with the trademark TWOBADOUR, which is owned by Portkey; and

> Repeatedly used and/or otherwise associated himself with the trademark METAPURSE, which is owned by Portkey.

12. Plaintiffs also have achieved reputations as leaders in the blockchain, Web3, and NFT industries, are routinely sought out for investment opportunities by businesses and entrepreneurs in New York, and have made investments in New York-based companies.

13.    Defendant's tortious acts and statements in New York, and out of New York have damaged Plaintiffs' existing and future business investments and opportunities, causing injury to Plaintiffs within New York.

14.    Therefore, this Court has long-arm jurisdiction over Defendant pursuant to CPLR §§ 302(a)(1)-(3).

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

**FACTUAL ALLEGATIONS**

**A.    Background Regarding Plaintiffs**

16.    Sundaresan in an Indian-born blockchain entrepreneur and investor who is an advocate for and investor in blockchain technology, emerging technology projects, and decentralized financial systems.

17.    Sundaresan founded Portkey in 2017 and is its sole owner.

18.    Portkey is a software and technology company that operates many of Sundaresan's blockchain, NFT, and Web3 projects.

19.    In addition to founding Portkey, Sundaresan has made various timely investments in technology, blockchain, and cryptocurrency projects, including, for example, Ethereum, Bitcoin, Polkadot, and Decentraland.

20.    From 2017 to approximately March 2020, Sundaresan purchased several thousand NFTs.  In approximately September 2020, Portkey created METAPURSE, a fund utilized for the acquisition of digital art NFTs and virtual land NFTs, and other Web3-related investments ("METAPURSE").  Plaintiffs currently hold approximately 5,000 digital art NFTs, virtual land NFTs, and other digital assets.

4

21.    Plaintiffs are well-known and regarded in the NFT space because of their collection of a wide array of NFTs, including digital artwork and virtual land, including, but not limited to, as part of the METAPURSE fund.

22.    As a result of Portkey's investments and activities through its METAPURSE fund, Sundaresan gained a worldwide reputation as a well-known collector, investor, and supporter of new and in-development blockchain, NFT, and Web3 businesses, and art-related initiatives.

**B.  Sundaresan's Historic Purchase of the Prized Beeple NFT**

23.    Between late February and early March of 2021, Christie's auction house held an auction for the one-of-a-kind Beeple NFT.

24.    The Beeple NFT is a work of art by the artist Beeple (Mike Winkelmann) comprised of the first 5,000 digital pictures he created following his ambitious challenge to post a new piece of artwork each day, which he began on May 1, 2007.  The monumental digital collage documents the evolution of Beeple's artistic development and brings together the first 5,000 days of this project.

25.    An image of the Beeple NFT is shown here:



5

26.     On March 11, 2021, Sundaresan successfully bid and acquired the Beeple NFT for $69,346,250 (42329.453 ETH).

27.     Sundaresan alone determined and executed his bidding strategy in pursuing the Beeple NFT, and he funded the purchase of the work entirely with his own assets.

28.     Defendant played no role in Sundaresan's purchase of the Beeple NFT.  Defendant had no involvement with Sundaresan's decision to pursue the purchase of the Beeple NFT or the bidding strategy employed by Sundaresan.  Defendant also did not have any involvement in financing Sundaresan's purchase of the Beeple NFT.

29.     Sundaresan acquired the Beeple NFT, a crown jewel in the NFT art field, in his role as the founder of METAPURSE.

30.     Through the landmark auction of the Beeple NFT, Christie's became the first major auction house to offer a digital-only work of art with an NFT as a guarantee of its authenticity. The auction also marked the first time a major auction house accepted cryptocurrency as payment.

31.     The price paid by Sundaresan set a record for the most expensive NFT ever sold. The Beeple NFT remains the most expensive single-edition NFT ever sold.

32.     At the time of the sale, the Beeple NFT ranked third amongst the most valuable artworks ever sold at auction by a living artist, behind Jeff Koons and David Hockney.

33.     The purchase of the Beeple NFT was significant for Sundaresan and it received wide media attention, furthering his reputation as a leading collector of NFTs and development of blockchain technologies and Web3 projects.

34.     Portkey's METAPURSE fund also received wide media attention, cementing its reputation as a leading fund involved in NFT investing.

35.     By association, other Portkey projects and investments became more notable and publicized.  The purchase of the Beeple NFT also led to additional business opportunities for Portkey.

36.     The sale of the Beeple NFT furthered Beeple's advocacy for the NFT art market, where he remains a prominent artist and still creates and sells his work.  Sundaresan and Beeple have appeared together to talk about the significance of NFT art and Web3 projects.

**C.  Portkey's Ownership of the TWOBADOUR Trademark**

37.     In 2020, Plaintiffs began creating different pseudonyms for Portkey's independent contractors and employees to use in furtherance of various business ventures.

38.     In connection with its business, Portkey coined the trademark TWOBADOUR and began using the same at least as early as April 2020.

39.     TWOBADOUR was created under Sundaresan's instruction for use with Portkey's business.

40.     Multiple Portkey employees and independent contractors have used the TWOBADOUR trademark at Portkey's direction in connection with conducting Portkey's business, including when blogging, responding to emails, and posting social media content. Defendant was never the sole individual behind the TWOBADOUR name.

41.     Plaintiffs spent substantial time, effort, and money to establish TWOBADOUR as a source identifier and online identity.

42.     TWOBADOUR is an inherently distinctive trademark with significant renown among the public.

43.     Based on its use of the trademark TWOBADOUR, Portkey owns common law trademark rights therein.

44.    Portkey also owns several trademark applications for the mark TWOBADOUR covering various countries, including an international application filed with WIPO (the World Intellectual Property Organization) that includes an extension of protection to the United States, International Application Ser. No. MM202300404Q, namely, U.S. trademark application Serial No. 79403296. This application covers the following goods and services: Downloadable computer software for minting non-fungible tokens (NFTs); downloadable audio, digital, music and video files authenticated by non-fungible tokens (NFTs); computer software for use in the virtual display of artwork, multimedia products, virtual goods and digital files authenticated by NFTs; Advertising and promotion services; advertising and publicity services; advertising for others on the Internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; advisory services for business management; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; advertising and promotional services for businesses by means of collaborations with artists to create art and art authenticated by non-fungible tokens (NFTs); business consulting services; business development services; business management; business management consultancy in the field of virtual reality technology; business management consultancy services; business management consultancy services provided via the Internet; business management for freelance service providers; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; business management of public auctions; business reputation management and improvement services; career advancement consultancy services; career advisory services, other than education and training advice; career planning

8

consultancy; conducting interactive virtual auctions; conducting virtual trade shows online; consulting services relating to publicity; development of publicity concepts; dissemination of advertising, marketing and publicity materials; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; marketing advice; marketing assistance; marketing services; on-line advertising on computer networks; online auctioneering; online retail store services featuring works of art; online trading services in which seller posts products to be auctioned and bidding is done via the Internet; online wholesale store services featuring works of art; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the Internet; providing online auction services; retail services; talent agency services [business management of performing artists]; arranging and conducting of art exhibitions, featuring artwork and artwork authenticated by NFTs, and consultancy relating thereto; art galleries services, namely, selection, purchasing, and sale of artwork and artwork authenticated by NFTs, and consultancy relating thereto; marketing and business consultancy in relation to the purchase and sale of artwork and artwork authenticated by NFTs; consultation in the purchase and sale of artwork and NFTs; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services; management of investments; provision of investment information;

cryptocurrency asset management; cryptocurrency investment advisory services; cryptocurrency investment services; financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation; artwork and NFT investment services; consultation in the investment in artwork and NFTs; Career advisory services [education or training advice]; advisory services relating to entertainment; career counselling [education or training advice]; career information and advisory services [educational and training advice]; organization of art exhibitions for cultural or educational purposes; organization of exhibitions for entertainment purposes; art exhibition services; arranging and conducting of art exhibitions for cultural or educational purposes; display of works of art in exhibitions, shows, museums, galleries; arranging and conducting of colloquiums, conferences, congresses, seminars, symposiums and training workshops; arranging and conducting of seminars; arranging of seminars; conducting of instructional seminars; conducting seminars; artwork and NFT curation services; consultation in the curation of artwork and NFTs; curator services for artwork, multimedia products, virtual goods and digital files authenticated by non-fungible tokens (NFTs); curation services featuring selected, purchased, and sold artwork, including those authenticated by NFTs; Design consultancy; design engineering; design services; design and development of multimedia products, virtual goods and digital files authenticated by non-fungible tokens (NFTs); design and development of new technology for others; design and development of computer software; technological consultancy relating to digital transformation; electronic storage of digital images, music, photographs and images; providing online non-downloadable software for the display and management of artwork, multimedia products, virtual goods and digital files authenticated by NFTs and inventories thereof; design and development of computer software for use in the virtual display of artwork, multimedia products, virtual goods and digital files

10

authenticated by NFTs; consultation in the purchase and sale of artwork and NFTs. A printout of the U.S. trademark application Serial No. 79403296 from the U.S. Patent and Trademark Office's online database is attached as Exhibit A.

45.    Defendant does not claim ownership in the TWOBADOUR trademark and rights therein.

46.    Defendant never asserted that Portkey does not own the trademark TWOBADOUR and rights therein.

47.    Defendant concedes that Portkey is the exclusive owner of the trademark TWOBADOUR.

48.    As described herein, however, Defendant used the TWOBADOUR trademark to falsely represent that he was the sole individual responsible for all actions associated with the TWOBADOUR pseudonym and, in so doing, is causing confusion in the marketplace, including without limitation, as to the source of services and business success associated with the TWOBADOUR trademark.

**D.  Portkey's Ownership of the METAPURSE Trademark**

49.    In connection with its business, Portkey adopted and used the trademark METAPURSE at least as early as September 2020.

50.    METAPURSE was created under Sundaresan's instruction for use with Portkey's business.

51.    The METAPURSE fund has always been capitalized solely by Sundaresan. All investments and acquisitions made through the fund belong solely to Portkey and have been made under the direction of Portkey.

52.     Defendant never managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund or the assets acquired through the fund.

53.     Defendant was never the "steward of Metapurse."

54.     Plaintiffs spent substantial time, effort, and money to establish METAPURSE as the leading NFT fund in the world.

55.     METAPURSE is an inherently distinctive trademark with significant renown among the public.

56.     Based on its use of the trademark METAPURSE, Portkey owns common law trademark rights therein.

57.     Portkey also owns U.S. trademark Registration No. 7251142 for its METAPURSE trademark covering Advertising and promotion services; advertising and publicity services; advertising by transmission of on-line publicity for third parties through electronic communications networks; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; consulting services relating to publicity; on-line advertising on computer networks; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; sales promotion services;  business management; consultancy services; business management consultancy services provided via the internet; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business administration assistance, assistance in management of business activities; business consulting services; business management of actors, artists, authors, performing artists, photographers or writers;

12

business opportunities promotion services; distribution and dissemination of advertising materials in the nature of leaflets, prospectuses, printed material, samples; dissemination of advertising, marketing and publicity materials; Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning being financial advice; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment brokerage, analysis and stock research services; advisory services for the financial management of funds for others, including private and public equity, stocks, bonds, options, commodities, futures; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services, namely, capital investment services, real estate investment trust services, private equity fund investment; management of investments for annuities and acquiring joint ventures; provision of financial investment information; cryptocurrency financial asset management; cryptocurrency financial investment advisory services; cryptocurrency investment services, namely asset acquisition, consultation, development and management services; financial evaluation services relating to securities and other financial instruments; financial valuation services, namely, personal property and real estate; providing information, consultancy and advice in the field of financial valuation.  A printout of the certificate of registration for Registration No. 7251142 from the U.S. Patent and Trademark Office's online database is attached as Exhibit B.

58.    U.S. trademark Registration No. 7251142 for the METAPURSE trademark constitutes prima facie evidence of the validity of the registered mark and of the registration of

the mark, of Portkey's ownership of the mark, and of Portkey's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate of registration, subject to any conditions or limitations stated in the certificate of registration.

59.    Defendant does not claim ownership in the METAPURSE trademark and rights therein.

60.    Defendant never asserted that Portkey does not own the trademark METAPURSE and rights therein.

61.    Defendant concedes that Portkey is the exclusive owner of the trademark METAPURSE.

62.    As described herein, however, Defendant used the METAPURSE trademark to falsely represent that he managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund and, in so doing, causes confusion in the marketplace, including without limitation, as to the source of services and business success associated with the METAPURSE trademark.

### E.  Defendant's Independent Contractor Arrangement with Portkey

63.    After Sundaresan started Portkey in 2017, Portkey engaged Defendant as an independent contractor to assist with, *inter alia*, managing personal communications on behalf of Sundaresan and company communications on behalf of Portkey.

64.    On or about August 14, 2017, Portkey and Defendant entered into an independent contractor agreement (the "First ICA") under which Defendant was to provide Portkey with the following services:  developing UI and UX; communications and public relations; community management; management of social media platforms; website development and management;

14

hiring and managing UI/UX design team; and attending and representing in conferences deemed essential for Portkey in terms of software development, education, promotion, marketing or otherwise.

65.     In his independent contractor role at Portkey, beginning at least as early as April 23, 2020, Defendant was directed by Portkey to communicate on behalf of Plaintiffs under the pseudonym and trademark TWOBADOUR.  At least as early as September 2020, Defendant was directed by Portkey to assist with the operation of METAPURSE.

66.     On or about November 1, 2020, the First ICA was terminated by Defendant.

67.     On or about the same day, November 1, 2020, Portkey and Wordesmith Collective Singapore Pte. Ltd. ("Wordesmith") entered into an independent contractor agreement (the "Second ICA") where Wordesmith was to provide Portkey with the same scope of services stated in Paragraph 63.  Defendant is the founder and sole shareholder of Wordesmith.

68.     In signing the Second ICA, Defendant agreed that all intellectual property that he used during the course of his independent contractor agreement with Portkey was to be owned exclusively by Portkey.

69.     On or about January 15, 2022, Wordesmith requested to terminate the Second ICA. Portkey and Defendant agreed that the Second ICA would be terminated on February 28, 2022.

70.     The termination of the Second ICA was related to rising tensions between Plaintiffs and Defendant regarding Defendant's use of Portkey's intellectual property in connection with efforts to build business ventures and relationships solely for Defendant's benefit outside of Portkey, including competing ventures in the blockchain, NFT, and Web3 industries.

71.    On or about February 28, 2022, the Second ICA was terminated and Defendant signed a release confirming that he had no claims against Portkey and that all of his work had been performed under independent contractor agreements.

### F.  Defendant's False and Misleading Statements

72.    Despite knowing that Sundaresan purchased the Beeple NFT entirely on his own, beginning at least as early as August 2022, Defendant began making public statements, explicitly and implicitly, proclaiming himself to be the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT.

73.    Since his contractual relationship with Portkey was terminated, Defendant has made numerous false and misleading public statements designed to confuse the public into mistakenly believing that he and Sundaresan purchased the Beeple NFT together, that he has/had an ownership interest therein, and that he is associated with Plaintiffs.  By way of example:

> i.    In an August 1, 2022, video on YouTube, Future of Media ft. EDAO (available at:  https://www.youtube.com/watch?v=yB53hDQ_oz4), Defendant spoke about how he was "**one of the two guys that won the Christies auction… and bought the $69 million Beeple piece**.";
>
> ii.    In an August 24, 2022, video on Youtube, Hacking The Creator Economy - The Blockchain Council Podcast (available at: https://www.youtube.com/watch?v=20yeYKwWveQ), Defendant stated, "**I used to be the steward of Metapurse…I was one of the two guys who bought the $69 million-dollar Beeple piece**."

74. Defendant has made numerous other false and misleading statements and taken actions that have negatively impacted Plaintiffs by diminishing Plaintiffs' business achievements and trading on Plaintiffs' goodwill.

75. Defendant's false and misleading statements have included, without limitation:

    i. Misrepresenting his role in Portkey through various public interviews and/or publishing untrue information on his public Twitter account, public LinkedIn account, and public blog, thereby diminishing Sundaresan's role in Portkey and Portkey's overall business success;

    ii. Claiming credit for purchases of NFTs made and/or managed by Portkey through its METAPURSE fund; and

    iii. Claiming to have been a co-founder of and steward of METAPURSE.

76. Through his above-referenced false and misleading statements, Defendant has sought to promote his own businesses, including, without limitation eDAO and Layer-E, which operate in the same space as Portkey and have focused on selling NFTs to the public and providing a residency for Web3 artists, respectively.

77. Defendant's false statements relate to an inherent characteristic of his businesses, *e.g.,* that they are substantially the same as Plaintiffs' business and/or will be as successful as Plaintiffs' business.

78. By falsely associating himself and his own businesses with Plaintiffs, Defendant has sought to impact decisions of consumers and investors, to Plaintiffs' detriment.

79. Defendant has also sought to bolster his position in the public's eye about his import at Metapurse and in the purchase of the Beeple NFT when, in reality, he was engaged as an independent contractor working under Sundaresan's direction.

80.    Upon information and belief, Defendant has communicated with portfolio companies and others who had prior relationships with Portkey in an effort to promote his business ventures.  Upon information and belief, he has asked such other persons to participate with him in podcasts and other public talks regarding his prior role with Plaintiffs in order to further trade upon the goodwill of Plaintiffs and claim responsibility for Plaintiffs' business success.

81.    Following termination of his agreement with Portkey, Defendant has also used the trademark and pseudonym TWOBADOUR in commerce to associate himself with Plaintiffs and to associate Plaintiffs' success with his personal business ventures.  Defendant has also used the TWOBADOUR trademark to falsely claim that he was the only person behind the name and mark TWOBADOUR, *e.g.*, suggesting that he "is" TWOBADOUR.  Additionally, Defendant has falsely claimed to have been the "steward of METAPURSE," when he was not.  In doing so, Defendant falsely represented that he managed, supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund.  Examples include, without limitation:

18

i.  On Defendant's LinkedIn page, his profile summary read: **"Co-Founder and CEO of eDAO. Fmr Steward of Metapurse, the largest NFT Fund in the world**. Capital allocation, experience design, artists & repertoire. **Creator of the @Twobadour pseudonym."** (emphasis added);



Defendant's LinkedIn page
(Accessed May 23, 2023).

ii.  The top of Defendant's Twitter feed read: "Co-Founder & CEO @LayerEhq. **As @twobadour, Steward of @metapurse, won the $69m @BEEPLE auction.** NFT Artist fanboy. Lucky husband, proud father, wishful thinker." (emphasis added); and

19



Defendant's Twitter page
(Accessed June 5, 2023).

iii.   Defendant's biography page for the 2023 Consensus by CoinDesk conference (CoinDesk's flagship annual crypto and Web3 conference), reads:  "Anand is the Co-Founder and CEO of the Polygon-incubated Layer-E. He has been a journalist, an ad-man, and a GTM strategist for FinTech. **In the metaverse, he was Twobadour, Steward of the $250mn Metapurse Fund.  With Metakovan, he won the Christie's auction for the $69 mn Beeple's First 5000 Everydays.**  He was the executive producer of Dreamverse New York, the largest ever NFT Art Exhibition.

20

With a collectibles-based product suite at Layer-E, he hopes to supercharge engagement and revenue for global brands and creators." (emphasis added). Moreover, at the Consensus by CoinDesk conference on April 28, 2023, Defendant, along with a Web3 entrepreneur, presented a talk entitled, "Who Are You in Web3? Exploring Tokenized Identity." The description for the talk reads: "**Going by the pseudonym Twobadour.eth, Anand Venkateswaran made headlines in 2021 as one half of the duo behind the $69.3M purchase of a Beeple NFT.** What happens to the person behind an internet handle? Is he or she replaceable? **Does the identity belong to an organization, or the person?** Venkateswaran discusses with Yat Siu, a leading expert on property rights and IP on the blockchain." (emphasis added). During this talk, Defendant made multiple references to creating the pseudonym TWOBADOUR, being TWOBADOUR, and being one of the two purchasers of the Beeple NFT. Upon information and belief, Defendant wrote or approved of the CoinDesk biography.

82. Following the termination of his independent contractor agreement with Portkey, Defendant also used and associated himself with the trademark METAPURSE. By way of example, the top of Defendant's Twitter feed identified himself as "Steward of @metapurse."

83. Defendant's use of the trademarks TWOBADOUR and METAPURSE as alleged herein, including online, constitutes use in commerce. Without limitation, LinkedIn is "the world's largest professional network on the internet," used by individuals to develop professional opportunities and to strengthen professional networks and relationships. Defendant's use of the trademarks TWOBADOUR and METAPURSE through the other public channels alleged herein,

including promotional blogs, videos, publications, conferences and events, also constitutes use of the trademarks in commerce.

84.    To the extent that Defendant uses the term "former" when discussing Plaintiffs and their related business endeavors, including but not limited to regarding TWOBADOUR and METAPURSE, such word or derivations thereof does not shield Defendant from liability.

85.    Upon information and belief, Defendant continues to make false, misleading, and tortious statements along the lines described above in connection with the promotion of his businesses.

86.    Upon information and belief, Defendant has not issued any public statements retracting his false and misleading statements.

87.    Upon information and belief, Defendant has not requested that any clarifications or retractions of the false and misleading statements referenced above be corrected.

88.    Defendant's explicit and implicit falsehoods and misstatements have harmed Plaintiffs' reputations, current investments, and opportunities to undertake new business projects and investments, including in this District.

89.    Defendant's statements and actions also have harmed Plaintiffs' relationships with current and prospective clients and business partners.

90.    Defendant has actual knowledge of Sundaresan's sole purchase of the Beeple NFT, of Plaintiffs' sole ownership of the trademark and pseudonym TWOBADOUR and its associated online identity, and of Plaintiffs' sole ownership of the METAPURSE fund and trademark.

91.    Defendant's false and misleading statements have caused the public to mistakenly believe, *inter alia*, that Defendant is the owner of the Beeple NFT, a co-owner of the Beeple NFT, and/or partially responsible for the purchase of the Beeple NFT, and/or that he managed,

supervised, controlled, or was otherwise responsible for the METAPURSE fund and the assets acquired through the fund.

92.     Defendant has actual knowledge that Plaintiffs own all rights, title, and interest in the trademark and pseudonym TWOBADOUR and its associated online identity, and that a number of individuals who worked for Plaintiffs used the TWOBADOUR trademark and pseudonym to conduct company business.

93.     Defendant has actual knowledge that Plaintiffs own all rights, title, and interest in the trademark METAPURSE, and that Sundaresan had ultimate responsibility for managing, supervising, and controlling the collection of digital assets purchased through Plaintiffs' METAPURSE fund.

94.     Defendant's foregoing acts have been willful, wanton, and in bad faith, and with the intent to misrepresent Plaintiffs' business operations and successes as that of his own.

95.     Defendant is attempting to exploit Plaintiffs' reputations and intellectual property to intentionally cause confusion among investors, artists, artist estates, trade conference organizers and organizations, scholars, publishers, and other market participants, hoping people choose to do business with him and his associated businesses, mistakenly believing that he was the source of Plaintiffs' business operations and success, and that he remains associated with Plaintiffs and their business.

96.     Defendant's false and misleading statements exploit the goodwill and reputation associated with Plaintiffs.

97.     Upon information and belief, as a result of Defendant's false and misleading statements, people turn to Defendant for business opportunities, believing that he is or was responsible for Plaintiffs' business operations and success.

98.     As a proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer significant damage and harm to their business, goodwill, reputation, and profits.

99.     Plaintiffs' remedy at law is not adequate to compensate them for the irreparable injury which has already been inflicted on Plaintiffs and which will be inflicted on them in the future by virtue of Defendant's conduct.

## COUNT I[1]
### (Unfair Competition/Reverse Passing Off, 15 U.S.C. § 1125(a))

100.     Plaintiffs reallege and incorporate herein by reference each of the foregoing Paragraphs as if fully set forth herein.

101.     Defendant's acts constitute the use, in interstate commerce, of false or misleading descriptions of fact or false or misleading representations of fact likely to cause confusion, or to cause mistake, or to deceive as to the nature and extent of the affiliation, connection, or association of Defendant with Plaintiffs, as to the source of the business operations provided by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

102.     Defendant's acts are material in that they are likely to influence purchasing decisions by members of the public.

103.     Defendant's acts were intentional, willful, and done with full knowledge.

104.     Defendant's acts have caused and will continue to cause irreparable harm and injury to Plaintiffs.  Unless Defendant is enjoined from further actions, Defendant will continue his illegal acts and cause immeasurable damage to the goodwill and reputation of Plaintiffs.

105.     In addition, as a result of Defendant's conduct, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

---

[1] The Court dismissed Counts I, II, and IV ("Dismissed Counts") on July 19, 2024.  (Dkt. 45.) .  Plaintiffs nevertheless include the Dismissed Counts in this Proposed Second Amended Complaint because of Plaintiffs' pending Motion for Reconsideration (Dkt. 53) and to preserve Plaintiffs' rights to seek appellate review, if necessary.

106.    In addition to actual damages and any profits Defendant derived from his improper conduct, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiffs to recover their attorneys' fees.

## COUNT II
### (False or Misleading Representations or Advertising, 15 U.S.C. § 1125(a))

107.    Plaintiffs reallege and incorporate herein by reference each of the foregoing Paragraphs as if fully set forth herein.

108.    Defendant has acted knowingly and intentionally held himself out to the public as the source of Portkey's business operations and success.

109.    Defendant repeatedly caused the public to believe that he is an owner the of the Beeple NFT.

110.    Defendant repeatedly caused the public to believe that he was responsible for Portkey's business operations and success.

111.    Defendant repeatedly caused the public to believe that he owns the trademark and pseudonym TWOBADOUR and its associated online identity.

112.    Defendant's statements were literally false and/or implicitly false.

113.    Defendant's false statements are material in that they are likely to cause confusion and likely to influence purchasing and investment decisions by members of the public.

114.    Defendant's aforesaid acts constitute false and/or misleading representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.    Upon information and belief, Defendant has obtained gains, profits, and business advantages as a result of his wrongful acts in an amount to be determined.

116.    Upon information and belief, Defendant's aforementioned acts have been willful, wanton, and in bad faith, and with the intent to misrepresent his role at Portkey, his role in the purchase

25

of and/or ownership of the Beeple NFT, his role in the ownership of the TWOBADOUR trademark and pseudonym and its associated online identity, his role in the ownership of the METAPURSE trademark and acquisitions made by the fund, and to trade off the reputation and goodwill of Plaintiffs. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

117. Defendant's wrongful acts will continue unless enjoined by this Court.

118. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforementioned acts of Defendant in an amount thus far not determined.

## COUNT III
### (Trademark Infringement, 15 U.S.C. § 1125(a))

119. Plaintiffs reallege and incorporate herein by reference each of the foregoing Paragraphs as if fully set forth herein.

120. Without the authorization or consent of Portkey, Defendant has used the TWOBADOUR and METAPURSE trademarks in a false and misleading manner.

121. Further, Defendant's promotion of his blockchain, Web3, and NFT business services in U.S. commerce are and have been competing with Portkey's blockchain, Web3, and NFT business services.

122. Defendant's unauthorized use of the TWOBADOUR and METAPURSE trademarks is likely to cause consumer confusion, mistake, and/or deception in the relevant market(s).

123. Defendant's conduct constitutes willful trademark infringement in violation of 15 U.S.C. § 1125(a).

## COUNT IV
### (Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349)

124. Plaintiffs reallege and incorporate herein by reference each of the foregoing

allegations as if fully set forth herein.

125.    Defendant engaged in a consumer-oriented act or practice by using the TWOBADOUR and METAPURSE trademarks in connection with the promotion of his business ventures in a false and misleading manner.

126.    Defendant's foregoing actions have been intentional.

127.    Defendant's conduct is likely to cause confusion and constitutes deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

## COUNT V
### (Injury to Business Reputation and Dilution Under N.Y. Gen. Bus. Law § 360-l)

128.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

129.    Portkey owns the trademarks TWOBADOUR and METAPURSE.

130.    The trademarks TWOBADOUR and METAPURSE are inherently distinctive and closely associated with Portkey's business and reputation, having come to represent the highest standards of quality.

131.    Defendant's misuse of Portkey's TWOBADOUR and METAPURSE trademarks, and false association with Plaintiffs' business, will ultimately dilute the value and distinctive quality of the trademark TWOBADOUR and pseudonym TWOBADOUR and its associated online identity and the value and distinctive quality of the trademark METAPURSE within the meaning of N.Y. Gen. Bus. Law § 360-l.

132.    Defendant's conduct constitutes injury to business reputation and dilution in violation of N.Y. Gen. Bus. Law § 360-l.

27

## COUNT VI
### (Trademark Infringement and Unfair Competition, New York Common Law)

133.    Plaintiff realleges and incorporates herein by reference each of the foregoing allegations as if fully set forth herein.

134.    Defendant's foregoing acts constitute willful trademark infringement and unfair competition in violation of New York common law.

## COUNT VII
### (Claim for Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)

135.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

136.    Portkey owns the trademark and pseudonym TWOBADOUR and its associated online identity.

137.    Portkey owns the trademark METAPURSE.

138.    Defendant has no legal rights to use the trademark and pseudonym TWOBADOUR in a false and misleading manner or in a manner that otherwise causes confusion, but has used same to associate himself with same in such a manner.

139.    Defendant has no legal rights to use the trademark METAPURSE in a false and misleading manner or a manner that otherwise causes confusion, but has used same to associate himself with same in such a manner.

140.    Accordingly, an actual and justiciable controversy exists between the Parties.

141.    A determination that Portkey has exclusive rights to and ownership of the trademark and pseudonym TWOBADOUR and its associated online identity, and that Defendant may not use the TWOBADOUR mark in a false and misleading manner or a manner that otherwise causes confusion, would resolve this controversy.

28

142.    A determination that Portkey has exclusive rights to and ownership of the trademark METAPURSE, and that Defendant may not use the METAPURSE mark in a false and misleading manner or a manner that otherwise causes confusion, would resolve this controversy.

## COUNT VIII
### (Trademark Infringement of Federally Registered Trademark, 15 U.S.C. § 1114(a))

143.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations as if fully set forth herein.

144.    Without Plaintiffs' consent, Defendant has used in commerce reproductions, counterfeits, copies, and colorable imitations of the registered METAPURSE trademark in connection with the sale, offering, distribution, and advertising of goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## JURY DEMAND

145.    Pursuant to Fed. R. Civ. P. 38, Plaintiffs respectfully demand a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

146.    **WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor on all counts of this Complaint and grant Plaintiffs the following relief:

147.    Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting unfair competition and reverse passing off, and awarding Plaintiffs (i) actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

29

148. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting false or misleading statements or representations or otherwise engaging in false advertising in regarding to Plaintiffs and awarding Plaintiffs (i) actual damages and profits resulting from Defendant's illegal acts, in an amount to be determined at trial, plus interest; (ii) treble damages; and (iii) attorneys' fees and costs;

149. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making further use of the trademark or pseudonym TWOBADOUR, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto in a false and misleading manner or a manner that otherwise causes confusion;

150. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making any further use of the trademark METAPURSE, or any name or mark confusingly similar thereto, or otherwise associating himself with the same or any name or mark confusingly similar thereto in a false and misleading manner or a manner that otherwise causes confusion;

151. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly making public use of Plaintiffs' names and any designations or trademarks associated with Plaintiffs;

152. Permanently enjoin and restrain Defendant, successors or assigns, and all persons or entities acting in concert or in participation with Defendant, from directly or indirectly taking any further acts constituting use of Plaintiff's names and any designations or trademarks associated with Plaintiffs in a false and misleading manner or a manner that otherwise causes confusion;

153.    Order Defendant to publicly issue corrective statements through all appropriate channels, including without limitation all of his social media accounts, websites, and blogs, to correct any false statements made in regard to Plaintiffs, and to send written corrective statements to all third-parties to whom he made such false statements;

154.    Order Defendant to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendant of an injunction in this action, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith, pursuant to 15 U.S.C. § 1116(a);

155.    Order Defendant to provide Plaintiffs an accounting of any and all monies, profits, gains, and advantages derived by Defendant through the aforementioned acts;

156.    Award Plaintiffs three times Defendant's profits or three times Plaintiffs' damages sustained as a result of Defendant's aforementioned acts, pursuant to 15 U.S.C. § 1117(a);

157.    Award Plaintiffs their reasonable attorneys' fees, taxable costs, and disbursements, pursuant to 15 U.S.C. § 1117(a);

158.    Award Plaintiffs pre-judgment and post-judgment interest;

159.    Declare that Portkey owns the trademark and pseudonym TWOBADOUR and its associated online identity;

160.    Declare that Portkey owns the trademark METAPURSE; and

161.    Award Plaintiffs such other and further relief as the Court deems just and proper.


Dated:  September 4, 2024                          Respectfully submitted,
        New York, New York


31

By:

 */s/ Robert M. Wasnofski, Jr.*
Robert M. Wasnofski, Jr.
Daniel A. Schnapp
Mary Kate Brennan
Samuel J. Weiner
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Phone:  (212) 768-6748
Fax:  (212) 768 6800
robert.wasnofski@dentons.com
daniel.schnapp@dentons.com
marykate.brennan@dentons.com
samuel.weiner@dentons.com

*Attorneys for Plaintiffs Portkey
Technologies Pte Ltd. and Vignesh
Sundaresan*

32

# EXHIBIT A

**REQUEST FOR EXTENSION OF PROTECTION**

**SERIAL NUMBER: 79403296**

**FILING DATE: 06/12/2023**

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| IMAGE | https://tmng-cms.uspto.gov/trademark/cms/rest/case/79403296/tmdocument/79403296APP716310001.JPG |
| COLLECTIVE, CERTIFICATE OR GUARANTEE MARK | NO |
| MARK IN STANDARD CHARACTERS | YES |
| MARK IN COLOR | NO |
| THREE DIMENSIONAL MARK | NO |
| SOUND MARK | NO |
| THE WORDS CONTAINED IN THE MARK HAVE NO MEANING (AND THEREFORE CANNOT BE TRANSLATED) | YES |
| TM IMAGE: COLOR | Grey Scale |
| IMAGE FILE NAME | https://tmng-cms.uspto.gov/trademark/cms/rest/case/79403296/tmdocument/79403296APP716310001.JPG |
| TYPE (IMAGE TYPE) | JPG |
| TEXTUAL ELEMENTS OF MARK | TWOBADOUR |
| **HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 1560611 |
| NOTIFICATION LANGUAGE | ENGLISH |
| NAME | PORTKEY TECHNOLOGIES PTE. LTD. |
| ADDRESS | 600 NORTH BRIDGE ROAD, |
| | #12-02/03 PARKVIEW SQUARE |
| | SINGAPORE 188778 |
| COUNTRY | Singapore |
| ENTITLEMENT NATIONALITY OF APPLICANT/TRANSFEREE/HOLDER | Singapore |
| LEGAL NATURE | Private Limited Company |
| LEGAL NATURE: PLACE INCORPORATED | SINGAPORE |
| CORRESPONDENCE INDICATOR | YES |
| **BASIC GOODS AND SERVICES** | |
| VERSION OF NICE CLASSIFICATION USED | 12-2023 |
| NICE CLASSIFICATION | 09 |
| | Downloadable computer software for minting non-fungible tokens (NFTs); downloadable |

| | |
|---|---|
| GOODS AND SERVICES | audio, digital, music and video files authenticated by non-fungible tokens (NFTs); computer software for use in the virtual display of artwork, multimedia products, virtual goods and digital files authenticated by NFTs. |
| NICE CLASSIFICATION | 35 |
| GOODS AND SERVICES | Advertising and promotion services; advertising and publicity services; advertising for others on the Internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; advisory services for business management; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business assistance; advertising and promotional services for businesses by means of collaborations with artists to create art and art authenticated by non-fungible tokens (NFTs); business consulting services; business development services; business management; business management consultancy in the field of virtual reality technology; business management consultancy services; business management consultancy services provided via the Internet; business management for freelance service providers; business management of actors, artists, authors, performing artists, photographers or writers; business promotion services; business management of public auctions; business reputation management and improvement services; career advancement consultancy services; career advisory services, other than education and training advice; career planning consultancy; conducting interactive virtual auctions; conducting virtual trade shows online; consulting services relating to publicity; development of publicity concepts; dissemination of advertising, marketing and publicity materials; distribution and dissemination of advertising materials [leaflets, prospectuses, printed material, samples]; marketing advice; marketing assistance; marketing services; on-line advertising on computer networks; online auctioneering; online retail store services featuring works of art; online trading services in which seller posts products to be auctioned and bidding is done via the Internet; online wholesale store services featuring works of art; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the Internet; providing online auction services; retail services; talent agency services [business management of performing artists]; arranging and conducting of art exhibitions, featuring artwork and artwork authenticated by NFTs, and consultancy relating thereto; art galleries services, namely, selection, purchasing, and sale of artwork and artwork authenticated by NFTs, and consultancy relating thereto; marketing and business consultancy in relation to the purchase and sale of artwork and artwork authenticated by NFTs; consultation in the purchase and sale of artwork and NFTs. |
| NICE CLASSIFICATION | 36 |
| GOODS AND SERVICES | Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning [financial advice]; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment services; financial management advisory services; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services; management of investments; provision of investment information; cryptocurrency asset management; cryptocurrency investment advisory services; cryptocurrency investment services; financial evaluation services; financial valuation services; providing information, consultancy and advice in the field of financial valuation; artwork and NFT investment services; consultation in the investment in artwork and NFTs. |
| NICE CLASSIFICATION | 41 |
| GOODS AND SERVICES | Career advisory services [education or training advice]; advisory services relating to entertainment; career counselling [education or training advice]; career information and advisory services [educational and training advice]; organization of art exhibitions for cultural or educational purposes; organization of exhibitions for entertainment purposes; art exhibition services; arranging and conducting of art exhibitions for cultural or educational purposes; display of works of art in exhibitions, shows, museums, galleries; arranging and conducting of colloquiums, conferences, congresses, seminars, symposiums and training workshops; arranging and conducting of seminars; arranging of seminars; conducting of instructional |

|  |  |
|---|---|
|  | seminars; conducting seminars; artwork and NFT curation services; consultation in the curation of artwork and NFTs; curator services for artwork, multimedia products, virtual goods and digital files authenticated by non-fungible tokens (NFTs); curation services featuring selected, purchased, and sold artwork, including those authenticated by NFTs. |
| NICE CLASSIFICATION | 42 |
| GOODS AND SERVICES | Design consultancy; design engineering; design services; design and development of multimedia products, virtual goods and digital files authenticated by non-fungible tokens (NFTs); design and development of new technology for others; design and development of computer software; technological consultancy relating to digital transformation; electronic storage of digital images, music, photographs and images; providing online non-downloadable software for the display and management of artwork, multimedia products, virtual goods and digital files authenticated by NFTs and inventories thereof; design and development of computer software for use in the virtual display of artwork, multimedia products, virtual goods and digital files authenticated by NFTs; consultation in the purchase and sale of artwork and NFTs. |

## PARIS PRIORITY DETAILS

|  |  |
|---|---|
| PARIS PRIORITY CODE: | Singapore |
| PARIS PRIORITY APPLICATION NUMBER | 40202312849X |
| PARIS PRIORITY APPLICATION DATE | 06/12/2023 |

## BASE REGISTRATION DETAILS

|  |  |
|---|---|
| BASE APPLICATION NUMBER | 40202312849X |
| BASE APPLICATION DATE | 06/12/2023 |

## REPRESENTATIVE DETAILS

|  |  |
|---|---|
| CLIENT IDENTIFIER | 1519978 |
| NAME | RODYK IP |
| ADDRESS | P.O. BOX 462, |
|  | ROBINSON ROAD POST OFFICE |
|  | SINGAPORE 900912 |
| COUNTRY | Singapore |

## INTENT TO USE GROUP

|  |  |
|---|---|
| CONTRACTING PARTY CODE | United States of America |

## DESIGNATIONS

|  |  |
|---|---|
| DESIGNATIONS UNDER THE PROTOCOL | United States of America |

## INTERNATIONAL REGISTRATION DETAILS

|  |  |
|---|---|
| INTERNATIONAL REGISTRATION NUMBER | 1807047 |
| INTERNATIONAL REGISTRATION DATE OF MARK | 06/12/2023 |
| INTERNATIONAL REGISTRATION EXPIRY DATE | 06/12/2033 |
| EFFECTIVE DATE OF MODIFICATION | 06/12/2023 |
| NOTIFICATION DATE | 08/29/2024 |
| DATE OF RECORDAL IN INTERNATIONAL REGISTER | 08/15/2024 |
| IB DOCUMENT ID | 1727524701 |

| | |
|---|---|
| OFFICE OF ORIGIN CODE | Singapore |
| OFFICE REFERENCE | 79403296 |
| TRANSACTION TYPE VALUES | Initial Designation |
| ORIGINAL LANGUAGE | ENGLISH |
| INSTRUMENT UNDER WHICH CONTRACTING PARTY IS DESIGNATED | Protocol |
| DURATION OF MARK (YEARS) | 10 |

# TWOBADOUR

# EXHIBIT B

# United States of America
## United States Patent and Trademark Office

# METAPURSE

**Reg. No. 7,251,142**

**Registered Dec. 26, 2023**

**Int. Cl.: 35, 36**

**Service Mark**

**Principal Register**

PORTKEY TECHNOLOGIES PTE. LTD.  (SINGAPORE PRIVATE LIMITED COMPANY)
600 NORTH BRIDGE ROAD,
#12-02/03 PARKVIEW SQUARE Singapore 188778
SINGAPORE

CLASS 35: Advertising and promotion services; advertising and publicity services; advertising by transmission of on-line publicity for third parties through electronic communications networks; advertising for others on the internet; advertising services to create brand identity for others; advertising, marketing and promotional consultancy, advisory and assistance services; consulting services relating to publicity; on-line advertising on computer networks; promoting the artwork of others by means of providing online portfolios via a website; promoting the goods and services of others over the internet; sales promotion services; business management consultancy services; business management consultancy services provided via the internet; assistance, advisory services and consultancy with regard to business analysis; assistance, advisory services and consultancy with regard to business organization; assistance, advisory services and consultancy with regard to business planning; business administration assistance, assistance in management of business activities; business consulting services; business management of actors, artists, authors, performing artists, photographers or writers; business opportunities promotion services; distribution and dissemination of advertising materials in the nature of leaflets, prospectuses, printed material, samples; dissemination of advertising, marketing and publicity materials

CLASS 36: Advisory services relating to financial asset management; advisory services relating to financial investments; advisory services relating to financial risk management; budget planning being financial advice; consultation services relating to financial matters; financial consulting and advisory services; financial analysis; financial analysis services relating to investments; financial consultancy services relating to investments; financial investment brokerage, analysis and stock research services; advisory services for the financial management of funds for others, including private and public equity, stocks, bonds, options, commodities, futures; financial planning services; providing financial information; advisory services relating to investments and finance; consultation services relating to investment; investment advisory services; investment services, namely, capital investment services, real estate investment trust services, private equity fund investment; management of investments for annuities and acquiring joint ventures; provision of financial investment information; cryptocurrency financial asset management; cryptocurrency financial investment advisory services; cryptocurrency investment services, namely, asset acquisition, consultation, development and management services; financial evaluation services relating to securities and other financial instruments; financial valuation services, namely, personal property and real estate; providing information, consultancy and advice in the field of financial valuation

The mark consists of the stylized word METAPURSE.



*Katherine Kelly Vidal*

**Director of the United States
Patent and Trademark Office**



PRIORITY DATE OF 10-11-2021 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1664564 DATED 03-28-2022, EXPIRES 03-28-2032

SER. NO. 79-341,844, FILED 03-28-2022

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.