P4i3porc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

PORTKEY TECHNOLOGIES PTE LTD,
et al.,

                 Plaintiff,              New York, N.Y.

           v.                            23 CV 5074 (JPO)

VENKATESWARAN,

                 Defendant.

-------------------------------x         Teleconference

                                         April 18, 2025
                                         10:00 a.m.

Before:

                    HON. J. PAUL OETKEN,

                                         District Judge


                         APPEARANCES


DENTONS US LLP
     Attorneys for Plaintiff
BY:  ROBERT M. WASNOFSKI, JR.
        SARA M. GATES

ANAND VENKATESWARAN
     Pro Se Defendant

P4i3porc

THE DEPUTY CLERK:  This is in the matter of Portkey Technologies Pte Ltd. et al. v. Anand Venkateswaran.

Starting with the plaintiff, counsel, please state your name for the record.

MR. WASNOFSKI:  Robert Wasnofski of Dentons.

MS. GATES:  Good morning.  This is also Sara Gates of Dentons.

THE COURT:  Good morning.  And defendant?

MR. VENKATESWARAN:  Anand Venkateswaran the defendant. Good morning, your Honor.

THE COURT:  Could you remind me how to say your name again?

MR. VENKATESWARAN:  Anand Venkateswaran.

THE COURT:  Venkateswaran.  Okay.  Thank you.

MR. VENKATESWARAN:  Perfect, perfect.

THE COURT:  Welcome, everyone.

We scheduled this conference when we had our last conference back in January, and I think we just scheduled it to check in how things are going with discovery and any other issues you'd like to address.

So I'll start with counsel for the plaintiff.

MR. WASNOFSKI:  Yes, thank you, your Honor.

In the last few months, we have held multiple meet and confers with defendant in regard to efficient discovery responses and productions, and defendant has produced

P4i3porc

documents, multiple rounds of document productions between February and earlier this month.  We are going through those documents.  Defendant has also submitted supplemental interrogatory responses and responses to requests for admissions, but there are still outstanding deficiencies that we wanted to discuss briefly here.

So we request that defendant be directed to respond fully and accurately to all the plaintiff's interrogatories.  Certain of the RFAs to produce documents with proper metadata, because it appears defendant failed to do so when capturing and producing documents.  And we'd also like to set a date by which defendant will complete its production.

We did serve our discovery requests over a year ago now.  I know there has been reasons for delay, in part because counsel, defendant dismissed his counsel.

And then lastly, we'd like to leave it to your Honor's discretion, of course, but either reset the case management plan now or set another status call for a few months in the future.

I'm happy to, if I can go into a little more detail on each of these points, I would do so.  But the interrogatories, for example, your Honor, defendant still has only identified himself and the plaintiff as persons who have knowledge, documents or information concerning the facts alleged in the pleadings.  And that has to be wrong factually.  I believe

P4i3porc

defendant may think it's overwhelming to respond, but we do need, you know, proper responses, truthful and accurate responses, so plaintiff can pursue discovery efficiently.

One of our requests, interrogatory request specifically ask that he identify all persons to whom defendant referenced the relevant trademarks since the end of his relationship with plaintiff. And that interrogatory itself has also gone without response. There has been a response, he said he will provide a list of connections of his social media channels, but he hasn't provided or identified individuals as he needs to.

THE COURT: Okay. Go ahead.

MR. WASNOFSKI: Yeah, I'm just going to say there are 15 interrogatories and, again, we only have two names in response, in response to interrogatory 1, and that is again defendant and plaintiff only.

THE COURT: Okay. Mr. Venkateswaran, would you like to respond to any of those points?

MR. VENKATESWARAN: Yes, sir. This is Anand Venkateswaran the defendant.

I'll take it from the first, from the discovery document production itself. I thank the plaintiff for acknowledging I have produced multiple rounds of documents in discovery. I've done so to the best of my knowledge, your Honor, and also focused on completeness, making sure that I've

P4i3porc

provided every possible reference of these trademarks across my text messages, e-mails, all of my digital platforms and so on and so forth.  And also all of my immigration documents, all of my company-related documents that I was in possession of.

And this is the first time I'm hearing metadata, so anything the plaintiff requires specifically, I'm more than happy to provide.

About the interrogatories themselves, frankly, your Honor, I have provided the entire list of all my contacts, both across my e-mails as well as my social channels, they are part of the documents that I provided in discovery.  They're already there.  As for specific names, I honestly don't know how to respond to that because the interrogatories themselves are extremely broad.  For instance, the question anybody that has knowledge or anybody that has referenced these trademarks to include -- and by the way, the interrogatory says any time before the date that I left the organization and after.  Which means from the beginning of time to today.  Right.

So, and the plaintiffs, might I add, has presented me as Twobadour, you know, as a short of Metapurse, frankly, to all of our professional connections essentially.  So I'm not sure exactly how to draw that line.  If there is a specific subgroup that the plaintiff is looking for, I'm happy to provide it, but the interrogatories do not say.  They only say anybody that has knowledge of whoever I told that I belong to

P4i3porc

Metapurse or that I was part of that organization.  It's an extremely broad question which I have answered to the best of my ability in saying that these are all the people that I've ever contacted or who might be potentially aware that I'm associated with that organization or with these trademarks.

THE COURT:  I'm hearing two different things. Mr. Wasnofski, I thought you said he just gave his name and the plaintiff's name.  I'm not sure what the interrogatory was specifically, but then he said he gave a whole bunch of names.

MR. WASNOFSKI:  Yes, your Honor, he has not done so. The interrogatory responses only list two names.  I believe he's referring to documents he's produced perhaps.  But he's produced thousands of documents, and we require a list of names in response to our interrogatories, as you are aware.

THE COURT:  So what's the question to which you need a response?

MR. WASNOFSKI:  Well, 1 through 15, but I can raise two of them.  One is identify all persons to whom defendant referenced the relevant trademarks any time since February 28, 2022, that was when the ICA, the independent contractor arrangement, ended.  We don't have an answer to that.

THE COURT:  Is that something you can provide, just anyone you referenced the trademarks to?

MR. VENKATESWARAN:  That's a lot of people, your Honor.  For instance, as soon as I left the organization, I

P4i3porc

posted on Twitter, I've been published in multiple publications saying that I was the steward of Metapurse, and they have a list of those in the documents that I provided.  So do they want me to pare it down essentially?

My apologies.  I think this is more of a communication gap than my trying to obfuscate the information.  This is not a small list.

THE COURT:  I don't think they're saying anyone who received the information.  You don't have to go track down the information.  But anyone you specifically contacted and to whom you made a reference to the trademarks.  Not everyone who looked at your LinkedIn or whatever.  But people you specifically communicated.

MR. VENKATESWARAN:  Yes, your honor.

THE COURT:  Can you make --

MR. VENKATESWARAN:  Yeah.  My apologies.  Please continue, your Honor.

THE COURT:  Is that a list you can make?

MR. VENKATESWARAN:  Okay.  I'll make that into a list.  I had assumed, now erroneously in retrospect, when I looked at my e-mails with these references, those are all the people that I had specifically communicated to saying this.  And also when I scroll through my text messages and WhatsApps, these are all the people that I had communicated this to.

So if he wants me to make it into a list and maybe put

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P4i3porc

it in a spreadsheet and provide it to them, I think I can do that too.

THE COURT:  I see your point.  You provided them all from the documents, but are there other people you might have referenced the trademark to who would not be captured in those documents, such as someone you communicated with by phone or in person?

MR. VENKATESWARAN:  No, your Honor.  Not apart from those.  Most of them, if I communicated with them even over phone, there is a message trail for sure via WhatsApp.  Apart from, it's just my family members I suppose, my parents, and yeah, that's pretty much it.

But I am happy to put it in a spreadsheet and provide it to the plaintiff if necessary.

What I'm trying to say is apart from all of the references that has been culled out and provided, this is my circle essentially.  There is no outside circle apart from these people that I have communicated this to.

THE COURT:  Okay.  Well, it sounds like there needs to be some more meeting and conferring, for example, on the meaning of these interrogatories and on the issues of metadata which it sounds like the defendant can work on.

Can we set a conference in a couple months to check on the status again?

MR. WASNOFSKI:  Yes.  That's fine with plaintiffs.

P4i3porc

MR. VENKATESWARAN:  Fine with me, your Honor.

THE COURT:  All right.  How's June 24 for another phone conference?

MR. VENKATESWARAN:  Yes, sir.

MR. WASNOFSKI:  Just checking my calendar.  Tuesday, is that correct, your Honor?

THE COURT:  Yes.

MR. WASNOFSKI:  Yes, that's fine for plaintiffs.

Your Honor, before we move on, perhaps we can use another round of meet and confers to also address some of the deficiencies in certain of the defendant's RFA responses. Because I don't think he's fully aware of how he needs to -- how he should respond according to the rules.

One of the requests, and this is just an example, ask that he admit under the first independent contractor agreement defendant was to provide Portkey with certain services.  There is a list of services.  Those were copied from the independent contractor agreement.  And all we asked was that he admit those were the services to be provided under that agreement.

And among many objections, he concludes with a deny the request because it seeks a legal conclusion.  That's not a legal conclusion.  That's a factual matter.  And that's just one example.

So we have tried to work with the defendant to explain why certain of these responses were insufficient.  That's one

P4i3porc

example.

Another has to do with, to highlight, we asked that he admit that on one or more occasions since February 28, 2022, when the business arrangement was concluded, that he's publicly claimed to be Twobadour.  Defendant responded that's not relevant.

So these are just highlights.  Again, plaintiff is willing to try to work with the defendant to avoid further letters to the Court and the Court's involvement.  But I just want to ask whether or not your Honor thinks that's the way to proceed or if you wanted to address something else now.

THE COURT:  I think I'd like you to try to meet and confer first and try to work out any disputes.  All right?  Can you do that?

MR. WASNOFSKI:  Yes.  We've done so I think two or three times, and we'll certainly do it again at your direction.

THE COURT:  Okay.  Great.

MR. VENKATESWARAN:  May I respond to that, your Honor?

THE COURT:  Yes.

MR. VENKATESWARAN:  Couple of pointers.  First off, for the RFAs there is a clear admit or deny to all of those responses, that's one.  The second question that the plaintiff brought up, I did deny that because I did not represent myself as Twobadour, so it is a clear denial.  There is no ambiguity there.

P4i3porc

As for the first part of it, I started working with the City Bar Justice Council, your Honor, and we did a couple of rounds about my RFA responses. They seemed okay with it. But I'm happy to go check on this again to make sure that it's up to scratch. Because I don't want to use my own decision or my own discretion entirely in this matter because I understand there are limitations to my understanding of the law. So I am seeking help from the CBJC, and they've been very forthcoming and generous with their time. So I'll make sure. Because they give me a clean bill saying I have responded properly.

Is that something the plaintiff would be okay with?

MR. WASNOFSKI: Your Honor, I'd like to understand, is the defendant saying he has pro bono counsel now?

MR. VENKATESWARAN: Not yet. The defendant is saying I'm getting pro bono counsel. The CBJC is in the process of trying to secure pro bono counsel for the depositions as well. What I'm trying to say is my responses are not arbitrary, Mr. Wasnofski. That's what I'm trying to say. I'm putting quite a lot of effort and thought into those responses and, you know, I believe to the best of my knowledge that they're not deficient. That they're definitive in one sense.

But I'm willing to concede, if you feel that there are strong deficiencies, I will seek help to make sure that it's not my discretion alone that's at play here.

THE COURT: That's fine. So can we do 11:30 a.m. on

P4i3porc

June 24?

          MR. WASNOFSKI:  That works for plaintiff.

          THE COURT:  Great.  It will be the same dial-in
number.  June 24, 11:30 a.m.  Thanks, everybody.

          MR. WASNOFSKI:  Thank you, your Honor.

          MR. VENKATESWARAN:  Thank you.

          THE COURT:  We are adjourned.  Bye now.

          (Adjourned)